UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.04-30070KPN

Peter K. Frei,
Plaintiff,

v.

TOWN OF HOLLAND, BOARD OF HEALTH, HOLLAND CONSERVATION COMMISSION, HOLLAND POLICE DEPARTMENT, PLANNING BOARD, ZONING BOARD OF APPEALS, Ronald Benoit, Debra Benveniste, Sally Blais, Richard Blease, Harold E. Congdon, Robert Dymon, Robert Ford, Kevin Gleason, Benjamin Haller, William Hardy, Earl Johnson, Helen Kreiger, Marilyn LaPlante, Joanne May, Vincent J. McCaughey, Dora Metrelis, Arthur A. Quinn, Brian Roche, John Stevens,
Defendant(s)

## PLAINTIFF'S AMENDED COMPLAINT
(for violations of civil rights)

Plaintiff herewith, by the authority given under rule 15(a) of the Rules of Federal Civil Procedure, amends his complaint.

### INTRODUCTION

This case involves a dispute over land use between landowner Peter Frei, "plaintiff" pro see, a native of Switzerland, and the town of Holland and some of it's officials and former officials, where the land is located. This dispute has taken numerous forms, started many years ago, (1987), and involved multiple judicial decisions by various executive branches.

Up to this point, plaintiff was optimistic that the town officials would ultimately stop discriminating against him and accept the fact that plaintiff would not leave, and for that reason never filed an action pleading the various civil rights violations perpetrated by the town of Holland and some of it's town officials, and former town officials, against plaintiff.

Prior disputes always ended in a final judgment or decision in plaintiff's favor.

Since the town of Holland and some of it's officials continue to

unlawfully oppress, harass, intimidate, retaliate, conspire against, discriminate against, intimidate, etc., plaintiff, due to his national origin, and/or for exercising his rights and for petitioning the courts and other authorities for redress, the plaintiff is filing this complaint. Plaintiff gave up hope and lost his patience and is unwilling to endure such injury any longer.

These ongoing violations of plaintiff's rights, granted under the United States Constitution, United States Code, Declaration of Rights of the Constitution of the Commonwealth of Massachusetts, Massachusetts General Law, Law of Equity and Common Law, by the town and some of it's officials and former officials, consistently relates to plaintiff's effort to develop and enjoy his property, and also to sell part of his property.

The town of Holland is a small community. Most town officials are a group of people accustomed to doing business "their way," holding commission on different boards, changing over time, and "covering," instead of checking each other, to guarantee the needed constitutional control over office holders.

This continuous trespass by some of the town officials and former town officials, listed as defendant(s) in this action, constitutes a continued act or a continued series of acts, or a pattern of acts of same nature.

Defendant(s) actions, and the fundamental procedural irregularities of their actions, are unexplainable other than being based on a scheme of oppressive discriminatory animus and a broad-based multifaceted conspiracy by the defendant(s) towards plaintiff, which constitutes a deliberate and arbitrary abuse of power.

Different claims are within the statues of limitations (title 28 U.S.C., s.1658); the rest are admissible under the "continuing violation doctrine." The "continuing violation doctrine" is an "equitable exception" to the timely filing requirement. In the case at bar, the continuing violation is occasioned by continual unlawful acts by the defendant(s) and a campaign of oppression, conspiracy, harassment, retaliation and discrimination against plaintiff, which defendant(s) engaged in.

Plaintiff has a pending action in Hampden Superior Court against the Planning Board and the town of Holland, defendant(s), for an order in mandamus to compel the planning board and the town of Holland to endorse plaintiff's Approval Not Required subdivision plan, thereafter ANR plan, a violation of substantive due process, and constructive taking of property (HDCV2002-1196). In that action, plaintiff has only named the Planning Board of Holland, thereafter PBH, and the town of Holland as defendant(s). No individual is named as defendant, and no defendant(s) are named in their individual capacity in that action.

Remedies under state statutes, Massachusetts General Law, thereafter M.G.L., are insufficient and inadequate to grant relief on the claim for substantive due process and the claim for constructive taking of property, in said action in Superior Court.

In order to survive a motion to dismiss, plaintiff will be specific with allegations establishing discriminatory animus, conspiracy, and due process violations, to meet the heightened pleading standard for such allegations.

Plaintiff also notes the recent legal debate in raising the evidence standard on punitive damage awards to a more exacting standard, (aggravating conduct).

The large volume of the factual statements and the pleadings in this complaint is unusual but necessary to get the "whole picture" and to satisfy the increased need for more specific allegations to meet the increased burden of proof for such allegations.

The unusual volume of facts and pleadings reflect the immeasurable injustice perpetrated by the town of Holland and some of its officials, and former officials, against the plaintiff over the last seventeen (17) years.

Plaintiff is pro se and does not have any formal legal education. Plaintiff is aware of the increasing bias towards pro se litigation, where pro se litigants have pleadings and motions written by ghost-writers, lawyers who draft or write papers in the background, without filing a formal appearance. Plaintiff affirms, that this complaint and all his other legal papers, including the papers filed in Superior Court, are researched and written by himself, without any help from lawyers.

