>Reservoir which we consider to be an extreme topographical condition impeding access to the buildable portion of one of the lots."

The narrowest point of said property, and there is only one, measures more then 60 feet. The lot referred to as the "buildable portion" is already improved and has a dwelling. The narrow spot the minutes refer to is located outside the newly created lot A.

421. Further:

    >"The buildable portion of the rear lot consists of several areas and the Board was concerned that if an ANR were approved, more development would occur which would further impede access to the public way."

    This is another ludicrous claim. The alleged concern is outside the Board's authority. Plaintiff's 2nd ANR plan with the final subdivision of plaintiff's property, which is a peninsula, created only one additional building lot, there is no more land to divide on said peninsula, and there will never be more for the foreseeable future (until the next ice age).

422. Despite plaintiff's request and plaintiff informing defendant(s) of their statutory obligation to mail a written notification of the Board's final action, defendant(s) refused to mail a written notice of it's decision to the plaintiff, as required pursuant to M.G.L., c.41,s.81P.

423. Earl Johnson made a comment to the fact that the Board would not mail such document and stated that the Board would mention the decision in the minutes of the meeting.

424. During his deposition in Superior Court, Earl Johnson committed perjury. He testified under oath, in the presence of his counsel Vincent McCaughey, that the Board mailed plaintiff a copy of the Board's decision, see entry December 30, 2002.

425. Debra Benveniste stated in a letter dated December 22, 2003, that the Board did not mail such notification to the plaintiff on the Board's decision on plaintiff's 1st ANR plan, only on plaintiff's 2nd ANR plan.

426. Town counsel Vincent McCaughey knew, or should have known that plaintiff's 1st ANR was in compliance with all applicable requirements and regulations, such as M.G.L. and zoning bylaws of the town of Holland, and that the members of the PBH had no discretion in deciding plaintiff's application, and that endorsement of plaintiff's 1st ANR plan by the PBH was mandatory according to M.G.L., c.41,s.81P.

427. Despite his involvement as legal advisor, Vincent McCaughey, in furtherance of the ongoing conspiracy did nothing to prevent the commission of the wrongs and therefore violated

M.G.L., c.265,s.37 and M.G.L., c.221,s.38.

428. July 15, 2002: Plaintiff went to town hall and requested copy of Minutes to PBH meeting of July 2, 2002. The town clerk could not produce a copy. The most recent copy of the minutes on file were the minutes to the meeting of April 2, 2002.

429. July 23, 2002: The PBH failed to take final action and failed to give written notice of its decision to the plaintiff within the 21 day period, statutory requirements pursuant to M.G.L., c.41,s.81P.

430. Plaintiff planed to subdivide said parcel into three lots from the beginning. Plaintiff's surveyor was unable to survey the entire lot prior to June 4, 2002, and produced an ANR plan with a partial subdivision showing only one newly created lot, lot A. Plaintiff decided to submit ANR plan with just one newly created lot, lot A, on June 4., 2002, which was his 1st ANR plan.

431. Realizing that the defendant(s) would have to be sued by the plaintiff in order to obey the law and respect plaintiff's rights , plaintiff subsequently filed a second application for an ANR subdivision plan with the final subdivision dividing said property into three lots, lot B, already improved and built upon, and two additional building lots, lot A and lot C. This 2nd ANR is marked as "Plan of land in Holland, Mass. prepared for plaintiff, owner," dated October 14, 2002.

432. October 14, 2002: Plaintiff's surveyor finally finishes plaintiff's 2nd ANR plan.

433. October 15, 2002: Plaintiff submitted, during a regular meeting of the Planning Board, his 2nd ANR plan, titled: "PLAN OF LAND IN HOLLAND, MA, PREPARED FOR PETER FREI (owner), together with attachment "FORM A."

434. In a "good faith" attempt and not out of a legal necessity, plaintiff proposed to make the preexisting nonconforming adjoining lot a conforming lot by adding approximately 530 feet of frontage along the private way and Maybrook Road to the 164 feet of existing frontage and 33,811 square feet to the 28,950 existing square feet (adding parcel 1 and parcel 2, to book 6519, page 178, as outlined in "FORM A"), proposing to widen the private way from 12 feet to 18 feet, and to straighten and to level the private way.

435. Plaintiff's plan sought endorsement and certification for the creation of three (3) lots on Hamilton Reservoir.

436. Plaintiff's plan did not create a subdivision pursuant to M.G.L., c.41,s.81P, requiring approval by the PBH.

437. Plaintiff's 2nd ANR plan as submitted to the PBH is in compliance with all applicable requirements and regulations, under M.G.L. and zoning bylaws of the town of Holland.

438. Members of the PBH had no discretion in endorsing plaintiff's 2nd ANR application. Endorsement of plaintiff's 2nd ANR plan by the PBH was ministerial act and mandatory according to M.G.L., c.41,s.81P.

