- Count 56 encompasses ¶¶ 431 through 514, 596 through 607. This count implicates defendants Benveniste, PBA, Johnson, Ford, McCaughey and Kevin Gleason ("Gleason").

- Count 57 encompasses ¶¶ 349, 393 through 458, 681 through 692. This count implicates defendants Benveniste, PBA, Johnson and McCaughey.

- Count 58 encompasses ¶¶ 452 through 454, and the general timeframe of January, 2003. This count implicates Gleason and the Holland Police Department.

- Count 59 encompasses ¶¶ 409, 452 through 514. This count implicates defendants Benveniste, PBA, Johnson, Ford, McCaughey and Gleason.

- Counts 60 through 61 encompasses all paragraphs and all defendants.

- Count 59 encompasses ¶¶ 409, 452 through 514. This count implicates defendants Benveniste, PBA, Johnson, Ford, McCaughey and Gleason.

**CONSTITUTIONAL CLAIMS**

C.    **As to the Substantive Allegations of Each Claim.**

As to any claim allowed to survive as to any defendant, the defendants advance the following arguments.

1.    **Due Process Claims under § 1983.**

It is beyond dispute that 42 U.S.C. 1983 does not, in and of itself, create substantive rights. Rather, it simply provides a vehicle by which claims may be brought for alleged violations of rights secured by the United States Constitution. To proceed with a claim under 42 U.S.C. 1983, a plaintiff must first establish that a defendant is acting under color of state law. The plaintiff must next prove that the alleged wrongful conduct resulted in a deprivation of rights secured by the United States Constitution or federal law. Most important in this regard, mere

violations of state law do <u>not</u> create constitutional claims.  *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir. 1982).

While under very limited circumstances land use claims have been allowed to proceed under 42 U.S.C. 1983, they have done so only where there are specific constitutional violations alleged.  Categories into which those violations fall include regulatory takings, see, *Agins v. City of Tiburon*, 447 U.S. 255 (1980); *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); claims relating to procedural or substantive due process, see, *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1527 (1st Cir. 1983); *Creative Environments v. Estabrook, supra*; see also, *Amsden vs. Moran*, 904 F.2d 748 (1st Cir. 1990), and claims wherein violations of equal protection are alleged.  See, *Cordeco Development Corp. v. Santiago Vasquez*, 539 F.2d 256 (1st Cir. 1976).  *Yerardi's Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Town of Randolph*, 932 F.2d 89 (1st Cir. 1991); see also, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

It is the position of the defendants that the facts as alleged, do not support of a cause of action under any of the foregoing theories.

First, to the extent that plaintiff has alleged a "taking," there is simply no basis upon which an allegation of regulatory taking can be made under the Fifth Amendment.  The plaintiff continues his full ownership rights to the land in question and is in the process of availing himself of the judicial system (for a second time) in order to determine if he will be permitted to develop a sub-division on his land based on the plans before the Holland Planning Board.  The defendants note that the status of the defendants' ARR plans for a subdivision is still being litigated in state court.  To the extent that it is still not know as to whether the plan will be approved or under what conditions it may be approved, no allegation of a regulatory taking can be sustained.  See *Lakeside Builders, Inc. v. Planning Board of Franklin,* 56 Mass. App. Ct. 842, 851 (2002).  In

light of these facts, there is nothing to support that the actions complained of constituted a regulatory taking of the plaintiff's property.

With regard to denial of procedural and substantive due process, again, the plaintiff's Complaint must fail. As to both, proof of denial of due process in connection therewith is lacking.

In *Creative Environments, Inc. v. Estabrook*, the plaintiff alleged:

> [t]hat its right to due process was violated by the Town's overall 'distortion of the existing statutory and regulatory scheme'. This argument rests not on any failure to have provided adequate procedures, but on the alleged arbitrary misapplication of state law resulting, plaintiff's assert, in denying them their 'right' to conduct a legitimate business and make a profit.

*Creative Environments, Inc. vs. Estabrook*, 680 F.2d at 831. [Emphasis supplied.]

After assuming that the "town engaged in adversarial and even arbitrary tactics," the First Circuit rejected the foregoing claim, noting that, if such a claim were to be accepted:

> any hope of maintaining meaningful separation between federal and state jurisdiction in this and many other areas of law would be jettisoned. Virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to a federal court on the theory that the erroneous application of state law amounted to a taking of property without due process. Neither congress nor the courts have, to date indicated that section 1983 should have such a reach.

