UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-30070KPN

| | |
|---|---|
| PETER K. FREI,<br>  Plaintiff<br><br>vs.<br><br>TOWN OF HOLLAND, BOARD OF HEALTH,<br>HOLLAND CONSERVATION COMMISSION,<br>HOLLAND POLICE DEPARTMENT,<br>PLANNING BOARD, ZONING BOARD OF<br>APPEALS, Ronald Benoit, Debra Benveniste,<br>Sally Blais, Richard Blease, Harold E. Congdon,<br>Robert Dymon, Robert Ford, Kevin Gleason,<br>Benjamin Haller, William Hardy, Earl Johnson,<br>Helen Kreiger, Marilyn LaPlante, Joanne May,<br>Vincent J. McCaughey, Dora Metrelis,<br>Arthur A. Quinn, Brian Roche, John Stevens,<br>  Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I.  INTRODUCTION AND SUMMARY OF THE ALLEGATIONS**

Peter Frei (hereinafter the "plaintiff") has filed this 95 page Amended Complaint stated in more than 830 paragraphs (herein after referred to as the complaint) which purports to state 10 separate counts. For the Court's convenience, the defendants offer the following breakdown of the counts alleged.

Equal Protection Amendment of the US Constitution:

   Counts 1, 2, 3, 8, 12, 14, 16, 18, 20, 23, 24, 27, 29, 33, 36, 37, 42, 46, 52 and 58

Substantive due process:

   Counts 4, 5, 6, 9, 12, 15, 17, 19, 21, 25, 26, 28, 30, 34, 36, 38, 43, 47 and 53

Interference with contract:

   Counts 7, 40, 49 and 55

368670

Unreasonable search and seizure:

> Count 10

Conspiracy to deny equal protection:

> Counts 11, 22, 31, 41, 50 and 56

Conspiracy to interfere with due justice:

> Count 59

Retaliation for exercising First Amendment rights:

> Counts 32, 45, 51 and 57

Violation of procedural due process:

> Counts 39, 44, 48 and 56

Intentional infliction of emotional distress:

> Count 60

Violation of the Mass. Civil Rights Act:

> Count 61

Unfortunately, it is impossible to create the same type of breakdown as to what counts are alleged against which individual defendants. Generally speaking, the complaint sets out facts which detail long and contentious series of land use disputes between the defendants and the plaintiff. See Complaint, ¶¶ 37-514. To give the complaint some context, the defendants have summarized the major land use issues alleged and the general time frames they occurred. The defendants do not claim to present all facts alleged in this Summary, but only those which reasonably describe each discrete land dispute raised by the plaintiff.

In or around June 1987, the Holland Board of Health (BOH) refuses to issue a percolation test permit to plaintiff and requests that plaintiff install a leach field 100 ft. away from the lake where his property is located. ¶¶ 39-41.

368670

- Both of these acts, according to the plaintiff, were in violation of the applicable regulations. ¶ 41.

  - Around the same time, BOH refuses to approve the plaintiff's first set of plans for a subsurface sewage disposal system. ¶ 42.

  - Around the same time, BOH refuses to issue a construction permit for installation of the proposed subsurface sewage disposal system. ¶ 43.

    - Both of these acts, according to the plaintiff, were in violation of the applicable sections of the CMR. ¶¶ 44-47.

    - The plaintiff claims that these acts were guided by "discriminatory animus" on the part of the BOH. ¶ 48.

In May/June 1987, BOH requested the plaintiff to buy more land to accommodate a leachfield. ¶ 51.

  - Plaintiff claims this request was not based in law and that is was arbitrary and capricious. *Id.*

In May 1987, BOH posts a notice with the wrong date on the entrance door to the cottage on the property sought to be purchased by Mr. Frei, declaring that the dwelling is a health hazard and condemning it. ¶ 52.

  - Plaintiff alleges this was done to oppress, discriminate, intimidate and prevent the plaintiff from buying the property. ¶¶ 53-59.