## PARTIES

PLAINTIFF:

1. Peter K. Frei, 101 Maybrook Road, Holland, MA 01521, phone: 413 245 4660

DEFENDANT(S):

2. Defendant TOWN OF HOLLAND is a municipality of the Commonwealth of Massachusetts located in Hampden County, with the mailing address: Town of Holland, 27 Sturbridge Road, Holland MA, 01521, Phone (413) 245 7108. Defendant Town of Holland is sued in its official capacity.

3. Defendant BOARD OF HEALTH (BOH), town of Holland, is and was at all relevant times a municipal corporation. Defendant BOH is sued in its official capacity.

4. Defendant HOLLAND CONSERVATION COMMISSION (HCC), town of Holland, is and was at all relevant times a municipal corporation. Defendant HCC is sued in its official capacity.

5. Defendant HOLLAND POLICE DEPARTMENT (HPD), town of Holland, is and was at all relevant times a municipal corporation. Defendant HPD is sued in its official capacity.

6. Defendant PLANNING BOARD Holland (PBH), town of Holland, is and was at all relevant times a municipal corporation. Defendant PBH is sued in its official capacity.

7. Defendant ZONING BOARD OF APPEALS (ZBA), town of Holland, is and was at all relevant times a municipal corporation. Defendant ZBA is sued in its official capacity.

8. Defendant Ronald Benoit is an individual residing at Brimfield Road, Holland, MA 01521 and at relevant times was building inspector of the town of Holland. Defendant Benoit is sued individually and in his official capacity.

9. Defendant Debra Benveniste is an individual residing at 14 Maybrook Road, Holland, MA 01521 and at relevant times was and is chair woman of the PBH of the town of Holland. Defendant Benveniste is sued individually and in her official capacity.

10. Defendant Sally Blais is an individual residing at 28 Overlook Road, Holland, MA 01521 and at relevant times was chairman of BOH. Defendant Blais is sued individually and in her official capacity.

11. Defendant Richard Blease is an individual residing at 224 Stafford Road, Holland, MA 01521 and at relevant times was electrical inspector of the town of Holland.

12. Defendant Harold E. Congdon is an individual residing at , 21 Hisgen Road, Holland, MA 01521 and at relevant times was chairman of the BOH of the town of Holland. Defendant Condon is sued individually and in his official capacity.

13. Defendant Robert Dymon is an individual residing at Lake Shore Drive, Holland, MA 01521 and at relevant times was member of BOH and inspector of BOH. Defendant Dymon is sued individually and in his official capacity.

14. Defendant Robert Ford is an individual residing at 8 Hawthorne Ridge Circle, Trumbull, CT 06611 and at relevant times was town clerk of the town of Holland. Defendant Ford is sued individually and in his official capacity.

15. Defendant Kevin Gleason is an individual residing at 122 Mashapaug Road, Holland, MA 01521 and at relevant times was a police officer of the HPD and is chief of Police. Defendant Gleason is sued individually and in his official capacity.

16. Defendant Benjamin Haller is an individual residing at 7 Bell Street, Montclair, NJ 07042-2232 and at relevant times was chairman of the ZBA. Defendant Haller is sued individually and in his official capacity.

17. Defendant William Hardy is an individual residing at 12 Bennett Lane, Holland, MA 01521 and at relevant times was chairman of the HCC. Defendant Hardy is sued individually and in his official capacity.

18. Defendant Earl Johnson is an individual residing at Hisgen Road, Holland, MA 01521 and at relevant times was and is member of the PBH and member of the Board of selectmen. Defendant Johnson is sued individually and in his official capacity.

19. Defendant Helen Kreiger is an individual residing at Lake Shore Drive, Holland, MA 01521 and at relevant times was a member of the HCC. Defendant Kreiger is sued individually and in her official capacity.

20. Defendant Marilyn LaPlante is an individual residing at 257 Mashapaug Road, Holland, MA 01521 and at relevant times was member of the PBH. Defendant LaPlante is sued individually and in her official capacity.

21. Defendant Joanne May is an individual residing at Union Road, Holland, MA 01521 and at relevant times was and is secretary of the PBH. Defendant May is sued individually and in her official capacity.

22. Defendant Vincent J. McCaughey is an individual residing at Burbank Avenue, Warren, MA 01083, with office at 807 Main Street, Warren, MA 01083 and at relevant times was and is town counsel for the town of Holland. Defendant Vincent J. McCaughey is sued individually and in his official capacity.

23. Defendant Dora Metrelis is an individual residing at Sandy Beach Road, Holland, MA 01521 and at relevant times was member of BOH and chairman of BOH. Defendant Metrelis is sued individually and in her official capacity.

24. Defendant Arthur A. Quinn, P.E., is an individual residing at Collette Drive, Holland, MA 01521 and at relevant times was sanitarian of the BOH. Defendant Quinn is sued individually and in his official capacity.

25. Defendant Brian Roche is an individual residing at Stafford Road, Holland, MA 01521 and at relevant times was and is member of the PBH and was member of HCC. Defendant Roche is sued individually and in his official capacity.