439. Plaintiff had a constitutionally protected property interest in the endorsement of his 2, ANR plan.

440. October 17, 2002: Plaintiff filed a written notice with the town clerk on submission of said plan pursuant to M.G.L., c.41,s.81T.

441. November 7, 2002: Contrary to the provisions of M.G.L., c.41,s.81P, the Board failed to act upon plaintiff's submission within 21 days. M.G.L., c.41,s.81P requires that endorsement be entered "forthwith" by the PBH if plan does not involve a subdivision.

442. November 7, 2002: By the PBH's inaction, plaintiff's 2nd ANR plan becomes constructively endorsed according to M.G.L., c.41,s.81P.

443. PBH failed to take a vote (final action) and failed to send plaintiff "written notice of its determination," two statutory requirements pursuant to M.G.L., c.41,s.81P.

444. November 19, 2002: Plaintiff, accompanied by three witnesses, asked the town clerk if he had any decision filed from the PBH on his 2nd ANR plan.

445. Town clerk was unable to produce any documents and stated that he did not have anything on file on plaintiff's 2nd ANR plan. Afterwards, plaintiff attended the PBH meeting and Debra Benveniste was able to produce a copy of the PBH's written determination on plaintiff's 2nd ANR plan.

446. The members of the PBH inform plaintiff that the Board refused to endorse his 2nd ANR plan.

447. Plaintiff informs the Board, that he will file a lawsuit in Superior Court against the Board, since the Board failed to take "final action," failed to follow proper procedures, and also failed to notify plaintiff by mailing a written notice of the Board's determination. These are statutory requirements under M.G.L., c.41,s.81P and requirements of the open meeting law M.G.L., c.39,s.23B.

448. November 19, 2002: On or after this day, members of the PBH fraudulently falsify the official record (minutes) to the meeting of October 16, 2002. Members of the Board crossed out by hand the words "will deny" and added "voted to deny" by hand.

449. With this unlawful act, the members of the PBH falsified the record to reflect the taking of a vote (final action) on

plaintiff's 2nd ANR plan, which in reality never took place. This act by the members of the PBH is a malicious and deliberate violation of M.G.L., c.268,s.6A, and the open meeting law, M.G.L., c.39,s.23B, and M.G.L., c.265,s.37.

450. Town counsel, Vincent McCaughey, knew or should have known, that plaintiff's 2nd ANR was in compliance with all applicable requirements and regulations, such as M.G.L. and zoning bylaws of the town of Holland, and that the members of the PBH had no discretion in deciding plaintiff's application, and that endorsement of plaintiff's 2nd ANR plan by the PBH was mandatory according to M.G.L., c.41,s.81P. Despite his involvement as legal consultant, Vincent McCaughey, in furtherance of the ongoing conspiracy, did nothing to prevent the commission of the wrongs and therefore violated M.G.L., c.265,s.37.

451. November 20, 2002: In compliance with Mass.R.civ.P., Rule 4, plaintiff had Summons with complaint served to the defendant(s), the Planning Board of the town of Holland and the town of Holland, for a petition for an order in mandamus

452. On the same day, plaintiff drove to Springfield to file his complaint with the Superior Court, docket number HDCV2002-1196. On his way to the Superior Court, plaintiff passed a cruiser of the Holland Police. A Police officer was outside his cruiser talking to someone. Plaintiff passed cruiser driving at a speed not exceeding the posted speed limit. In furtherance of an ongoing conspiracy, said Police officer, acting in concert with Kevin Gleason, Earl Johnson, and possibly other town officials, chased after plaintiff with his emergency lights on, stopped plaintiff, and issued an unjustified ticket, alleging that plaintiff was driving at a speed of 52 miles an hour and then issuing a ticket claiming a speed of 42 miles an hour, instead of the posted 30 miles an hour.

453. This action constitutes intimidation of a witness, conspiracy to obstruct justice, retaliatory discrimination for exercising his constitutional rights granted under U.S.C.A. Const. Amend. 1.

454. Plaintiff contested the unjustified citation for speeding, which was thrown out as "ridiculous" during a hearing before Mr. Riddle, Magistrate of the Palmer district court, on April 1, 2003.

455. November 21, 2002: Defendant Debra Benveniste mailed plaintiff letter, "notice of decision," one day after plaintiff served Summons with complaint to the PBH, defendant(s).

456. This document was mailed 36 days after plaintiff submitted his 2nd ANR plan, and not within the 21 day period as mandated by M.G.L., c.41,s.81P.

457. Plaintiff had a buyer for one of said lots, lot A, and was

unable to sell same due to the failure of the Defendant(s) to properly act upon his submission of his plan.

458. December 10, 2002: Notice of deposition of three members of the PBH.

459. December 16, 2002: Answer of the defendant and counterclaim.

460. December 17, 2002: Filing of plaintiff's request for entry of default.

461. December 18, 2002: Letter from Vincent McCaughey, attorney of defendant(s), containing misleading manipulative statements stating facts about a phone conversation between plaintiff and Vincent McCaughey that were incorrect.