*Id.*

Further distinguishing the alleged wrongful acts of the defendants, the Court noted "even if it could here be shown that the Board Members strayed willfully from the 'proper ends of the governmental duties' their digression was not of 'constitutional portions'." *Id.* at 832, n.9 [citations omitted]. See also *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548 555-556 (1995). See also, *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d at 1526-1529 (collecting relevant cases and stating that dismissal under Fed. R. Civ. P. 12(b)(6) proper in action by local planning Board alleging similar constitutional violations).

368670

Finally, the *Estabrook* court noted that the claim, as alleged, and taken in the light most favorable to the plaintiff was:

> too typical of the run of the mill dispute between a developer and a town planning agency, regardless of [CEI's] characterizations of it and of the defendant's alleged mental states, to rise to the level of a due process violation. The authority cited by [CEI], as well as other cases, all suggest that the conventional planning dispute – at least when not tainted with fundamental procedural irregularity, racial animus, or the like – which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the constitution. **This would be true even were planning officials to clearly violate, much less 'distort' the state scheme under which they operate.**

*Creative Environments, Inc. v. Estabrook,* 680 F.2s at 833. [Emphasis added.]

The foregoing analysis clearly precludes the due process claims from proceeding in the instant action, particularly where the plaintiff clearly has remedies to the extent that state law claims exist to vindicate his claims absent resort to allegations of federal constitutional violations. See *Chiplin Enterprises, Inc. v. City of Lebanon,* 712 F.2d at 1527.

    **2.**    **Equal Protection Claim.**

A viable equal protection claim requires proof of two elements: (1) whether a plaintiff was treated differently than others similarly situated, and (2) whether such a difference was based on an impermissible consideration, such as race. See *Macone v. Town of Wakefield,* 277 F.3d, 1, 3 (1st Cir. 2002) *citing Rubinovit v. Rogato,* 60 F.3d 906, 909-10 (1st Cir. 1995) and *Yerardi's Moody St. Rest. & Lounge, Inc. v. Bd. of Selectmen,* 878 F.2d 16, 21 (1st Cir.1 989). The plaintiff states repeatedly that he was a victim of discriminatory animus based on his national origin but he never alleges nor provides facts to support that he was treated differently from others similarly situated. He simply asserts in conclusory fashion that he was discriminated against but fails to set forth information about other applicants who were treated differently from him.

368670

The defendants submit that fatal flaw in the plaintiff's complaint is sufficient for the court to dismiss equal protection claims against all defendants. *Id.*

Furthermore, the *Wakefield* court noted that the First Circuit has been extremely reluctant "to entertain equal protection challenges to local planning decisions" stating that "every appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused, or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason." *Macone v. Town of Wakefield,* 277 F.3d at 10. The *Wakefield* court continued:

> "It is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under § 1983." *Id.,* citing *Creative Env'ts, Inc.,* 680 F.2d at 833; *see also Néstor Colón Medina,* 964 F.2d at 44-45, *citing Vill. of Belle Terre v. Boraas,* 416 U.S. 1, 12, 94 S. Ct. 1536, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting) ("If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court. Limiting such claims is essential to prevent federal courts from turning into 'zoning board[s] of appeals.' ").

*Macone v. Town of Wakefield,* 277 F.3d at 10.

The defendants submit that the equal protection claims are nothing more than local land disputes and must be dismissed as failing to state a claim upon which relief may be granted.

### 3. As to the Fourth Amendment.

The plaintiff alleges in Count 10, ¶¶ 581-592, that his Fourth amendment rights were violated when a condemnation notice placed by the BOH <u>in May, 1987</u> was issued in violation of the applicable in an effort to harass and intimidate him. See ¶¶ 52-58. Despite the fact that the plaintiff alleges no one from the Town had ever entered his dwelling, see ¶ 58, he still frames this behavior by Town officials as a violation of his Fourth amendment rights. Since there was no entry by Town officials there was no illegal search.

368670

In addition, seizure of property under the Fourth amendment occurs when "there is a meaningful interference with an individual's possessory interest in that property." *Soldal v. Cook County, Illinois,* 506 U.S. 56, 61 (1992). The complaint is devoid of any allegations that the condemnation order interfered in any respect with the plaintiff's possessory interest in the property. The Town submits that the plaintiff has failed to allege sufficient facts to support a violation of the Fourth amendment and that this claim be dismissed as to all defendants for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### 4. As to Conspiracy Claims Under § 1985.

The plaintiff has purportedly alleged a cause of action under 42 U.S.C. §§ 1985 and 1986. Section 1985 creates a private right of action for damages or deprivation caused by a conspirator to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Section 1986 creates a right to recover damages against any person who has knowledge of, and power to prevent or aid in preventing a § 1985 conspiracy, but neglects or refuses to act.