  - In April, 1988, the plaintiff submits a plan to the BOH which he calls the second plan for a subsurface sewage disposal system. The BOH approves the plan contingent

upon the plaintiff moving the holding tank to a higher level. The plaintiff asserts that the request was arbitrary and capricious.[1]  ¶¶ 64-67.

- On June 17, 1988, the BOH issues a certificate of compliance for a subsurface sewage system and on July 12, 1988 BOH approves an as built holding tank plan by Cox Environmental Engineer. Despite the approval and the certificate of compliance, the plaintiff alleges that there is a violation of regulations.  ¶¶ 69-71.

- Plaintiff makes reference to a third subsurface sewage disposal system plan but it is impossible to discern when that plan was submitted.  ¶ 72.

- On March 20, 1989, the plaintiff buys the adjoining piece of property.  ¶ 75.  In the summer of 1990, the plaintiff seeks a permit to install an artesian well on his property that he bought in 1989 and the BOH denies issuing a permit on the basis of back taxes owed on the property.  ¶¶ 76-77.

- On May 11, 1993, the plaintiff submits his fourth plan for proposed subsurface sewage and disposal system.  ¶¶ 81-82.  The BOH rejects that plan.  ¶ 83.  The BOH requests at that time that an impermeable barrier of certain dimensional specifications be installed to prevent sewage from leeching out from the side.  ¶ 84.  The plaintiff claims this request was contrary to the law.  ¶¶ 84-85.

- On June 30, 1993, the plaintiff submits a fifth plan to the BOH which includes the requested impermeable barrier.  ¶¶ 90-91.  On July 7, 1993, the plaintiff files a notice of intent with the Conservation Commission for proposed construction work on the

---

[1]  In ¶63 of the complaint, the plaintiff states that three years after the activities in June, 1987 the plaintiff learned from a member of the Holland Conservation Commission, Helen Kreiger, who is a named defendant, that the Chief of Police, the building inspector and members of the Board of Health conspired against him in 1987 for the purpose of preventing him from buying his property by refusing to approve the sewage disposal system. This statement demonstrates that in at least 1990 the plaintiff was on notice of what he asserts were conspiratorial acts on the part of certain defendants.

sewage disposal system. ¶ 92. The plaintiff claims several irregularities with respect to the Holland Conservation Commission's ("HCC") behavior including failure to issue a receipt acknowledging the filing of the Notice of Intent ("NOI") and holding the public hearing open longer than the period of time it should have been held open. ¶¶ 93-97. HCC issues the order of conditions on December 15, 1993 allegedly in excess of the time frame in which they are provided by statute. ¶¶ 98-115.

- On September 15, 1993, plaintiff claims the BOH failed to make a decision within the 45 days on a submitted plan and that his fifth plan for a for a subsurface sewage disposal system had become constructively approved. ¶¶ 102-103. On December 15, 1993, the HCC issued the order of condition for proposed construction work denying the installation of the subsurface sewage disposal system. ¶¶ 114-115. The plaintiff claims that Humphrey Sutton, then Chairman of the HCC knew that the plaintiff would leave the country in October to spend the winter in Switzerland and therefore waited to mail the order of conditions until after the plaintiff had left the country knowing that the plaintiff had only 10 days to appeal. ¶ 119. In February, 1994, a sixth plan for subsurface sewage disposal system is provided. ¶¶ 125-128. The HCC refused to review the sixth plan until an explanation of why a tight tank had been installed originally and what had changed to allow the installation of a subsurface sewage disposal system and leeching field. ¶ 132. The HCC also wanted documentation from the BOH or the DEP concerning the existing tight tank and indicated that a variance from DEP was necessary concerning a breakout distance before they would render a final opinion. ¶¶ 132-133. On June 27, 1994, a letter from the BOH issues stating the Town's sanitarian has determined plans submitted on February 16, 1994 comply with Title V. ¶ 147. BOH informs the plaintiff that if the

DEP approves his plan, the BOH would also approve the subsurface sewage disposal system. ¶ 149. Plaintiff alleges this is contrary to law.

- On November 15, 1994, plaintiff submits his seventh plan for the sewage disposal system. ¶ 178.