26. Defendant John Stevens is an individual residing at 1 Old Acres Road, Holland, MA 01521 and at relevant times was chairman of the BOH. Defendant Stevens is sued individually and in his official capacity.

27. DEFENDANT(S) NOT INCLUDED AND REASONS:

Maria Scott, deceased; Humphrey Sutton, deceased; John Martin, untraceable; Fred Grabau, untraceable; Jeffry Wojtowicz, untraceable; Sally Byrne untraceable; Rene Tetrault, untraceable.

## JURISDICTION AND VENUE

28. This action arises under the Constitution of the United States and the Civil Rights Act of 1871 (42 U.S.C., s.1983; and 42 U.S.C., s.1985).

29. This honorable court has jurisdiction based on general federal question jurisdiction under 28 U.S.C., s.1331. For the purposes of general federal question jurisdiction, the requisite jurisdictional amount is pleaded and exists.

30. This honorable court has civil rights jurisdiction under 28 U.S.C., s.1343.

31. Massachusetts three-year statute of limitations for personal injury claims, M.G.L., c.260,s.2A, is applicable to 42 U.S.C., s.1983, 42 U.S.C., s.1985.

32. Different claims are within the statues of limitations (title 28 U.S.C., s.1658), the rest are admissible under the "continuing violation doctrine."

33. In the case at bar, the continuing violation is occasioned by continual unlawful acts by the defendant(s) and a campaign of oppression, conspiracy, harassment, retaliation and discrimination against plaintiff, that defendant(s) engaged in.

34. Venue is properly claimed, 23 of the 25 defendants and the plaintiff reside in Hampden County. All alleged actions were committed in Hampden County. Plaintiff's property is located in Hampden County.

35. Two of the defendants (Robert Ford and Benjamin Haller) reside in other states. This two defendants do have sufficient nexus to Hampden County, Massachusetts. Both were at relevant times town officials of the town of Holland.

36. M.G.L., c.4,s.6(Ninth), provides a penalty or forfeiture for each violation of the law, wherever provided.

## FACTUAL BACKGROUND

37. March 23, 1987: William F. Arnold signs letter in which he gives plaintiff and a friend permission to occupy his property as guests in consideration of the pending sale of said

property, (book 6519, page 178), located on a private way, off of Maybrook Road, Holland.

38. April 30, 1987: Plaintiff signs "purchase agreement" for said property. The execution of the contract was subject to approval of an individual subsurface sewage disposal system by the BOH.

39. May, June, 1987: The Board Of Health, thereafter BOH, refuses to issue a percolation test permit and denies plaintiff the right to do a percolation test on said property.

40. The request for a percolation test was in full compliance with 310 CMR 15.03 and all other applicable sections of 310 CMR 15.00 as in full force and effect on 3/31/1983, and local bylaws.

41. BOH requests the plaintiff to install a leach field 100 feet away from the lake, twice the distance required by 310 CMR 15.00 in plaintiff's situation, a requirement the plaintiff was not able to meet due to the size of the property. This request was arbitrary and not legitimate.

42. BOH, refused to approve plaintiff's 1st set of plans for a subsurface sewage disposal system with a leach pit, date of blueprint, 06-11-87.

43. BOH refused to issue a construction permit for the installation of the proposed subsurface sewage disposal system.

44. Plaintiff's plan for the proposed subsurface sewage disposal system was in compliance with 310 CMR 15.02(5) and all other applicable sections of 310 CMR 15.00 as in full force and effect on 3/31/1983, and local bylaws.

45. Plaintiff had a constitutionally protected property interest in the approval of this regular subsurface sewage disposal system with a leach facility 50 feet away from the lake shoreline.

46. Plaintiff had a constitutionally protected property interest in the issuance of a construction permit for his subsurface sewage disposal system.

47. The Code of Massachusetts Regulations, thereafter CMR, was issued by the Department of Environmental Quality Engineering, thereafter DEQE and is authorized by M.G.L., c.21A,s.13. The DEQE was later renamed to Department of Environmental Protection, thereafter DEP.

48. Guided by discriminatory animus, the members of the BOH request that the plaintiff install a holding tank, in clear violation of 310 CMR 15.00 and the "TIGHT TANK POLICY," Sanitary Sewage- Department of Environmental Quality Engineering, February 24, 1977, which provides:

Page 7 of 95 Pages

      Existing Situation: A tight tank may be approved under Regulation 18.1 of Title 5 of the State Environmental Code (310 CMR 15.00) to eliminate an existing malfunctioning subsurface sanitary sewage disposal system when, in the opinion of the Regional Engineer having jurisdiction over subsurface sewage disposal, there is no feasible alternative. Evidence must accompany application for approval showing proof of no "feasible alternative." Reasonable variances from the code must be carefully considered prior to approval of any tight tank.

49. BOH refusal to approve plaintiff's 1st set of plans for a subsurface sewage disposal system is an attempt to prevent plaintiff from buying said property.

50. The arbitrary request of a distance of 100 feet between the leach facility and the shore line was made in an attempt to prevent plaintiff from buying said property.