462. December 19, 2002: Letter from plaintiff to Vincent McCaughey, attorney of defendant(s), setting the record straight.

463. December 30, 2002: Plaintiff deposes Joanne May and Earl Johnson Debra Benveniste ignores the notice. At a deposition, she testified that she had to work that day.

464. Deponent Earl Johnson, member of the PBH and town selectman, and represented by counsel Vincent McCaughey, committed perjury when he testified under oath. Quoting Mr. Johnson:

> "But in essence, Mr. Frei we denied your project (1st ANR plan) back in July and sent you a letter to that effect,"

465. Compliance or noncompliance of the notification requirement, mandated under M.G.L., c.41,s.81P, is a material matter in this case.

466. Earl Johnson, in furtherance of an ongoing conspiracy between Debra Benveniste, himself, and other town officials, testified falsely to a material matter which he did believe not to be true and testified that the PBH sent plaintiff a letter denying plaintiff's 1st ANR plan, whereas in truth and in fact, the defendant, then and there, well knew that the PBH failed to notify plaintiff, and that he was swearing falsely in violation of M.G.L., c.268,s.1.

467. Debra Benveniste admitted in a letter, dated December 22, 2003, that the PBH failed to comply with the mandatory notification requirement and failed to mail such document on plaintiff's 1st ANR plan.

468. Interestingly, Earl Johnson was not even questioned to this fact; Earl Johnson volunteered this information, and willfully and knowingly committed perjury.

469. This deposition took place at the offices of Catuogno Court Reporting Services, One Monarch Place, 1414 Main Street, Springfield Massachusetts, at 9:30 a.m.

470. January 21, 2003: According to the minutes of the PBH meeting on this date, defendant Debra Benveniste, chairman of the PBH, allegedly placed a "no trespassing order" against plaintiff because plaintiff asked town clerk for her address.

471. As defendant Debra Benveniste failed to follow the notification requesting her attendance of the deposition scheduled for December 30, 2002, plaintiff needed Benveniste's address to serve her a subpoena for the rescheduled deposition.

472. January 28, 2003: Plaintiff inquires with the Holland Police about the break-in of June 22, 2002, since he has not heard any thing from the court and he is unable to get restitution for the damage done by the suspects. Kevin Gleason, now Chief of Police, explained to plaintiff, that it would not be unusual if plaintiff did not hear any thing from the court. A lot of times, suspects would enter a plea-bargain or the case would get thrown out without notification or involvement of the victim.

473. No attempt was made by the chief of police to find out why plaintiff had not heard anything or if the two juveniles were arraigned or charged.

474. Plaintiff claims that Kevin Gleason deliberately failed to forward the papers and failed to file them with the court.

475. Kevin Gleason conspired with Sally Blais, Earl Johnson, and maybe other town officials against plaintiff.

476. March 10, 2003: On his way home, plaintiff was followed by Holland Police, in a marked police cruiser, crossing the state line into Connecticut. As plaintiff pulls over to the left side at the entrance to a sand pit off of Gilbronson Road, (Connecticut) and stops his car, the officer in the marked cruiser stops his cruiser and blinds plaintiff with his search light for no reason. The Holland Police Department does not have any jurisdiction in the state of Connecticut. The officer finally drove off without any further actions. This was an attempt to intimidate plaintiff.

477. March 14, 2003: Kevin Gleason explained to plaintiff that he allegedly filed the papers in juvenile court in Springfield. Kevin also explained, that he would be more than glad to re-file the papers in case they could not find the copy he (allegedly) filed in Springfield with the juvenile court on June 24, 2002.

478. March 19, 2003: Plaintiff talks to Assistant District Attorney, Richard Morse, at the Superior Court House in Springfield. Plaintiff suspects that Kevin Gleason, chief of police, never forwarded papers on the "break-in" of his cottage due to discriminatory animus.

Page 46 of 95 Pages

479. Kevin Gleason did get his job as Chief of Police in Holland, because one of the Selectmen, Earl Johnson, made it possible. Earl Johnson is also a member of the PBH.

480. Richard Morse's investigation into the matter revealed that there was no indication to confirm that Kevin Gleason ever filed the papers regarding the break-in with the court as stated, or that the two juveniles were ever charged.

481. April 7, 2003: Vincent McCaughey, in his "DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT," states:

> "It is apparent that the Plaintiff was aware of the time frame in his failure to appeal by a subsequent filing of an "ANR" plan in October of 2002. The refusal of the Planning Board of the Town of Holland to endorse that plan is currently before this Court."

482. Vincent McCaughey knew, or should have known, that plaintiff filed his 2nd ANR to have his parcel subdivided into 3 lots. Plaintiff's 1st ANR subdivided his parcel into 2 lots.