The plaintiff's assertion of a conspiracy must fail, first, for failure to comply with the pleading requirements sufficient for a ¶ 1985 claim. See *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977), *cert. denied,* 434 U.S. 1077, 98 S. Ct. 1268, 55 L.Ed.2d 783 (1978) ("[C]omplaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts.

Here, while there are hundreds of allegations in this complaint, none of the allegations provides particulars as to specific acts of individuals in furtherance of a conspiracy. As such, the defendants named in Counts 11, 22, 31, 41, 50 and 56, submit that all claims purporting to allege conspiracy against them must also be dismissed. In fact, the following defendants are not named specifically in the counts which allege a conspiracy to deny equal protection: Blais, LaPlante,

368670

May, Quinn, Roche and Stevens. In the absence of any specific allegation alleging facts to support a conspiracy, this claim, at a minimum, must be dismissed as to these defendants. Additionally, the defendants submit that the Complaint fails entirely in stating how specific defendants named in the conspiracy either fathomed a deprivation of equal protection or communicated such a conspiracy to others named. There are no allegations that any defendant named in the conspiracy counts had knowledge of or power to prevent the purported conspiracy.

### D. As to Qualified Immunity.

In addition to the foregoing, the defendants submit that they may be protected by qualified immunity which is intended to shield public officials in the course of performing discretionary acts "from civil damages liability as long as their actions could reasonably have been thought constant with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive. See, *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

Qualified immunity shields government officials from liability for civil damages when their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Qualified immunity provides protection to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The relevant question, then, is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir. 1991).

368670

Case 3:04-cv-30070-MAP    Document 13-3    Filed 06/30/2004    Page 8 of 15

Page 28

The individual defendants reserve the right to argue at a later date that they are entitled to qualified immunity. In support of this reservation, the defendants state that it would be overly burdensome to advance this argument until this Court rules on the instant motion. If this Court allows some or all of the instant motion, it will be more manageable for both the defendants and the Court to argue and consider qualified immunity in a pared down complaint.

## STATE LAW CLAIMS

### E.     As to Violation of Massachusetts Civil Rights Act.

It is beyond dispute that a claim brought pursuant to M.G.L. c. 12, § 11I requires proof that the alleged civil rights violation occurs by way of "threats, intimidation, or coercion." See M.G.L. c. 12 § 11I; *Bally v. Northeastern Univ.,* 403 Mass. 713, 717 (1989); *Bell v. Mazza*, 394 Mass. 176 (1985). The courts have defined 'threat' as "act of language by which another is placed in fear of injury or damage"; 'intimidation' as "creation of fear to compel conduct"; and 'coercion' as "the active domination of another's will." See, *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989). The defendants submit that the plaintiff cannot point to a single case to support the allegation that the acts, even assuming they occurred as alleged, rise to the level of threats, intimidation, or coercion. Quite to the contrary, the Courts have consistently held that actions by municipal officials, such as those alleged herein, do not constitute such acts. See, e.g., *Freeman v. Planning Bd. of West Boylston*, 419 Mass. 548 555-556 (1995) (where planning board exceeded its authority by seeking a concession from the landowner, there was no "coercion"); *Murphy v. Town of Duxbury*, 40 Mass. App. Ct. 513, 519 (1996) (adverse administrative actions denying the plaintiff a right to build on property does not qualify as "threats, intimidation or coercion"). Thus, those allegations made against individual members of Town Boards or Commissions do not rise to the level of threats, intimidations or coercion and should be dismissed.

368670

  **F.** **As to Intentional Infliction of Emotional Distress.**

  The plaintiff purports to make a claim for intentional infliction of emotional distress. To sustain a cause of action for intentional infliction of emotional distress, the plaintiff must show (1) the defendant intended to cause, or should have known that the conduct would cause, emotional distress; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's distress; and (4) the plaintiff suffered distress. See *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976) and cases cited. To be considered extreme and outrageous, the conduct must be "beyond all bounds of decency and…utterly intolerable in a civilized community." *Id.* at 145, *quoting* Restatement (Second) of Torts, § 46, Comment D (1965). Further, liability cannot be based upon mere insults, threats or annoyances. See, *Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987). It is the position of the defendants that the conduct as alleged in the Complaint cannot, as a matter of law, be deemed extreme and outrageous conduct. What the plaintiff complains about is a series of land use issues over which he disagreed with the Town and the various members of Town Boards and conducted by parties in the course of litigation. Such behavior cannot be considered extreme and outrageous conduct beyond the bounds of human decency and, as such, the count of intentional infliction of emotional distress, should be dismissed. Furthermore, as pled, the Complaint alleges this count as to every defendant, clearly, the Complaint is deficient with respect to several of the defendants where specific allegations are not alleged against them or where the only allegations are that they are members of a particular Town Board or Commission.