- On February 14, 1995, the DEP approves the plaintiff's subsurface sewage disposal system. ¶ 187. On April 4, 1995, BOH signs off and approves the plaintiff's plan. ¶ 188. Plaintiff claims that he had always had a constitutionally protected property interest in the approval of this subsurface sewage disposal system and that a variety of procedural irregularities had taken place from 1987 to 1995 based upon discriminatory animus. ¶¶ 188-205.

- On October 14, 1995, Humphrey Sutton visits plaintiff's property and complains that a utility trench was not part of plaintiff's NOI which plaintiff alleges is false. ¶ 206.

- On October 17, 1995, Richard Blease, the Electrical Inspector inspects the utility trench and finds the trench conforms but that power lines cannot be buried under water. ¶¶ 208-210.

- On October 18, 1995, plaintiff removes conduit for power lines, but fills trench and leaves for Switzerland. ¶ 214.

- On October 18, 1995, HCC sends letter stating that certain work done by plaintiff was in violation of certain Town bylaws and posts a cease and desist order on the plaintiff's remodeling project. ¶¶ 215-216.

- In November, 1995, plaintiff files for an application for a special permit to the Zoning Board to add a balcony to the south side of his house. ¶ 217. In December, 1995, Benjamin Haller, Chairman of the ZBA, denies the application. ¶ 219. The plaintiff alleges the wrong statute was applied. ¶ 219. In December, 1995, ZBA sends a

written denial to the plaintiff on his petition to construct the balcony. ¶ 222. The plaintiff files a lawsuit in January, 1996 against the ZBA in Superior Court Civil Action No. HDCV1996-71. ¶ 223. Attorney Vincent McCaughey (hereinafter "McCaughey"), a named defendant in this matter, answers on behalf of the ZBA. ¶ 225. In July, 1996, plaintiff seeks professional help to cope with the extreme mental and emotional distress due to his ongoing lawsuit against the ZBA and what is characterized as the ongoing harassment and discrimination by the HCC, the electrical inspector and the ongoing conspiracy of town officials. ¶¶ 232-235. On September 2, 1996, the plaintiff filed a petition for a special permit to build a two story garage. ¶¶ 237-238. BOH members question the need for plumbing and ask the distance between the foundation of the garage and the leechfield. ¶ 240. On September 3, 1996, plaintiff files a NOI for the garage, foundation for a propane gas tank, a trench through the lake bed for underground service, steps in front of the house, shed and the two story garage, a retaining wall and to pave driveway with cobblestones. ¶ 242. On September 24, 1996 at the public hearing, Humphrey Sutton is alleged to raise capricious and arbitrary issues including but not limited to the failure to notify the abutters pursuant to the law of the proposed building. ¶ 247. HCC determined that proper permits were not in place and that a public hearing would not be continued because of that. ¶ 249. On October 1, 1996 plaintiff attends a hearing on his petition for a special permit for the two story garage which is granted. ¶¶ 258-259.

- Plaintiff alleges that he was unable to get an electrical permit despite his having mailed the check to the electrical inspector. On November 26, 1996, the HCC

Page 8

accepts the plaintiff's NOI in its entirety.  ¶ 248.[2]  Plaintiff claims Humphrey Sutton unlawfully issued orders of condition.  ¶¶ 287-288.

- On June 4, 1997, after plaintiff retained counsel, the HCC issued an amended order of conditions allowing the installation of power lines in the lake bed and foundation work for the propane tank with the caveat that all proper permits and inspections must be done.  ¶ 313.  On June 24, 1997, Judge Ford granted the plaintiff summary judgment in his zoning board matter and ordered that it be remanded for further consideration under M.G.L. c. 40A, § 56.  ¶ 315.  On September 9, 1997, after a public hearing, the ZBA on the second petition for the balcony approved special permit to build same.  ¶ 319.  On September 8, 1998, the building inspector issues the building permit for the proposed two story garage.  ¶ 321.  On July 20, 1999, plaintiff attends meeting with the BOH and submits his eighth set of plans for a septic plan which would add the connection of the proposed two story garage.  ¶¶ 322-323. Again, plaintiff maintains procedural irregularities in the Board considering his new plans including the fact that the Board sent a faxed letter to the engineer stating that the revised plans were unclear but never notified the plaintiff.  ¶ 324.  On November 15, 1999, the plaintiff sent an altered set of plans which are the ninth set of plans. 339.  The Board does not act in the time frame which the plaintiff claims were required.  ¶¶ 330-332.  The plaintiff claims that Sally Blais, Chairman of the Board of the BOH on March 21, 2000 made the following claims that were untrue.  ¶¶ 335-338.