51. May, June 1987: The BOH requests the plaintiff to buy more land to accommodate a leach field 100 feet away from the lake instead of the 50 feet required by 310 CMR 15.03(7), (as in full force and effect on 3/31/83). This request is arbitrary and has no base in law or equity.

52. May 23, 1987: The BOH posted a notice with the wrong date (June 23.1987) on the entrance door to the cottage on said property, declaring the dwelling a "health hazard," and ordering the cottage "not to be occupied for human habitation."

53. This order was arbitrary and capricious and had no base in law or equity.

54. The purpose was to oppress, discriminate, intimidate and to prevent and discourage plaintiff from buying the property.

55. The water supply, (hand pump), and the subsurface sewage disposal system, (privy), were both legal under the grandfather clause at that time.

56. May 23, 1987: Together with the forgoing notice, the BOH posted a separate document, a violation checklist, signed by Bob Dymon, inspector, and Harold Congdon, chairman.

57. The violations stated on such document were arbitrary, capricious, and had no base in law or equity.

58. May 23, 1987: Plaintiff was never notified about the alleged inspections of the cottage on May 15, 1987 at 5:40pm and May 20, 1987 at 4:30pm as outlined in the document mentioned in the previous paragraph. To the best of plaintiff's knowledge and belief, these alleged inspections never took place. At ro

time had any member of the BOH entered the dwelling for an inspection.

59. June 3, 1987: Owner of adjoining land, Priscilla Cohen, sends letter, denying plaintiff's inquiry to buy more land to accommodate a leach facility 100 feet away from the lake. Plaintiff's inquiry was to satisfy the unjust request by the members of the BOH.

60. June 11, 1987: Plaintiff bought property, deed 42672, book 6519, page 178, from previous owner, William F. Arnold. Plaintiff signed a purchase agreement on April 30, 1987, and closed on this day on the purchase of the property.

61. July 15, 1987: Supernant Corp. revised plaintiff's plan "proposed gravity system with holding tank below lake level."

62. This revision was according to an arbitrary and capricious request by the members of the BOH. This is the 2nd set of plans for plaintiff's subsurface sewage disposal system.

63. Three years later, plaintiff learned from Helen Kreiger that the chief of police of the town of Holland at that time, the building inspector, Ronald Benoit, at that time, and the members of the BOH at that time, conspired against plaintiff for the purpose of preventing plaintiff from buying said property by refusing to approve plaintiff's subsurface sewage disposal system plan, which a potential buyer needed to obtain a mortgage from a bank. Fortunately plaintiff had the funds to pay cash for the property, otherwise the conspirers would have succeeded in preventing plaintiff from buying said property. Helen Kreiger is a well known member of this community, and a member of the HCC to this day.

64. April 12, 1988: Plaintiff submits to BOH plan: Original Holding Tank by Suprenant Corp. Revised July 15, 1987. Proposed gravity system of Holding Tank 36' from the lake shoreline.

65. This is the 2nd plan for a subsurface sewage disposal system.

66. Members of the BOH approve plaintiff's 2nd plan under the condition that plaintiff will have to move the Holding Tank to higher level.

67. This request is arbitrary, capricious, and has no base in law or equity.

68. Plaintiff had a constitutionally protected property interest in the approval of a subsurface sewage disposal system plan with a leach facility.

69. June 17, 1988: BOH issues Certificate of Compliance for subsurface sewage disposal system with illegal Holding Tank.

70. July 12, 1988: Holland BOH approves "as-built" Holding Tank

       Plan by Cox Environmental Engineer, dated July 5, 1988.

71. This plan is in clear violation of 310 CMR 15.20, and 310 CMR 15.18(1), (as in full force and effect on 3/31/83).

72. This is the 3rd subsurface sewage disposal system plan.

73. Further, plaintiff never applied for a variance for a "tight tank" as required under 310 CMR 15.20.

74. Plaintiff did not need a variance and had a constitutionally protected property interest in the approval of a regular subsurface sewage disposal system with a leach facility.

75. March 20, 1989: Plaintiff buys adjoining piece of property, deed number 14974, book 7120, page 529.

76. Summer 1990: Plaintiff intends to install an artesian well on property he bought on March 20, 1989.

77. BOH denies issuing a permit, due to alleged owed back taxes for property.

78. Plaintiff was never notified and lawyers involved in the property transaction which took place on March 20, 1989, exercised their duty to notify respective offices of the transaction.

79. February 24, 1993: Plaintiff receives letter from the BOH, requesting information on frequency of occupation on his dwelling and frequency of pumping of his tight tank.

80. April 27, 1993: Letter to the DEQE by the plaintiff. In preparation of a second attempt to install a subsurface sewage disposal system with a leach facility, plaintiff inquires again in regard to local bylaws filed with the state, in particular, the required distance between the shore line of a lake and a leach facility.

81. May 11, 1993: Plaintiff submits new plan "PROPOSED SUBSURFACE SEWAGE TREATMENT & DISPOSAL SYSTEM PREPARED FOR PETER FREI OFF MAYBROOK ROAD- HOLLAND, MASS."

82. This plan is the 4th plan. This new plan consists of a septic tank and a leach pit at least 50 feet away from the lake, and more than 100 feet away from the well, as required by law.