483. In order to deceive the court, Vincent McCaughey made wrong statements of facts.

484. August 21, 2003: Vincent McCaughey produces documents requested by plaintiff per discovery order. Plaintiff requested, among other documents, copies of all ANR plan applications submitted since May 1, 1997.

485. All of the submitted ANR plans but plaintiff's ANR plan were accepted and endorsed by the PBH.

486. One of the ANR plans was accepted despite the fact that it did not comply with the frontage requirements.

487. September 11, 2003: During a deposition in which plaintiff deposed Debra Benveniste, Vincent McCaughey interfered in an attempt to intimidate plaintiff and hinder plaintiff from deposing Debra Benveniste. Vincent McCaughey repeatedly objected to plaintiff's questions. Plaintiff asked him for the basis of his repeated and interfering objections; Mr. McCaughey's answer was, quote:

> "It's a leading question,"

plaintiff:
> "I have a right to lead,"

Vincent McCaughey:
> "You do not have a right to lead. Mr. Frei, I am not going to debate the issue,"

Page 47 of 95 Pages

plaintiff:

"It is an issue. I just want to have it on the record...."

488. Plaintiff then informed Mr. McCaughey that plaintiff is aware of Mass. Rules of Civ. P. rule 43(b), after which Mr. McCaughey stopped interfering.

489. Mr. McCaughey knew, or should have known, that plaintiff has the right to examine Debra Benveniste, defendant, by leading questions.

490. September 12, 2003: Plaintiff notified Robert Ford, former town clerk, in a timely fashion, of a deposition scheduled for this day, in which plaintiff was going to depose Robert Ford

491. Robert Ford had moved to Connecticut and refused to accept certified letter containing notice at his new address.

492. Robert Ford did not attend the deposition.

493. October 16, 2003: During a deposition of Debra Benveniste, chairman of the PBH, Debra Benveniste under oath swore that she would testify truly, did willfully testify falsely to a material matter which she did not believe to be true, to wit: the defendant testified that the members of the PBH voted on plaintiff's 1st ANR plan during the regular meeting of July 2, 2002, when in fact, the members of the PBH did not take a vote during that meeting, (final action).

494. To utter Debra Benveniste's perjury, plaintiff handed her document "written notice of decision," which the PBH is mandated to mail the applicant, (plaintiff). Plaintiff then asked Debra Benveniste to identify the document. Debra Benveniste identified the document, testified that she wrote the document, and that she signed the document.

495. This document "written notice of decision" is dated June 24, 2002, handwritten and signed by Debra Benveniste one week prior to the alleged vote that was allegedly taken during the meeting of July 2, 2002. This document is also time stamped by the town clerk on June 24, 2002.

496. Debra Benveniste, defendant, in truth and in fact, then and there well knew that the members of the PBH did not take a vote on plaintiff's 1st ANR plan during the meeting on July 2, 2002, (final action), and that Debra Benveniste was swearing falsely in violation of M.G.L., c.268,s.1 and M.G.L., c.265,s.37.

497. Debra Benveniste was represented by counsel, Vincent McCaughey, who was present at all times during this deposition which took place at the offices of Catuogno Court Reporting

Page 48 of 95 Pages

Services, One Monarch Place, 1414 Main Street, Springfield, Massachusetts, at 9:00 a.m. Perjured testimony was in regards to a material issue in the Superior Court case, docket number HDCV2002-1196.

498. October 16, 2003: During the same deposition of Debra Benveniste, chairman of the PBH, Debra Benveniste under oath swore that she would testify truly, did willfully testify falsely to a material matter which she did not believe to be true, to wit: the defendant testified, that the members of the PBH mailed a "written notification" on the PBH's decision on plaintiff's 1st ANR plan application to plaintiff, when in fact Debra Benveniste, in truth and in fact, then and there, well knew that the members of the PBH failed to mail said document "written notification" to plaintiff, and that Debra Benveniste was swearing falsely in violation of M.G.L., c.268,s.1, and M.G.L., c.265,s.37.

499. Debra Benveniste was represented by counsel, Vincent McCaughey, who was present at all times during this deposition which took place at the offices of Catuogno Court Reporting Services, One Monarch Place, 1414 Main Street, Springfield, Massachusetts, at 9:00 a.m. Perjured testimony was in regards to a material issue in the Superior Court case, docket number HDCV2002-1196.

500. October 16, 2003: During the same deposition of Debra Benveniste, chairman of the PBH, Debra Benveniste under oath swore that she would testify truly, did willfully testify falsely to a material matter which she did not believe to be true, to wit: the defendant testified that plaintiff was present during the alleged taking of the vote by the PBH, when in fact Debra Benveniste, in truth and in fact, then and there, well knew that plaintiff could not have been present, as the PBH never took a vote, and that Debra Benveniste was swearing falsely in violation of M.G.L., c.268,s.1, and M.G.L., c.265,s.37.