  **G.** **Intentional Interference with Contract.**

  To state a claim for intentional interference with contractual relations, the plaintiff must be able to prove: (1) the existence of a contract or a business relationship with contemplated economic benefit; (2) the defendants' knowledge of the contract or business relationship; (3) the

368670

defendants' intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages. See *Gouin v. Gouin,* 249 F. Supp. 2d 62, 75 (D. Mass. 2003), citing Massachusetts law.

In Count 7, the plaintiff alleges that the defendants "tried to discourage" plaintiff from executing "purchase agreement…." See ¶ 561. Even if this allegation were not barred by the statute of limitations, this allegation does not state a claim for intentional interference with a contract.

Likewise, in Count 40, the plaintiff alleges that there was interference with a "prospective contract." See ¶ 741. Again, although barred by the statute of limitations, this allegation fails to state a claim of intentional interference with a contract. Also, to the extent that the specific counts for this allegation (7, 4, 49, 55) only name Congdon, Dymon and Blease, all other defendants should be dismissed as to these counts for failure to state a claim upon which relief may be granted.

Finally, Count 55 alleges that certain acts of certain defendants "prevented plaintiff from…executing implied contract to sell lot B and lot C." See ¶ 789. This allegation fails to state a claim for intentional interference with a contract. Thus, the defendants move this Court to dismiss Counts 7, 40 and 55 for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

   H.    **As to the Defendant, Town of Holland.**

As to the claims under 42 U.S.C. § 1983, it is undisputed that a municipality cannot be liable on a theory of *respondeat superior*, but, rather, may only be liable upon allegations and proof of impermissible policy or custom. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978). The defendant, municipality, submits that the 95 page, 830 paragraph complaint, does not allege facts in support of a claim of any policy or custom of the Town in violation of the

368670

law. In the absence of any allegation that the Town employed an unconstitutional municipal policy or custom, there can be no municipal liability under § 1983. See *Monell v. Dept. of Social Services,* 436 U.S. 658, 690-695 (1978); *Baron v. Hickey*, 242 F. Supp. 2d 66, 75-76 (D. Mass. 2003).

Based upon the foregoing, to the extent that the complaint purports to allege federal constitutional violations against the municipality, the same must be dismissed.

Nor is there any law in the Commonwealth or in this Circuit which authorizes a claim pursuant to M.G.L. c. 12, § 11I against a municipality and, as such, to the extent that such claims are deemed to be alleged, they must be dismissed.

I.      **As to McCaughey.**

As the complaint alleges, McCaughey was town counsel for the Town of Holland at all times relevant to this action. In various paragraphs of the complaint, the plaintiff alleges that certain town employees including Johnson and Benveniste did not testify truthfully during depositions, at which McCaughey was present. It is further alleged that McCaughey knew or should have known that the plaintiff's various ANR plans submitted to the Planning Board were in compliance with all applicable requirements. The plaintiff alleges that McCaughey furthered an ongoing conspiracy on the part of the defendants by doing nothing to prevent the Planning Board from denying the special permit despite its requirement to do so. Additionally, the complaint alleges that McCaughey deliberately misstated facts on a Joint Pre-Trial Memorandum.

It is axiomatic that McCaughey did not owe a duty to the plaintiff. See *Williams v. Ely,* 423 Mass. 467 (1997); *Kurker v. Hill,* 44 Mass. App. Ct. 189-190 (1998). Thus, the assertion that McCaughey was under any obligation to the plaintiff cannot be supported by law.

368670

The complaint alleges nothing more than that McCaughey was representing the defendants in a contentious series of events. Inasmuch as McCaughey owed no duty to the plaintiff, he was under no obligation to do anything that would not have furthered the defendants' interests. In fact, an attorney cannot take the position adversarial to his clients without raising a conflict of interest. Furthermore, there are simply no facts alleged which support the allegation that McCaughey was engaged in a conspiracy against the plaintiff. Rather, the plaintiff simply provides conclusory statements insufficient to defeat a Motion to Dismiss.

Furthermore, to the extent that certain allegations of wrongdoing arise out of statements made during either of the two matters in litigation, absolute immunity applies. See *Doe v. Nutter, McClennen & Fish,* 41 Mass. App. Ct. 137, 139-140 (1996). Even if statements made by an attorney are uttered with maliciousness or in bad faith, the privilege in the context of litigation is absolute and protects an attorney from any civil liability. *Id.*, citations omitted. See *Frazier v. Bailey,* 957 F.2d 920, 932 (1st Cir. 1992) (claims for intentional infliction of emotional distress, the Massachusetts Civil Rights Act, among others are barred under this immunity). Nor do any of the allegations that McCaughey violated a disciplinary rule give rise to an independent cause of action. See *Doe v. Nutter, McClennen & Fish,* 41 Mass. App. Ct. at 140. See also, *Fishman v. Brooks,* 396 Mass. 643, 649 (1986).