---

[2] Humphrey Sutton who is named several times in this complaint apparently traveled to Europe in May, 1997 and suffered a severe asthma attack and died.

- Claims she had asked for an as-built plan back in 1996. Plaintiff states that such document was mailed and/or provided to the BOH repeatedly.

- Claims nobody ever inspected the installed system in 1995 before trenches were backfilled. Plaintiff states that there is clear evidence that it had been inspected by the member of the board of BOH Maria Scott.

- Claims that because she had only joined the board in 1996 she erred when she allowed plaintiff to connect his garage to the septic system.. Between February, 2000 and June, 2000, extensive disagreements between town officials regarding what papers were filed and when, what was allowed and what was not with respect to hooking up the two story garage to the septic system ensued. ¶¶ 338-361. On October 31, 2000, the BOH issued a certificate of compliance which the plaintiff characterizes as faulty. ¶ 362.

- On April 15, 2002, the plaintiff signs a contract to sell a lot on his property. ¶ 374. Members of the planning board led by defendant, Earl Johnson, indicated to the plaintiff that he would not be able to subdivide his parcel because he owned an adjoining non-conforming lot and that that lot would have to have 200 feet of frontage. ¶ 378. The argument about the subdivision continues to this day and is the subject of another Superior Court action (HDCV2002-1196) due to be tried sometime in July, 2004. The plaintiff claims that certain case law introduced by the Planning Board in support of their position was a deliberate discriminatory act, ¶ 390, and claims further that during a deposition of defendant, Deborah Benveniste ("Benveniste"), that she had never read the case on which she was relying. ¶ 396. On June 24, 2002, Benveniste wrote a letter denying the plaintiff's first ANR plan. ¶ 410. Plaintiff claims that the Planning Board imposed conditions not authorized by

statute including the position that a private way which is located on his parcel does not need to provide any frontage to a newly created lot. ¶¶ 418-421.

- The plaintiff claims that in a deposition, Earl Johnson ("Johnson")committed perjury by testifying in front of his counsel, McCaughey, that the Board mailed the plaintiff a copy of its decision. ¶ 424. He claims that Benveniste indicated in a letter that the Board did not mail notification to the plaintiff on its decision of the first ANR plan but only on the second ANR plan. ¶ 425.

- He alleges that McCaughey, knew or should have known that the first ANR plan was in compliance with all laws and that the members of the Planning Board had no discretion in deciding the application. ¶ 426. He further alleges that McCaughey, in furtherance of an ongoing conspiracy did nothing to prevent the commission of the wrongs. ¶ 427. On October 17, 2002, the plaintiff filed a written notice with the Town Clerk on the submission of a second subdivision plan. ¶¶ 432-440. Plaintiff claims that the board took no action and that his plan became constructively endorsed. Plaintiff claims that after he informed the board that he would be suing them for failure to take a final action that the board members fraudulently falsified an official record by crossing out the words "will deny" and adding the words "voted to deny" by hand. ¶¶ 443-448. The allegation again is that McCaughey knew or should have known that the second ANR was in compliance with all applicable laws, etc. ¶ 450. In November, 2002, the plaintiff filed a Superior Court action for petition for mandamus, previously referenced as DCV2002-1996. ¶ 452.

- Plaintiff claims that on the day he drove to Springfield to file his complaint he was stopped by a Holland police officer, who was acting in concert with Police Chief Kevin Gleason ("Gleason")in furtherance of an ongoing conspiracy. ¶ 452. Plaintiff

claims that he was not exceeding the speed limit but he was nevertheless chased by the police officer and issued a ticket. ¶ 452. Plaintiff claims this act was an act of intimidation of a witness, conspiracy to obstruct justice and retaliatory discrimination for exercising his First Amendment rights. ¶ 453.