83. BOH rejects 4th plan with leaching pit.

84. In a further attempt to prevent plaintiff from installing a subsurface sewage disposal system with a leach facility, BOH requests an impermeable barrier, 6' deep, 1'wide, and 90'long (compact clay, 4-mil double-thickness Polyethylene), allegedly to prevent sewage from leaching out sideways.

85. 310 CMR 15.00, (as in full force and effect on 3/31/83), does

not require such a barrier in this situation. Such a request is arbitrary, capricious, and outside the authority of the BOH.

86. Plaintiff had a constitutionally protected property interest in the approval of a regular subsurface sewage disposal plan as proposed in his 4th plan, without the requested impermeable barrier.

87. May 12, 1993: Response from the DEQE, stating that 50 feet distance is required, plaintiff should contact the HCC.

88. June 1, 1993: BOH issues a permit for a percolation test (number 60193-3).

89. In June of 1987, the BOH denied plaintiff this percolation test, without any legal grounds.

90. June 30, 1993: Plaintiff and his engineer, Richard Cox, Environmental Engineering Inc., submit new plan.

91. This is the 5th plan plaintiff submits to the BOH. This plan includes the requested impermeable barrier not needed or supported by 310 CMR 15.00.

92. July 7, 1993: Plaintiff files Notice of Intent, thereafter NOI, with the HCC, for proposed construction work including the installation of a leaching facility, a 90 linear foot impermeable barrier, and replacement of existing rock foundation underneath the existing cottage with a concrete foundation.

93. HCC refuses to issue receipt acknowledging the filing of this NOI, as requested by M.G.L., c.131,s.40.

94. July 30, 1993: DEP issues the file number 184-83 for the project.

95. August 18, 1993: HCC Public Hearing closed, DEP file number 184-83.

96. Public hearing with HCC was open for 42 days instead of the 21 day period in violation of 310 CMR 10.05(5)(b), 310 CMR 10.05(6)(a) and M.G.L., c.131,s.40.

97. Plaintiff did not give his consent to keep the public hearing open.

98. All feasible permits were obtained by plaintiff; therefore, defendant(s) also violated provisions under 310 CMR 10.05(3)(e) and 310 CMR 10.05(3)(f).

99. September 8, 1993: HCC in violation of 310 CMR 10.05(6)(a) failed to issue the Order of Condition within the 21 day time period, which expired this day.

100. This conduct is also in violation of M.G.L., c.131,s.40.

101. HCC delays issuing said Order of Conditions until December 15, 1993.

102. September 15, 1993: In violation of M.G.L., c.111,s.31E, BOH failed to make a decision within 45 days on submitted plans.

103. Plaintiff's 5th plan for a subsurface sewage disposal system became constructively approved on this day.

104. November 12, 1993: Richard Cox sends letter by certified mail to BOH requesting that BOH forward a copy of the Board s decision.

105. November 12, 1993: Richard Cox sends letter by certified mail to HCC requesting that HCC would forward a copy of the commissions decision.

106. November 18, 1993: Despite the constructive approval of plaintiff's subsurface sewage disposal system plan, BOH ignores the statutory provisions of M.G.L., c.111,s.31E and continues to harass and discriminate against plaintiff.

107. In a letter, the BOH stated that both HCC and BOH are "concerned about the possibility of leachate entering the Hamilton Reservoir;"

108. this is a capricious ridiculous attempt to thwart plaintiff's project and does not have any base in law or equity and is outside the BOH's jurisdiction.

109. This is an alleged personal concern of the Board members; the Board members don't have any discretion in this matter.

110. The letter states further,

   "because a tight tank had been installed on the property,"

111. plaintiff was forced to install this tight tank in violation of plaintiff's rights and in violation of 310 CMR 15.18(1) and the Tight Tank Policy; the letter states further,

   "the application for a disposal works construction permit is denied at this time."

112. This decision did not have any base in law or equity and was made after 3 months and 18 days instead of the 45 day period mandated under M.G.L., c.111,s.31E.

113. Plaintiff had a constitutionally protected property interest in the issuing of a disposal work construction permit, to install and add the leach facility.

114. December 15, 1993: 119 days after the submittal of the NOI,

(the law permits not more then 21 days), HCC issues "order of conditions" for proposed construction work including the installation of a leaching facility, a 90 linear foot impermeable barrier, and replacement of existing rock foundation with a concrete foundation.

115. The order of conditions provided:

> Installation of the subsurface sewage disposal system has been denied "Given the close proximity to the Hamilton Reservoir, steep side slopes, inadequate breakout distance and very sandy soil, (Perk rate - 2 min./inch) it is the opinion of the HCC that there is significant concern that leachate will contaminate the reservoir. Moreover, the proposed Septic System is to replace a tight tank. To have obtained approval from DEP for a tight tank, the applicant had to have proved that there was no other method of installing a subsurface sewage disposal system at that time. From the inspection of the property, there appears to be no change in the property from when the tight tank was approved."

116. The term "breakout distance" is a term used in situations with a so called "mounted subsurface sewage disposal system." Plaintiff's system is not a "mounted system."