501. Debra Benveniste was represented by counsel, Vincent McCaughey, who was present at all times during this deposition which took place at the offices of Catuogno Court Reporting Services, One Monarch Place, 1414 Main Street, Springfield, Massachusetts, at 9:00 a.m. Perjured testimony was in regards to a material issue in the Superior Court case, docket number HDCV2002-1196.

502. December 29, 2003: In the JOINT PRE-TRIAL MEMORANDUM, Mr. McCaughey deliberately stated facts wrong, known to him to be false. He stated, quote:

> "This case has been pleaded by the plaintiff as an appeal of the denial of an ANR plan yet he is seeking damages for said denial."

503. Counsel McCaughey is under "continuous obligation" to inform himself about the facts of the case. Vincent McCaughey, by

making this false statement and others, violated M.G.L., c.221,s.38, M.G.L., c.265,s.37; and engaged in unethical conduct in violation of MA R S CT RULE 3:07 (rule 3.3, rule 3.4).

504. Plaintiff pleaded under COUNT I:

> Defendant(s) failed to execute their non-discretionary duty and therefore constructively endorsed plan as "no approval required plan,"
>
> Wherefore, Plaintiff respectfully demands that judgment be entered in his favor and against the defendant(s);
>
> that the court issues an order of Mandamus against the Defendant(s), and that the court compels the Defendant(s) to endorse plan submitted by Plaintiff without any further delay, and that Defendant(s) issue required certificate;

505. Plaintiff never pleaded to be aggrieved by the decision of the PBH, instead, Plaintiff claimed that failure of the PBH to take final action concerning 2nd ANR plan within required time resulted in endorsement being deemed granted.

506. Plaintiff suggested to defendant(s) attorney during preparation of the joint pre trial hearing in the Superior Court case, docket number HDCV2002-1196, to waive the protection of the best evidence rule. Defendant(s) attorney declined and insisted to invoke the protection.

507. December 16, 2003: To obtain authenticated and certified copies of needed minutes and other documents, plaintiff together with a witness attended the open meeting with the PBH on this day.

508. Despite the fact that the needed members attended the meeting, Debra Benveniste, chairman, and Joanne May, clerk; Debra Benveniste said, quote: "I'm in a meeting. I don't have time for that," and "I want to talk to Vincent McCaughey before I give you anything." Plaintiff showed her copy of rule 44 of the Mass. Rules of civ. P. She then promised to send plaintiff the requested copies, as long as it would be okay with Vincent McCaughey, defendant(s) counsel.

509. December 22, 2003: Debra Benveniste sends letter to plaintiff, stating falsely, that the keeper of the records would be the town clerk and a request for true copies would have to be made in writing to the town clerk, despite plaintiff's effort to educate Debra Benveniste of the statutory previsions.

510. Debra Benveniste also promised in said letter, that she would send plaintiff a copy of the minutes to the meeting of

December 16, 2003, which would be approved at the next meeting on January 20, 2004.

511. January 5, 2004: Plaintiff sends letter to town clerk, requesting certified true copies of documents needed for trial preparation.

512. March 23, 2004: Town clerk sends letter to plaintiff, explaining that town clerk would not be statutory custodian of minutes and other documents of the PBH.

513. To this day, the filing date of this complaint, plaintiff was unable to get true copies despite numerous phone calls and visits with the town clerk.

514. Debra Benveniste also never mailed the copy of the minutes to the PBH meeting of December 16, 2003, she promised to send.

**COUNT I,** (violation of equal protection of the laws)

515. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 514 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 39-48 above, and further states, that

516. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, defendant(s), and other members of the BOH, refused to issue plaintiff a percolation test permit, instead, the BOH requested that plaintiff install a septic system with a holding tank (tight-tank), without a leach facility, in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L , c.265,s.37.

517. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L. Defendant(s) therefore violated plaintiff's right to equal protection under the laws, guaranteed under Article I of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts and U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.

518. Defendant(s) had no discretion in approving or endorsing plaintiff's plan or application, or issuing plaintiff the sought permit, which was in compliance with all statutory requirements under M.G.L., and was also in compliance with all applicable sections of the Code of Massachusetts Regulations, and applicable bylaws of the town of Holland.

519. Defendant(s) were motivated by bias, bad faith, or improper motive.

520. By their actions, defendant(s) abused their power, or employed their power as an instrument of oppression and interfered or

attempted to interfere with M.G.L., c.265,s.37.

521. Plaintiff had an entitlement in the approval or endorsement of his plan, or issuing of the sought permit, and approval or endorsement or issuing of plan or application or permit, was ministerial act, mandated by law.

522. Defendant(s) do not enjoy qualified governmental immunity, as such immunity is only available for discretionary acts.

523. Defendant(s) arbitrary, irrational conduct is not rationally related to legitimate concerns of actors, government or public interest, and injured plaintiff directly or indirectly in his person and personal property.