  **J.**  **As to Defendant, Gleason.**

The plaintiff alleges that on or about November 20, 2002, as he drove to the Springfield Superior Court to file his civil action with respect to the Planning Board's decision, that he was followed by an unidentified police officer, in a Holland police cruiser, stopped and issued a speeding ticket. The plaintiff contested the speeding ticket and it was dismissed. The plaintiff claims that this act was part of the ongoing conspiracy of Gleason with Johnson but never alleges how or why the conspiracy was communicated to the unnamed officer. In another allegation

involving an unnamed police officer, the plaintiff states that a Holland police cruiser followed him over the Connecticut state line, stopped his vehicle, blinded him with its headlights and then drove away. Again, no identification is made of the officer and no facts are alleged to support how or why Gleason communicated the alleged conspiracy to this unnamed officer but only, in a conclusory fashion that he did.

To the extent that the plaintiff offers no facts that Gleason was aware of these activities on the part of unnamed defendants, these allegations cannot form the basis of a conspiracy claim. Additionally, there is no claim for supervisory liability under § 1983. See, *Board of County Comm'rs. of Bogan County v. Brown*, 520 U.S. 397, 403 (1997) (and cases cited therein). In order to find a supervisor liable, the plaintiff must prove that there was some affirmative act or conduct that amounts to implicit authorization on the part of the supervisor with respect to the employee's behavior. See, *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 192 (1st Cir. 1998). Clearly, there are no facts alleged to support any affirmative act or implicit authorization.

The plaintiff further alleges that Gleason deliberately failed to forward certain papers to the Juvenile Court following a break in on the plaintiff's property. Despite Gleason's offer to re-file the papers with the Juvenile Court, the plaintiff asserts that the papers were not filed because of some discriminatory animus on Gleason's part against the plaintiff. Notwithstanding, as the plaintiff has no enforceable right under federal law to have alleged criminal conduct investigated or prosecuted a claim pursuant to 42 U.S.C. § 1983 must fail. See, *Roberts v. Murphy*, 684 F. Supp. 759, 761 (D. Mass. 1988).

Thus, the facts alleged against Gleason are insufficient to rise to the level of any constitutional violation and are also insufficient to support a claim for intentional interference with contract, intentional infliction of emotional distress or violation of M.G.L. c. 12, §11(I). See, *supra*, at 28-31. There are no allegations that Gleason knew of any contract that existed

368670

with respect to the plaintiff or that he intentionally interfered with a contractual relationship so as to cause the plaintiff any damages.

### K. As to Defendant, Joanne May.

Joanne May does not appear to be named in any activity other than the attendance of a meeting in December, 2003. See ¶ 508. The defendants ask that Joanne May be dismissed as a defendant in this matter because the plaintiff has simply failed to allege sufficient facts to support any claim against her.

### L. As to Defendant, Marilyn LaPlante.

Marilyn LaPlante is a named defendant who was a member of the Town's Planning Board. There does not appear to be any specific allegation as to LaPlante individually and the defendants move to dismiss her entirely from this action for failure to state a claim upon which may be granted.

## CONCLUSION

For the reasons stated herein, the defendants move this Court to allow its Motion to Dismiss as to all counts and all defendants.

        THE DEFENDANTS
        TOWN OF HOLLAND, ET AL.


        By    */s/Nancy Frankel Pelletier*
        Nancy Frankel Pelletier, Esq., and


        By    */s/Dorothy Varon*
        Dorothy Varon, Esq., both of
        Robinson Donovan, P.C.
        1500 Main Street, Suite 1600
        Springfield, Massachusetts 01115
        Phone (413) 732-2301  Fax (413) 785-4658
        NFP BBO No.:  544402
        DV BBO No.:  629609

368670

CERTIFICATE OF SERVICE

    I, Nancy Frankel Pelletier, Esq., hereby certify that on this 30th day of June, 2004, I served a copy of the above upon the parties in the action by mailing, postage prepaid, to Peter K. Frei, Pro Se, P.O. Box 500, Brimfield, MA 01010-0500.

    Subscribed under the penalties of perjury.

                                                                         */s/Nancy Frankel Pelletier*
                                                                         Nancy Frankel Pelletier, Esq.