- On November 21, 2002, Benveniste mailed the plaintiff a letter and notice of decision one day after the plaintiff served his summons and complaint to the Planning Board. ¶ 455.

- In the deposition of Earl Johnson who was represented by McCaughey, plaintiff claims Johnson committed perjury, again having to do with the fact that the planning board had sent a letter to the plaintiff denying his first ANR plan. ¶ 469.

- On January 23, 2003, plaintiff asks Gleason about the status of a break in on his property in June, 2002. ¶ 472. Plaintiff claims that Gleason deliberately failed to forward certain papers and to file them with the Juvenile Court. ¶ 474.

- Plaintiff claims that in March, 2003, he was followed by a Holland police cruiser across the state line into Connecticut. Plaintiff claims that the cruiser blinded the plaintiff with his search light but no one got out of the car or asked him any questions and they drove off without any further action. ¶ 476. Plaintiff claims this was an attempt to intimidate him. In March, 2003, Gleason explained to the plaintiff that he did file the papers in Juvenile Court in Springfield and that he would re-file them in the event they could not find a copy. ¶ 477. According to the plaintiff, there was no indication to confirm that Gleason had ever filed the papers regarding the break in with the Court as he had stated or that the two juveniles were charged. ¶ 478.

- The plaintiff accuses McCaughey of stating false facts with respect to the filing of the second ANR. ¶ 482. Plaintiff claims that in September, 2003 during a deposition of

Benveniste, McCaughey interfered in an attempt to intimidate him from deposing Benveniste. ¶¶ 487-489.

- Plaintiff claims that under oath at her deposition, Benveniste testified falsely by stating that the members of the Planning Board voted on the first ANR plan during the regular meeting of July 2, 2002 when in fact they did not take a vote at that meeting. ¶¶ 493-496. Plaintiff alleges that Benveniste was represented by McCaughey. ¶ 497. The plaintiff alleges further that Benveniste lied when she indicated the plaintiff had been provided with written notification of the vote and that the plaintiff was present during the taking of the vote. ¶ 500. The PBH matter is still pending in litigation but the alleged constitutional violations regarding the behavior of town officials are brought in this action. Plaintiff alleges that McCaughey deliberately misstated facts in a Joint Pre-Trial Memorandum with respect to DCV2002-1196. ¶¶ 502-505.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a Court must take well-pled factual allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff. See *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). The Court, however, need not credit "bald assertions, unsupportable conclusions, and opprobrious epithets." See *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir. 1987). Dismissal under Rule 12 (b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery. See *Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999).

## III.    ARGUMENT

### A.    As to the Conspiracy to Interfere with Due Justice.

The defendants are unaware of any cognizable claim for conspiracy to interfere with due justice. (See Complaint, Count 59, ¶¶ 804-819).[3] The defendants ask this Court to dismiss this count as to all defendants as it does not state a claim for which relief may be granted. See Fed. R. Civ. P. 12(b)(6).

### B.    As to Statute of Limitations.

#### 1.    Section 1983.

Claims under § 1983 are subject to a three year statute of limitations. See *Johnson v. Rodriguez*, 943. F.2d 104, 107 (1st Cir. 1991). A § 1983 action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 (1st Cir. 1995). "The knowledge required is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." *Tedeschi v. Reardon*, 5 F. Supp. 2d 40, 44 (D. Mass. 1998), *quoting, Pagliuca v. Boston*, 35 Mass. App. Ct. 820, 824 (1994). Therefore, the key question to be answered is at what point did the plaintiff reliably know or have reason to know of the injury which he claims in this action. See *Tedeschi v. Reardon*, 5 F. Supp. 2d at 44.

In ¶ 63 of the complaint, the plaintiff admits that three years after the activities in June, 1987, he learned from Helen Kreiger, a named defendant, that the Chief of Police, the Building Inspector and members of the Board of Health conspired against him in 1987 for the purpose of preventing him from buying his property by refusing to approve the sewage disposal system.