117. HCC does not have any discretion in denying an application addressed to the BOH for installing a subsurface sewage disposal system. HCC is an independent municipal agency.

118. Plaintiff had a constitutionally protected property interest in the issuing of orders of conditions by the HCC, allowing plaintiff all proposed activities.

119. December 15, 1993: Humphrey Sutton, chairman of HCC, knew that plaintiff would leave the country in the beginning of October to spend the winter in Switzerland.

120. Instead of sending plaintiff the order of conditions no later than September 8, Humphrey Sutton waited another 98 days to send plaintiff the order of conditions.

121. Humphrey Sutton knew, or should have known, that plaintiff had only 10 days to appeal.

122. By mailing the letter to plaintiff's address in Brimfield, just 9 days before Christmas eve, he assured that it was impossible for plaintiff to receive the document in time to file a request for a superseding "Order of Conditions" on the unlawful denial from HCC with the DEP within the allowed time period.

123. December 29, 1993: Plaintiff filed a request for a superseding

"Order of Conditions" on denial by the HCC with the DEP (DEP file number 184-83). Plaintiff requests that DEP contact Richard Cox.

124. January 14, 1994: Letter from the DEP requesting unspecified title 5 variance documentation.

125. February 14, 1994: Richard Cox revised plaintiff's subsurface sewage disposal system plans according to the BOH's latest request: replacement of leach pit by leach field.

126. This is another arbitrary request outside the requirements of 310 CMR 15.00.

127. BOH also decides that there is no need for title 5 variance.

128. This is the 6th plan for a subsurface sewage disposal system

129. February 17, 1994: Richard Cox mailed copies of revised subsurface sewage disposal system plan to BOH, HCC, and DEP.

130. February 26, 1994: BOH noted receipt of revised septic plans, will forward plans to town sanitarian following ruling from HCC.

131. Ruling by HCC is arbitrary and capricious. BOH is independent sole agency having policing authority to approve subsurface sewage disposal system design applications.

132. February 28, 1994: Letter from HCC to Cox stating:

> "prior to review of this plan we will require a written explanation of why a tight tank was originally installed rather than a subsurface sewage disposal system, and what has changed which will allow the installation of a subsurface sewage disposal system and leaching field. Moreover, please supply the HCC with any documentation to or from the BOH or the DEP concerning the existing tight tank. Please note that a variance from DEP concerning the breakout distance will be required before we render our final opinion"

133. The request for a variance "concerning breakout distance" has no legality and is only applicable to so called "mounted" subsurface sewage disposal systems.

134. BOH, by law, is required to keep a record of all documents in regard to public meetings, see 310 CMR 15.24 (4), as in effect at that time.

135. Requests by the HCC do not have any base in law or equity.

136. Requests by the HCC are part of scheme to harass, discriminate and conspire with BOH to sabotage plaintiff's plan to improve

his property, and in the process, deprive plaintiff of the privileges secured to him by the constitution of the United States.

137. March 9, 1994: DEP denies Superseding Order of Conditions for NOI with the file number 184-83.

138. Submittal of requested variance from title 5 was not received.

139. Plaintiff's subsurface sewage disposal system as proposed on revised plans requires no variance and should have been constructed in 1988, 6 (six) years earlier.

140. April 3, 1994: The mandated 45 day period for reviewing septic plans according to M.G.L., c.111,s.31E, has elapsed for the second time.

141. Said plans had been submitted to BOH on February 16, 1994.

142. Plaintiff's subsurface sewage disposal system plans again became constructively approved according to s.31E.

143. Plaintiff has a constitutionally protected property interest in the approval of his plans.

144. May 5, 1994: Plaintiff files a request for an adjudicatory hearing on the denial of the Superseding Order of Conditions, file number 184-83.

145. June 14, 1994: Letter from Richard Cox to BOH, reminding them of the mandatory period of 45 days pursuant to M.G.L., c.111,s.31E, for reviewing septic plans, and that BOH is an independent Board as is the HCC. Also stating that plaintiff's plans are in compliance with title 5.

146. BOH is an independent Board, HCC is an independent Board.

147. June 27, 1994: Letter from BOH stating that plans submitted on February 16, 1994, 130 days ago, do comply with title 5 according to Sanitarian.

148. Instead of issuing the requested construction permit for which plaintiff has a constitutionally protected property interest and which became constructively approved twice pursuant to M.G.L., c.111,s.31E, BOH is ignoring the law and fails to issue the necessary construction permit.

149. July 21, 1994: Phone call from Mr. O'Connell, selectman, suggesting that plaintiff should submit his NOI at the upcoming public hearing on August 3, after which plaintiff could mail copy of NOI to the DEP, and if DEP would approve plaintiff's NOI, the BOH would approve plaintiff's subsurface sewage disposal system plan.

150. This is clearly improper, as BOH is an independent agency and is obligated to approve plaintiff's plan, for which plaintiff

       has a constitutionally protected property interest.