524. Defendant(s) singled out plaintiff and treated him different than other persons in the same or similar situations, without respect to the statutory criteria, which the equal protection clause forbids.

525. Plaintiff informed defendant(s) of his rights and informed defendant(s) of the detriment of their unlawful acts. Defendant(s) therefore had knowledge of the wrongs to be done, and would have had the power to prevent the commission of the wrongs, but failed to do so.

526. This denial of plaintiff's right to equal protection under the laws by the defendant(s), consistently relates to the development, enjoyment, and/or sale of part of his property.

527. Defendant(s) violations create on their face a mandatory entitlement for redress.

528. Defendant(s) acted at all times under color of state law in their treatment of plaintiff's various applications and other actions.

529. As a result of the defendant(s)' violation of plaintiff's right to equal protection of the laws, plaintiff suffered one or more of the following: Substantial damages, including but not limited to, delayed and/or blocked development of his property, denial of enjoyment of his property, failed execution of sale of part of his property, lost profits, inability to finance the completion of his two-story garage, and extreme mental and emotional distress.

**COUNT II**, (violation of equal protection of the laws)

530. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 471 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 41-48, and 518-529 above, and further states, that:

531. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, defendant(s), and other members of the BOH, failed to approve plaintiff's 1st set of plans for an individual subsurface sewage disposal system and requested instead that plaintiff submit plans without a leaching facility, and with a holding tank (tight-tank) instead, in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L., c.265,s.37.

532. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L. Defendant(s) therefore violated plaintiff's right to equal protection under the laws, guaranteed under Article I of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts and U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.


   **COUNT III,** (violation of equal protection of the laws)

533. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 532 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 43-48, and 518-529 above, and further states, that:

534. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, defendant(s), and other members of the BOH, failed to approve plaintiff's application for a construction permit for an individual subsurface sewage disposal system and requested instead that plaintiff install a septic system with a holding tank (tight-tank), without a leaching facility, in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L., c.265,s.37.

535. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L. Defendant(s) therefore violated plaintiff's right to equal protection under the laws, guaranteed under Article I of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts and U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.


   **COUNT IV,** (violation of substantive due process)

536. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 535 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 39-48 above, and further states, that:

537. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, defendant(s), and other members of the BOH, refused to issue plaintiff a percolation test permit, instead, the BOH

requested that plaintiff install a septic system with a holding tank (tight-tank), without a leaching facility, in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; and M.G.L., c.265,s.37.

538. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L., without due process. Defendant(s) therefore violated plaintiff's right to substantive due process, guaranteed under U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.

539. Defendant(s) deliberate egregious misconduct is shocking to the conscience, and/or plaintiff has a constitutionally protected property interest or entitlement in the approval or endorsement of his plan or application, or issuing of the sought permit.

540. Approval or endorsement of plan or application, or issuing of permit, was ministerial act, mandated by law.

541. Defendant(s) were motivated by bias, bad faith, or improper motive.

542. By their actions, defendant(s) abused their power, or employed their power as an instrument of oppression and interfered or attempted to interfere with M.G.L., c.265,s.37.

543. Plaintiff was not heard at a meaningful time in a meaningful manner by the defendant(s), and proceedings were fundamentally flawed, inadequate, irregular and unlawful.

544. Defendant(s) had no discretion in approving or endorsing plaintiff's plan or application, or issuing plaintiff the sought permit, which was in compliance with all statutory requirements under M.G.L.; and was also in compliance with all applicable sections of the Code of Massachusetts Regulations and applicable bylaws of the town of Holland.

545. Defendant(s) do not enjoy qualified governmental immunity, as such immunity is only available for discretionary acts.

546. Defendant(s) arbitrary, irrational conduct is not rationally related to legitimate concerns of actors, government or public interest, and injured plaintiff directly or indirectly in his person and personal property.

547. Plaintiff informed defendant(s) of his rights and informed defendant(s) of the detriment of their unlawful acts. Defendant(s) therefore had knowledge of the wrongs to be done, and would have had the power to prevent the commission of the wrongs, but failed to do so.

548. This denial of plaintiff's right of due process consistently relates to the development, enjoyment, and/or sale of part of

his property.

549. Defendant(s) violations create on their face a mandatory entitlement for redress. Defendant(s) violation reach the constitutional threshold.

550. Defendant(s) acted at all times under color of state law in their treatment of plaintiff's various applications and other actions.

551. As a result of the defendant(s)' violation of plaintiff's right to substantive due process, plaintiff suffered one or more of the following: Substantial damages, including but not limited to, delayed and/or blocked development of his property, denial of enjoyment of his property, failed execution of sale of part of his property, lost profits, inability to finance the completion of his two-story garage, and extreme mental and emotional distress.