---

[3] The defendants note that the plaintiff refers to violations of the 13th Amendment of the US Constitution in ¶ 808 which is the Amendment that abolishes slavery and to the First Amendment which is a separate count against the defendants. Since there are no facts to support that any of the defendants violated the Thirteenth Amendment and since the First Amendment claims are articulated elsewhere in the complaint, this count appears superfluous.

Additionally, the plaintiff alleges that starting in July, 1996 he sought professional help to cope with "extreme mental and emotional distress due to ... the ongoing harassment and discrimination of the electrical inspector and the ongoing conspiracy." See Complaint, ¶ 232. Despite the fact that the plaintiff has made these allegations in his complaint he nevertheless states that he is not subject to the statute of limitations because of the doctrine of continuing violation. The plaintiff advances absolutely no reason whatsoever for failing to take action against the Town for more than 10 years after the conspiracy was first brought to his attention and more than 6 years after he first was treated for alleged extreme mental and emotional distress.

The continuing violation doctrine had its beginnings in decisions interpreting Title VII of the Civil Rights Act and had been invoked in cases where a pattern or policy of employment discrimination is taking place but where there is not one single act of discrimination that is "sufficient to trigger the running of the limitations period." See *Velazquez v. Chardon*, 736 F.2d 831, 833 (1ˢᵗ Cir. 1984). The defendants are unaware of any cases in this Circuit wherein the continuing violation theory has been applied in anything other than employment cases. See *Muniz Cabrera v. Ruiz*, 23 F.3d 607, 610-611 (1ˢᵗ Cir. 1994) and cases cited therein.

In *Nieves v. McSweeney*, 241 F.3d 46, 50 (1ˢᵗ Cir. 2001), the Court examined the statute of limitations with respect to both §§ 1983 and 1985 claims where a continuing conspiracy to violate civil rights was alleged outside the context of an employment claim. In examining these claims, the First Circuit found that as long as the plaintiff knows or should have known of the injury, the statute of limitations begins to run separately from the occurrence of each civil rights violation. *Id.* at 51. The *Nieves* court noted:

> This court determined more than two decades ago that, in the context of a continuing conspiracy to violate civil rights, the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows or should have known of

the injury). *Hernandez Jimenez v. Calero Toledo*, 576 F.2d 402, 404 (1st Cir. 1978). In so holding, we explicitly repudiated the notion, loudly bruited by the appellants in this case, that the statute of limitations for civil conspiracy should run from the date of the last overt act that causes damage to the plaintiff. We stated:

> We recognize that some courts have spoken of the "last overt act" of a civil rights conspiracy as the time from which the statute begins to run, but do not believe those courts meant to depart from the traditional rule in civil conspiracies that the mere fact of a conspiracy does not toll the statute of limitations with respect to earlier clear-cut violations of rights that have not been concealed from the plaintiff.

*Id.* at 404 n.1 (citation omitted). As the appellants do not suggest that the violations that transpired in the course of this alleged conspiracy (such as the excessive use of force and the false arrest) were concealed from them, *Hernandez Jimenez* controls. See *United States v. Wogan,* 938 F.2d 1446, 1449 (1st Cir. 1991) (holding that in a multi-panel circuit, prior panel decisions generally are binding upon newly-constituted panels).

Here, the plaintiff does not allege that the violations in the course of the conspiracy were concealed from him. To the contrary, the plaintiff admits that he was well aware of the purported conspiracy against him as early 1990 and was on notice thereafter with respect to all of the additional alleged constitutional violations at the time of the alleged commission thereof. Thus, the defendants submit that, at minimum, all claims with respect to any alleged wrongdoing which occurred prior to April 6, 2001, the date of the filing of plaintiff's original Complaint, must be dismissed.

## 2.    Intentional Infliction of Emotional Distress.

The statute of limitations for tort claims in Massachusetts is three years. See M.G.L. c. 260, § 2A. The plaintiff has alleged that he sought treatment for the ongoing conspiracy as early as 1996 following the date of the cause of action described. Therefore, he is time barred from bringing his claim for intentional infliction of emotional distress, at least for all claims that occurred prior to April 6, 2001.