151. July 29, 1994: Filing of second NOI, (first filing took place on July 7, 1993), "The installation of a leaching facility, 90 linear foot impermeable barrier, regrading, looming & seeding. The replacement of an existing rock foundation and renovation of the existing roof."

152. HCC refuses to issue receipt acknowledging the filing of this NOI, as requested by M.G.L., c.131,s.40.

153. August 3, 1994: Public hearing with HCC on NOI number 184-86. Plaintiff's engineer, Richard Cox, is attending the meeting. This meeting will be kept open by the HCC until May 2, 1995.

154. August 8, 1994: DEP issues file number 184-86 for NOI filed on July 29, 1994.

155. August 17, 1994: HCC public hearing continues. Richard Cox is attending the meeting.

156. August 19, 1994: HCC fails to issue Order of Conditions for NOI filed by plaintiff on July 29, 1994, within the 21 day period in which HCC is mandated to issue such order pursuant to M.G.L., c.131,s.40.

157. Without plaintiff's consent, HCC keeps the public hearing on NOI, file number 184-86, open until May 2, 1995.

158. Such conduct is in violation of 310 CMR 10.05(5)(b).

159. August 22, 1994: Richard Cox is staking the subsurface sewage disposal system according to a request from HCC.

160. September 7, 1994: BOH reverses their decision of June 27, 1994. stating;

    "Use of a barrier to address steep slope issues and to lengthen the flow of the leachate requires a variance from the State." "The use of a pump to transfer waste directly from the house to the storage tank may require a variance from the state."

161. Pumping to a tight tank or holding tank does not require a variance, pumping to a septic tank does require a variance, see 310 CMR 15.09(1), (as in full force and effect on 3/31/83).

162. Further the BOH states in their letter:

    "In addition, it is our understanding that you plan to use the existing tight tank as a septic tank in your proposed system. Any alteration in the use of an existing tight tank requires a variance from the state."

163. This is another arbitrary request with no legal base, (see entry October 11, 1994).

164. The clay barrier was an arbitrary capricious request of the members of the BOH.

165. September 1994: BOH refuses to grant a variance for the impermeable barrier as requested by the very same Board.

166. BOH suggests to change plans back to a system without barrier, see entry May 11, 1993.

167. September 20, 1994: Plaintiff attends the HCC meeting. HCC keeps public hearing open.

168. October 5, 1994: Plaintiff attends another HCC meeting.

169. Members request that plaintiff withdraws his request for an adjudicatory Hearing on the denial of the Superseding Order of Conditions, file number 184-83, which plaintiff filed on May 5, 1994 with the DEP.

170. Contingent on compliance with this unlawful request, HCC promises to issue order of conditions on foundation work and work on roof of dwelling.

171. HCC keeps public hearing open without plaintiff's consent.

172. October 7, 1994: Plaintiff calls Mr. Golonka, DEP, requests a phone conference between Mr. Golonka, Richard Cox, and himself.

173. October 11, 1994: Phone conversation with Mr. Golonka, Mr. Richard Cox, and plaintiff. Golonka explains that no variance is needed to change a holding tank to a septic tank, as stated in the letter of BOH, dated September 7, 1994. Mr. Golonka will check plans in order to determine if the slope set back requirements comply with title 5. The use of a pump prior to a septic tank does need approval by the DEP. Mr. Golonka requests specification on pump.

174. October 17, 1994: HCC issues (after 56 days instead of 21 days) only a portion of the Order of Conditions, (NOI file number 184-86), the part with foundation and roof, making the capricious request to raise the house without using hydraulics, that all excavation for the proposed foundation would have to be done by hand, thus making it almost impossible to execute the work. The rest of the Order of Conditions is not issued until May 2, 1995.

175. Plaintiff had a constitutionally protected property interest in the issuance of the entire Order of Conditions no later than August 19, 1994, see M.G.L., c.131,s.40.

176. November 10, 1994: Following the request of the BOH, Richard

      Cox revises subsurface sewage disposal system plan by removing the impermeable barrier that members of the BOH requested on May 11, 1993.

177. This set of subsurface sewage disposal system plans is the 7th set.

178. November 15, 1994: Cox sends new plans, 7th set of plans, and requested information on sewage pump to BOH, DEP and HCC.

179. November 16, 1994: Plaintiff attends the HCC meeting and Zoning Board of Appeals, thereafter ZBA, meeting.

180. November 22, 1994: Plaintiff and his engineer, Richard Cox, are attending the BOH meeting. BOH denies plaintiff the right to a toilet and running water in the proposed two story garage.

181. BOH has no discretion in this matter. Plaintiff has a constitutionally protected property interest in having plumbing in his two story garage.

182. December 6, 1994: Plaintiff is attending the BOH meeting.

183. December 12, 1994: DEP requests additional information on pump and pump basin within 60 days.

184. December 27, 1994: DEP issues "Order to show cause re Dismissal," in regard to the request for an adjudicatory hearing on the denial of the Superseding Order of Conditions, file number 184-83. Since plaintiff filed second NOI on July 29, 1994, (file no. 184-86), this request and this adjudicatory hearing in itself, are insignificant and moot at this point.