### COUNT V, (violation of substantive due process)

552. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 551 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 41-48, and 539-551 above, and further states, that:

553. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, defendant(s), and other members of the BOH, failed to approve plaintiff's 1st set of plans for an individual subsurface sewage disposal system and requested instead that plaintiff submit plans without a leaching facility and with a holding tank (tight-tank) instead. BOH also failed to disapprove application (1st set of plans) with a written statement of the reason for such disapproval. BOH violated by its actions and inactions 310 CMR 15.00; M.G.L., c.111,s.31E; and M.G.L., c.265,s.37.

554. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L., without due process.

555. Defendant(s) therefore violated plaintiff's right to substantive due process, guaranteed under U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.

### COUNT VI, (violation of substantive due process)

556. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 555 above, with the same force and effect as if herein set forth, with

emphasis on paragraphs 41-48, and 539-551 above, and further states, that:

557. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, defendant(s), and other members of the Board, failed to approve plaintiff's application for a construction permit for an individual subsurface sewage disposal system and requested instead that plaintiff install a septic system with a holding tank (tight-tank), without a leaching facility, in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L., c.265,s.37.

558. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L., without due process.

559. Defendant(s) therefore violated plaintiff's right to substantive due process, guaranteed under U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.

**COUNT VII,** (interfering with contract)

560. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 559 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 37-59 above, and further states, that:

561. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, intentionally and purposefully and with malice refused to issue plaintiff a percolation test permit and failed to approve plaintiff's 1st set of plans for an individual subsurface sewage disposal system. BOH also failed to disapprove application (1st set of plans) with a written statement of the reason for such disapproval, and, failed to approve plaintiff's application for a construction permit for an individual subsurface sewage disposal system and instead asked plaintiff to buy more land he did not need, and, forced plaintiff to design and install a subsurface sewage disposal system without a leach facility, utilizing a holding tank (tight-tank) instead, and declaring the dwelling on said property as a "health hazard," and ordering the cottage "not fit for human habitation," hereby condemning the dwelling. Defendant(s), with their actions, violated 310 CMR 15.00; M.G.L., c.111,s.31E; and M.G.L., c.265,s.37; and tried to discourage plaintiff from executing the "purchase agreement," (contract), which existed between William F. Arnold, as the owner and seller of said property, and plaintiff, as the buyer of said property.

562. This action by the defendant(s) constitutes tortuous interferences with prospective contractual relations, a right secured under Article I of the declarations of rights under the Constitution of the Commonwealth of Massachusetts and U.S.C.A., Const. Amend. 13, actionable under 42 U.S.C.,

Page 56 of 95 Pages

   s.1983.

563. Defendant(s) had been informed and were aware of the contract.

564. Plaintiff had constitutionally protected property interest in executing this contract.

565. Plaintiff's contract was in conformance with all applicable statutes of M.G.L.

566. Defendant(s) do not enjoy qualified governmental immunity, as such immunity is only available for discretionary acts.

567. Defendant(s), by their actions and inactions, injured plaintiff directly or indirectly in his person and personal property.

568. Defendant(s)' interferences with prospective contractual relations were consistent with some of the town officials' scheme of harassment, to deny plaintiff his right to execute contracts, and to enjoy and develop his property.

569. Plaintiff informed defendant(s) of his rights and the consequences of their unlawful acts. Defendant(s), therefore had knowledge of the wrongs to be done and would have had the power to prevent the commission of the wrongs but failed to do so.

570. The defendant(s) were at all times acting under color of state law in their conduct of business in relation to plaintiff s development and denial of enjoyment of his property, and attempt to sell part of his property.

571. Remedies under statutes of M.G.L. are not available, inadequate, and impractical for redress; further, statutory limitation on damages under the governmental tort liability act rendered postdeprivation relief inadequate.

572. Defendant(s) violations create on their face a mandatory entitlement for redress.

573. As a result of the defendant(s)' tortuous interferences with prospective contractual relations, plaintiff suffered one or more of the following: Substantial damages, including but not limited to, delayed and/or blocked development of his property, denial of enjoyment of his property, failed execution of contract to sell part of his property, lost profits, inability to finance the completion of his two-story garage, and extreme mental and emotional distress.

   **COUNT VIII**, (violation of equal protection of the laws)

574. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 573 above,

with the same force and effect as if herein set forth, with emphasis on paragraphs 52-58, and 518-529 above, and further states, that:

575. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, and Fred Grabau, member of the BOH, defendant(s), declared the dwelling on said property a "health hazard," and ordered the cottage "not fit for human habitation," hereby condemning the dwelling in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L., c.265,s.37.

576. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L. Defendant(s) therefore violated plaintiff's right to equal protection under the laws, guaranteed under Article I of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts and U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.

### COUNT IX, (violation of substantive due process)

577. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 576 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 52-58, and 539-551 above, and further states, that:

578. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, and Fred Grabau, member of the BOH, defendant(s), declared the dwelling on said property a "health hazard," and ordered the cottage "not fit for human habitation," hereby condemning the dwelling in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L., c.265,s.37.