### 3.    Intentional Interference with Contract.

To the extent that the plaintiff has alleged intentional interference against any of the defendants for acts that occurred prior to April 6, 2001, such claims as well should be barred for failing to be brought within the statute of limitations. See M.G.L. c. 260, § 2A.

### 4.    Massachusetts Civil Rights Act.

The statute of limitations for claims brought under the Massachusetts Civil Rights Act is three years. See M.G.L. c. 260, § 5B. To the extent that any claim is brought for actions that took place prior to April 6, 2001, they must be dismissed as barred under the statute of limitations.

### 5.    Individual Counts and Defendants Which Must be Dismissed Because of Statute of Limitations.

The plaintiff, in his complaint, refers to specific paragraphs and specific defendants in each count of his Complaint. See Complaint, ¶¶ 515-833. The defendants have summarized below the paragraphs referenced in each count and the timeframe in which the acts allegedly occurred. To the extent that any count alleges acts prior to April 6, 2001, the defendants ask this Court to dismiss those counts for failure to be pled within the three-year applicable statute of limitations. In addition, wherever possible, the defendants have also indicated below where individual defendants are not named for any acts that occurred on or after April 6, 2001.

- Counts 1 through 7 encompass ¶¶ 39-59 in the Complaint and the timeframe is generally in or around 1987. Each of those counts implicate the following defendants: The Holland Board of Health ("BOH"), defendant, Harold E. Congdon ("Congdon"), and defendant, Robert Dymon ("Dymon").

- Counts 8I through 10 encompass ¶¶ 52-58 in the Complaint and the general timeframe of 1987. The defendants implicated in these counts are Congdon, Dymon and BOH.

- Count 9 encompasses ¶¶ 37-74 and the general timeframe of 1987 through 1988. The defendants implicated in this count are Congdon, Dymon, and Ronald Benoit ("Benoit").

- Counts 12 through 15 encompass ¶¶ 61-74 and the general timeframe of 1987 through 1988 and implicate the defendants Congdon, Dymon and BOH.

- Counts 16I through 17 encompass ¶¶ 79-89 of the Complaint and the general timeframe of 1993. The defendants implicated in these allegations are Dora Metrelis ("Metrelis") and BOH.

- Counts 18 through 19 encompass ¶¶ 90-113 and the general timeframe of 1993 and also implicate Metrelis and BOH.

- Counts 20 through 21 encompass ¶¶ 92-122 and the general timeframe of 1993. Metrelis and BOH are implicated as the defendants.

- Counts 22 encompasses ¶¶ 80-122 and the general timeframe of 1993. The defendants implicated in this count are Metrelis, BOH, William Hardy ("Hardy"), Harold Kreiger ("Kreiger") and the Holland Conservation Commission ("HCC").

- Counts 23 encompasses ¶¶ 125-148 and the general timeframe of 1994. Only the BOH is implicated as a defendant.

- Count 24 encompasses ¶¶ 129-197 and the general timeframe of 1994 through 1995. The defendants implicated in these paragraphs are Hardy and the HCC.

- Count 25 encompasses ¶¶ 125-148 and the general timeframe of 1994. The defendant implicated in these allegations is the BOH.

- Count 26 encompasses ¶¶ 129-197 and the general timeframe of 1994 though 1995. The defendants implicated in these paragraphs are Hardy and the HCC.

- Counts 27 through 28 encompass ¶¶ 160-175 and the general timeframe of 1994. The defendants implicated in these paragraphs are the BOH and John Stevens ("Stevens").

- Counts 29 through 30 encompass ¶¶ 176-205 and the general timeframe of 1994 through 1995. The defendant implicated in these paragraphs is the BOH.

- Count 31 encompasses ¶¶ 123-372 and the general timeframe of 1993 though April 3, 2001. The defendants implicated in these paragraphs are the BOH, the HCC and Hardy. The defendants note that because there is such a large time span involved in these paragraphs, there are different members of the BOH and HCC implicated but not individually referenced.