185. January 27, 1995: Richard Cox sends additional information requested by DEP to DEP, HCC, BOH.

186. February 7, 1995: DEP issues "Final Decision- Order of Dismissal" on plaintiff's request for an adjudicatory hearing on the denial of the Superseding Order of Conditions, file number 184-83, docket number 94-040.

187. February 14, 1995: Letter from the DEP approving plaintiff's subsurface sewage disposal system.

188. April 4, 1995: BOH finally signs and approves plaintiff's plan titled "PROPOSED SUBSURFACE SEWAGE TREATMENT & DISPOSAL SYSTEM, PREPARED FOR PETER FREI OFF MAYBROOK ROAD- HOLLAND, MASS," and issues "Disposal Works Installer's Permit."

189. This is the wrong document, BOH should have issued a so-called "Disposal Works Construction Permit," according to 310 CMR 15.02(1) as in full force and effect on 3-31-83.

190. Plaintiff insisted in getting the proper document, but BOH

members were unable to produce the correct document.

191. Plaintiff had a constitutionally protected property interest in the approval of this regular subsurface sewage disposal system with a leach facility from the outset.

192. BOH to this date (filing of this complaint) continues with the scheme of harassment and refuses to issue "Certificate of Compliance" for arbitrary, capricious reasons.

193. May 2, 1995: HCC is closing public hearing which was opened August 3, 1994.

194. Public hearing was open for 262 days, instead of the mandatory 21 day limit, prescribed under 310 CMR 10.05(6)(a) and M.G.L , c.131,s.40.

195. June 7, 1995: HCC issues Order of Conditions for NOI file number 184-86 filed on July 29, 1994.

196. HCC also violated 310 CMR 10.05(5)(b), as plaintiff did not consent in any way to keep the public meeting open.

197. June 13, 1995: Letter from plaintiff to HCC informing HCC of start of construction work on leach trench.

198. June 21, & 22, 1995, final inspection of the installed subsurface sewage disposal system. Maria Scott, a member of the BOH; Richard Cox, engineer; Glen Hitchcock, installer; and plaintiff, owner, were present.

199. During a BOH meeting, Sally Blais, chairman, refused to acknowledge the fact that this inspection took place, in an attempt to justify her refusal to allow plaintiff to connect his two-story garage to the subsurface sewage disposal system, see entry of March 21, 2000.

200. June 22, 1995: In conformance with 310 CMR 15.021(3), on or around this date, Richard Cox sends a letter with as built plan to the BOH.

201. As the BOH issued the wrong permit, (see entry April 4, 1995), (a "Disposal Works Installer's Permit" instead of a "Disposal Works Construction Permit"), the part that the member of the Board would sign-off after inspecting the installed system, was not included with the letter.

202. This is the fault of BOH, and is not the plaintiff's, his engineer's, or the installer's fault.

203. Plaintiff tried to get the correct permit, and members of the BOH refused to comply, see entry April 4, 1995.

204. To this day, plaintiff is still waiting for a "Certificate of Compliance" which needs to be issued by the BOH pursuant to 310 CMR 15.021(3), (as in full force and effect on 3/31/83).

205. Plaintiff has a constitutionally protected property interest in the issuance of document "Certificate of Compliance," see also entries of March 21, 2000, March 20, 2001, April 3, 2001.

206. October 14, 1995: Humphrey Sutton conducts a visit to plaintiff's property, complains about the utility trench not being part of the NOI, and is making the false accusations that the shed would not conform to plans submitted.

207. October 15, 1995: Humphrey Sutton is back on the property with John Martin, another member of the HCC. They check out the site, and have nothing to complain about. Both leave without comment.

208. October 17, 1995: Richard Blease, electrical inspector for the town of Holland, inspects utility trench through the lake bed.

209. According to Blease, the trench is ok, but power lines could not be buried underneath the water, due to an alleged violation of the local and national electrical code. The conduit for phone, cable TV, and propane gas are allowed according to Blease.

210. Blease was wrong with his allegation, see entry of January 16, 1996, and April 5, 1996.

211. Subsequently, Mr. Blease, electrical inspector, refuses to issue permit by avoiding phone calls and ignoring letters from plaintiff. Only after intervention by Jim Foley, selectman, Blease acknowledges plaintiff's effort to get a permit.

212. Blease refuses to inspect the "rough in" of plaintiff's dwelling.

213. Once plaintiff wanted to have the "rough in" inspected as required by law, Blease chose to resign, in order to avoid having to inspect plaintiff,s "rough in" of his remodeled dwelling. Plaintiff had to wait until the town found another electrical inspector.

214. October 18, 1995: After removing conduit for power lines, in compliance with another unjustified request by a town official, plaintiff back fills the trench and is flying to Switzerland the same day.

215. October 18, 1995: Letter from HCC stating that plaintiff caused work to be performed in violation of CH.XV of the town of Holland bylaws, trenching and installing conduit, structural work not conforming, and also requesting plaintiff to appear before the HCC on posted meeting on October 24, 1995.

216. October 18, 1995: Initiated by Humphrey Sutton, HCC is posting a "cease and desist" order on plaintiff's project in which Plaintiff remodelled his dwelling.