579. Defendant(s) had final policing power. With their actions and/or inactions, defendant(s) deprived plaintiff of his constitutionally protected property interest, guaranteed under statutes of M.G.L., without due process.

580. Defendant(s) therefore violated plaintiff's right to substantive due process, guaranteed under U.S.C.A. Const. Amend. 5, 14; actionable under 42 U.S.C. s.1983.

### COUNT X, (unreasonable search and seizures)

581. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 580 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 52-58 above, and further states, that:

582. Harold Congdon, chairman of the BOH, Robert Dymon, member of

BOH, and Fred Grabau, member of the BOH, defendant(s), declared the dwelling on said property a "health hazard," and ordered the cottage "not fit for human habitation," hereby condemning the dwelling in violation of 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L., c.265,s.37.

583. Defendant(s) had final policing power. With their actions and/or inactions, deprived plaintiff of his constitutionally protected property interest in his right to occupy the dwelling, guaranteed under statutes of M.G.L. Defendant(s) therefore violated plaintiff's right to be secure in his person and house, guaranteed under Article I of the declarations of rights under the Constitution of the Commonwealth of Massachusetts and U.S.C.A. Const. Amend. 4, 5, 14; actionable under 42 U.S.C., s.1983.

584. Defendant(s) were motivated by bias, bad faith, or improper motive. By their actions, defendant(s) abused their power or employed their power as an instrument of oppression and interfered or attempted to interfere with M.G.L., c.265,s.37.

585. Plaintiff was not heard at a meaningful time in a meaningful manner by the defendant(s), and proceedings were fundamentally flawed, inadequate, irregular and unlawful. Defendant(s) had no reason to condemn the dwelling. The water supply and privy were in compliance with all statutory requirements under M.G.L.; and were also in compliance with all applicable sections of the Code of Massachusetts Regulations and applicable bylaws of the town of Holland.

586. Defendant(s) arbitrary, irrational conduct is not rationally related to legitimate concerns of actors, government or public interest, and injured plaintiff directly or indirectly in his person and personal property.

587. Defendant(s) do not enjoy qualified governmental immunity, as such immunity is only available for discretionary acts.

588. Defendant(s) knew or should have known that their actions were unlawful, and would have had the power to prevent the commission of the wrongs, but failed to do so.

589. This unlawful act by the defendant(s) consistently relates to the development and denial of enjoyment of his property.

590. Defendant(s) violations create on their face a mandatory entitlement for redress.

591. Defendant(s) acted at all times under color of state law in condemning of plaintiff's dwelling.

592. As a result of the defendant(s)' violation of plaintiff's right to be secure in his person and house, plaintiff suffered substantial damages, including but not limited to denial of enjoyment of his property and extreme mental and emotional distress.

**COUNT XI** (conspiracy to deny equal protection)

593. Plaintiff hereby repeats, realleges, and incorporates by reference the allegations in paragraphs 1 through 592 above, with the same force and effect as if herein set forth, with emphasis on paragraphs 37-74 above, and further states, that:

594. Harold Congdon, chairman of the BOH, Robert Dymon, member of BOH, and Fred Grabau, member of the BOH, Chief of police HPD (name unknown), Ronald Benoit, building inspector, defendant(s), and probably other town officials, intentionally and purposefully refused to issue plaintiff a percolation test permit and failed to approve plaintiff's 1st set of plans for an individual subsurface sewage disposal system. BOH also failed to disapprove application (1st set of plans) with a written statement of the reason for such disapproval, failed to approve plaintiff's application for a construction permit for a individual subsurface sewage disposal system, and, instead asked plaintiff to buy more land he did not need and forced plaintiff to design and install a subsurface sewage disposal system without a leaching facility, utilizing a holding tank (tight-tank) instead, and declared the dwelling on said property a "health hazard," and ordered the cottage "not fit for human habitation," hereby condemning the dwelling.

595. By their actions, defendant(s) violated 310 CMR 15.00; M.G.L., c.111,s.31E; M.G.L., c.265,s.37, and engaged in a conspiracy and conspired and discriminated against plaintiff because of plaintiff's national origin.

596. Plaintiff is a Swiss native and member of a protected class, the class of persons with different national origin.

597. Plaintiff was singled out and treated differently then other persons in the same or similar situations.

598. Defendant(s) deprived plaintiff directly or indirectly from seeking the equal protection of the laws and from enjoying the equal rights, privileges, and immunities of citizens under the laws of the United States and the Commonwealth of Massachusetts, granted under Article I of the declarations of rights under the Constitution of the Commonwealth of Massachusetts and U.S.C.A., Const. Amend. 4, 5, 13, 14, actionable under 42 U.S.C., s.1985; and 42 U.S.C., s.1983.

599. Conspirators, (defendants), acted with invidiously discriminatory animus and by their actions and inactions acted in furtherance of such conspiracy.

600. Defendant(s) do not enjoy qualified governmental immunity, as such immunity is only available for discretionary acts.