- Count 32 does not break out specific paragraphs to which it is referring but rather encompasses ¶¶ 1 through 677. There are also no specific defendants named in this Count. However, the general timeframe appears to be 1994 through November 20, 2002. See ¶ 682. To the extent that any of the discrete acts referred to in ¶ 682 occurred on or before April 6, 2001, the Court should dismiss those claims as falling outside the statute of limitations.

- Counts 33 through 34 encompass ¶¶ 206-296 and the general timeframe of 1995 through 1996. The defendant implicated in these counts is Richard Blease ("Blease").

- Counts 35 through 36 encompass ¶¶ 217-222 and the general timeframe of 1995 and implicate the defendants Benjamin Haller ("Haller") and the Holland Zoning Board of Appeals ("ZBA").

- Counts 37 through 39 encompass ¶¶ 206-297 and the general timeframe of 1995 through 1996. The defendants implicated in these counts are Brian Roche ("Roche") and the HCC.

368670

- Count 40 encompasses ¶¶ 271 through 273 and ¶ 295 and the general timeframe is 1996. The defendant implicated in this count is Blease.

- Count 41 encompasses ¶¶ 206 through 297 and the general timeframe of 1995 through 1996. The defendants implicated in this count are Blease and Haller.

- Count 42 encompasses ¶¶ 239 through 341 and the general timeframe of 1996 through March, 2000. The defendants implicated in this count are Sally Blais ("Blais") and the BOH.

- Counts 43 through 45 encompass ¶¶ 239 through 372 and the general timeframe of 1996 through April 3, 2001. The defendants implicated in these counts are Blais and the BOH.

All of the above Counts 1 through 45 allege acts that occurred prior to April 6, 2001. Sine the statute of limitations for all counts alleged in three years, the defendants move this Court to dismiss Counts 1 through 45 as untimely filed.

To the extent that the following defendants committed acts all falling outside of the statute of limitations, they should be dismissed entirely from this action: Congdon, Dymon, BOH, Benoit, Metrelis, Hardy, Kreiger, HCC, Blease, Haller, ZBA, and Roche. The only defendants who are named for actions that occurred within the statute of limitations are, therefore, the Town, Benveniste, PBA, Johnson, Ford and McCaughey.

### 6.    Counts Alleged within the Statute of Limitations.

- Count 46 encompasses ¶¶ 374 through 430 and the general timeframe of April, 2002 through June, 2002. This count implicates Deborah Benveniste ("Benveniste"), the Holland Planning Board of Appeals ("PBA"), Robert Ford ("Ford") and Earl Johnson ("Johnson").

368670

- Counts 47 through 49 encompass ¶¶ 374 through 430 and the general timeframe of April 15, 2002 through June 4, 2002. These counts do not implicate any specific defendants.

- Count 50 encompasses ¶¶ 373 through 430 and the general timeframe of April 15, 2002 through June 4, 2002. This count implicates Benveniste, PBA, Johnson and Ford.

- Count 51 encompasses all 774 paragraphs with a special emphasis on ¶¶ 681 through 692 and no general timeframe can be discerned. However, to the extent that any of the activities alleged in ¶¶ 681 through 692 occurred prior to April 6, 2001, they should be dismissed as falling outside of the statute of limitations. The defendants implicated in this count are Attorney Vincent McCaughey ("McCaughey"), Benveniste, PBA and Johnson. The defendants note that, although special emphasis in this count is placed on ¶¶ 681 through 692, none of the implicated defendants are discussed in those paragraphs.

- Count 52 encompasses ¶¶ 431 through 514 and the general timeframe of October, 2002 through December, 2003. The defendants implicated in these paragraphs are Benveniste, PBA, Johnson, Ford and McCaughey.

- Count 53 encompasses ¶¶ 431 through 514 and the general timeframe of October, 2002 through December, 2003. No specific defendants are implicated in this count.

- Count 54 encompasses ¶¶ 373, 431 through 514, 717 through 736 and the general timeframe of February, 2002 through December, 2002. No specific defendants are implicated in this count.

- Count 55 encompasses ¶¶ 431 through 514, 563 through 573. No specific defendants are implicated in this count.