UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.04-30070KPN

Peter K. Frei, )
Plaintiff, )
)
v. )
)
TOWN OF HOLLAND, et al, )
Defendant(s) )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT BY COURT

75 days ago, on April 29, 2004, defendants' counsel filed DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT OR, IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME. Honorable Judge Kenneth P. Neiman denied the motion for more definite statement and ordered the defendants to file their answer no later than June 30, 2004. Instead of "biting the bullet" and committing themselves to a full statement of their own position and following honorable Judge Kenneth P. Neiman's order, defendants' counsel filed a second motion under Rule 12, defendants' motion to dismiss under rule 12(b)(6).

### Defendants' second motion under Rule 12 is in violation of procedural law and therefore void.

Fed.R.Civ.P. 12(g) "contemplates the presentation of an omnibus pre-answer motion in which defendant advances every available Rule 12 defense and objection he may have that is assertable by motion." 5A Wright & Miller, Federal Practice & Procedure: Civil 2d s.1384 at 726 (1990).

Thus, defendants' counsel was mandated to join with her previously filed motion under rule 12 any defense or objection ther

available to her, but she failed to do just that.

Fed.R.Civ.P. 12(g) provides:

"**Consolidation of Defenses in Motion:** A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated."

The idea of rule 12(g) and its companion provision under rule 12(h)(2) is, to conserve judicial time by preventing a defendant from serially raising objections the plaintiff might well be able to meet, the very conduct defendants' counsel is engaging in.

Authorities are clear on the issue that filing a motion under rule 12(e) precludes a party from filing a subsequent motion to dismiss under rule 12(b)(6).

"Suppose the defendant moves under Rule 12(e) for a more definite statement of the complaint or pursuant to Rule 12(f) to strike a portion of the preceding pleading and thereafter wishes to raise one of the Rule 12(b) defenses by motion. Does Rule 12(g) bar that defendant from making the additional motion? It may be argued that the provision in Rule 12(g) proscribing successive motions applies only to the defenses enumerated in subdivision (b). However, Rule 12(g) is written in broad terms and requires consolidation of Rule 12 defenses and objections whenever a party makes a motion under "this rule." Motions to strike and for a more definite statement are motions under Rule 12 and thus clearly are within the language of subdivision (g). Nor is there a policy reason why a party should be permitted first to attack the opposing party's pleading under Rule 12(e) or Rule 12(f) and then be allowed to follow with a Rule 12(b) motion when these defenses and objections might have been presented together FN6. Indeed, the district court in Printing Plate Supply Company v. Curtis Publishing Company FN7 pointed out that "automatic permission of the practice of making Rule 12(e) motions with the sole intent of 'saving' other Rule 12 motions would effectively destroy the salutary purposes of Rule 12(g) FN8." 5A Wright & Miller, Federal Practice & Procedure: Civil 2d s.1388 at 737 (1989).

"Therefore, a litigant moving to strike or for a more definite statement should be barred from making a second preliminary motion based on any Rule 12 defense that he reasonably was capable of asserting with the initial motion FN9. This principle is illustrated by an early case under the federal rules, Broomfield v. Doolittle, FN10 in which the defendant first moved under Rules 12(e) and 12(f) and the motion was denied. <u>Subsequently, the defendant filed a</u>

<u>motion to dismiss for failure to state a claim. The district court held that the Rule 12(b)(6) defense should have been consolidated with the first motion.</u>" 5A Wright & Miller, Federal Practice & Procedure: Civil 2d s.1388 at 738 (1989).

Footnote 9 in the previous paragraph refers to <u>U.S. v. Columbia Gas & Electric Corporation</u>. In this case, the defendant filed a pre-answer motion for a more definite statement and bill of particulars with the court. As in the case here at bar, the court denied the motion and allowed more time. Defendants then filed a motion to dismiss which the court found to be in violation of F.R.Civ.P. 12(g). Plaintiff then filed a motion for default judgment which was also denied on grounds of failure by plaintiff to object to Judges order granting the defendants more time to file an answer. "[T]he defendants' motion to dismiss complaint, filed after denial of defendants' motion for bill of particulars, was violative of federal rule relating to consolidation of motions. Federal Rules of Civil Procedure, rule 12," <u>U.S. v. Columbia Gas & Electric Corporation</u>, 1 F.R.D. 606 (1941).

Please note that in some cases adjudicated prior to the 1948 amendment to rule 12(g), the "two-motion option" was tolerated under specific circumstances. In 1966 minor modifications to the language of rule 12(g) where made to conform the provision to the revision of 1948. See 5A Wright & Miller, Federal Practice & Procedure: Civil 2d s.1384 History And Purpose Of Rule 12(g).

In the case here at bar, honorable Judge Kenneth P. Neiman denied the motion for more definite statement and ordered the defendants to file their answer no later than June 30, 2004. The defendants therefore are in default. Plaintiff formally objects to any further concession of time to the defendants to answer plaintiff's complaint past June 30, 2004. Today, July 13, 2004, 100 days have gone by since plaintiff filed his complaint, and plaintiff is still waiting for an answer.

In the following citation, the court came to a finding that a stand alone motion under rule 12 "buys the movant no time" if the motion is frivolous.

"[T]he Ruggieros can get no mileage from having captioned their response to the RTC's petition a "Rule 12" motion, by which they presumably meant a motion to dismiss the petition for failure to state a claim (12(b)(6). It is true that Fed.R.Civ.P. 12(a)(1) provides that if a motion under Rule 12 is denied, the movant shall have ten days to file a responsive pleading. But a frivolous motion buys the movant no time." Resolution Trust Corp. v. Ruggiero, 994 F.2d 1221 (1993).

Defendants' counsel was granted a generous 60 days at the time when her groundless motion for more definite statement was denied by this court to draft an answer and <u>not</u> to draft another dilatory and frivolous pre-answer motion under rule 12.

<u>Impropriety of Defendants' counsel's self-serving exploit of re-writing plaintiff's factual statement of his amended complaint</u>

It is plaintiff's understanding that an order by this honorable Court is binding on all parties involved, including the defendants. By denying defendants' motion for a more definite statement, this honorable Court came to the finding that plaintiff's amended complaint is sufficient, and rightly so.

Plaintiff therefore opposes strongly (emphasis added) defendants' attempt to prejudice this honorable Court against plaintiff by re-writing plaintiff's factual statement and by combining counts, skillfully and selectively omitting incriminating details, under the pretence of "the Court's convenience" and to give the amended complaint "context." See also Fed.R.C.P. 10(b).

Here is just one example of defendants' counsel's deceptive version, second paragraph, page 12 of defendants' motion to dismiss:

"Plaintiff claims that under oath at her deposition, Benveniste testified falsely by stating that the members of the Planning Board voted on the first ANR plan during the regular meeting of July 2,

2002 when in fact they did not take a vote at that meeting. See paragraphs 493-496."

Plaintiff's amended complaint states the following facts under paragraphs 493-496 of his amended complaint:

Debra Benveniste, chairman of the planing board, testified under oath that the board took a vote on plaintiff's 1st ANR plan during the meeting of July 2. 2002. She also testified that plaintiff was present. Plaintiff then confronted her with the letter of denial she wrote and signed <u>one week prior to the alleged vote by the board</u>. This letter of denial was written, dated and signed by Benveniste on June 24, 2002. Furthermore, this letter is time-stamped with the same date, June 24, 2002 by the town clerk, proving the filing with the town clerk's office on June 24, 2002.

The facts as written in plaintiff's amended complaint give testimony of a preordained unconstitutional decision by an official public agency with policing power and of the fabrication of evidence by perjured testimony. Further, there was not even a decision made, as the planning board failed to take a vote. Furthermore, the planning board had no discretion in deciding whether to endorse plaintiff's 1st ANR application or not. Plaintiff had an entitlement to the endorsement of his 1st ANR.

The next paragraph, paragraph 497, is not only a statement to the fact that Benveniste was represented by McCaughey as defendants' counsel states, plaintiff's statement asserts a time and place in connection to the allegations asserted under paragraphs 493-496, to meet the pleading standard under rule 9(f) of the Fed.R.Civ.P.

Plaintiff respectfully asks this honorable Court to ignore defendants' inappropriate offering under the heading "INTRODUCTION AND SUMMARY OF THE ALLEGATIONS" of defendants' motion to dismiss, as

such offerings are just a desperate and inappropriate attempt to prejudice this honorable court against plaintiff for lack of a valid defense and to convince this court to dismiss plaintiff's amended complaint.

## Defendants' motion to dismiss fails to raise any legally or factually tenable arguments

Defendants' counsel in her motion to dismiss under III.(A) is seeking to dismiss COUNT 59 and supports her request with Fed.R.Civ.P. 12(b)(6).

Defendants' counsel is trying to have COUNT 59 dismissed, because of its overwhelming persuasive weight.

In footnote 3, page 13, defendants' counsel notes, quote:

"The defendants note that the plaintiff refers to violations of the 13th Amendment of the US Constitution in § 808 which is the Amendment that abolishes slavery and the First Amendment which is a separate count against the defendants. Since there are no facts to support that any of the defendants violated the Thirteenth Amendment and since the First Amendment claims are articulated elsewhere in the complaint, this count appears superfluous."

Defendants' counsel is in error again. COUNT 59 is an alleged CONSPIRACY TO INTERFERE WITH DUE JUSTICE, actionable under 42 U.S.C., s.1985. S.1985(3) emanates from the 13th Amendment and not from the 14th Amendment. See <u>Griffin v. Breckenridge</u>, 403 US 88 (1971). Plaintiff pro se is just a laymen and notes that defendants counsel knows or should know of the contemporary affinity between the 13th Amendment and s.1985.

"[A] Violation of s.1985 requires: (1) conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws; (3) act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of United States. 42 U.S.C.A. s.1985." <u>Denney v. City of Albany</u>, 68 F.Supp 2d 1369 (1999, MD Ga).

Plaintiff pleaded (paragraph 596 of his amended complaint)

that he is a member of a protected class, the class of persons with different national origin. Plaintiff is a naturalized citizen of the United States and a Swiss native.

Federal civil rights statute 42 U.S.C., s.1983 imposes liability for violations of rights protected by Federal Constitution and Federal Law, such as U.S.C.A. 13th Amendment and 42 U.S.C., s.1985.

Defendants' counsel's non-legitimate request to have COUNT 5) dismissed is nothing more then wishful thinking.

"[T]hus, Phonometrics' complaint contains enough detail to allow the defendants to answer. Rule 12(b)(6) requires no more." Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (2000).

## "continuing violation" doctrine not exclusive to title VII employment discrimination cases as defendants' counsel asserts

Defendants' counsel errs, the doctrine of "continuing violation" is largely (but not exclusively) a creature of tile VII employment discrimination law, and the courts are reluctant to apply the doctrine outside the context of employment discrimination.

In Carr v. Town of Dewey Beach, a developer sued a city and some of its officials for alleged efforts to impede development of property. The court noted in its opinion:

"[I]n determining appropriate commencement date for statute of limitations purposes in federal civil rights action, where continuing violation is alleged, if defendant engaged in continuing course of conduct and plaintiff's suit is timely as to any act in that course of conduct, plaintiff may be permitted to litigate violations that are part of course of conduct. * * * Under a continuing violation theory, if the defendant engaged in a continuing course of conduct and plaintiff's action is timely as to any act in that course of conduct, plaintiff may be permitted to litigate violations that are part of the course of conduct. Van Heest v. McNeilab, Inc., 624 F.Supp. 891, 896 (D.Del.1985). * * * Plaintiff can prevail under a continuing violation theory, however, only if he can show "more than the occurrence of isolated or sporadic acts...." Jewett v. International Tel. & Tel. Corp., 653 F.2d 89, 91-92 (3d Cir.), cert. denied, 454 U.S. 969, 102 S.Ct. 515,

70 L.Ed.2d 386 (1981). In order to determine whether a series of events constitute discrete actions or a continuing course of conduct, the court must first identify precisely the practice complained of and separate it from its inevitable, but neutral consequences. Bronze Shields, Inc. v. New Jersey Dept. of Civil Serv., 667 F.2d 1074, 1083 (3d Cir.1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982); Van Heest, 624 F.Supp. at 896. 42 U.S.C.A. s.1983." Carr v. Town of Dewey Beach, 730 F.Supp 591 (1990).

Plaintiff asserts, that his complaint would stand any test and provides more then adequate "systemic violations", "serial violations", the theme of "discrimination based on national origin", and much more.

Plaintiff contends, as his case is unique in many regards, that defendants' counsel could impossibly advance a case to invoke the "law-of-the-case" doctrine which would preclude the continuing violation doctrine in the case at bar and notes that after all, the "continuing violation" doctrine is an "equitable" exception.

Not invoking the "continuing violation" doctrine would be prejudicial to plaintiff.

The systemic violations by the board of health starting back in 1987 are still "ongoing", as plaintiff to this day has never received a "certificate of compliance" on his subsurface sewage disposal system. Plaintiff has a "property interest" in this certificate.

"[S]ystemic continuing violation of s.1983 need not involve identifiable discrete act of discrimination within limitations period, but rather requires showing that plaintiff has been harmed by application of discriminatory policy or practice and that such policy continues into limitations period. 42 U.S.C.A. s.1983. It is not enough to show that plaintiff is merely feeling the effects of some earlier discriminatory action. In other words, there is a "critical distinction between a continuing act and a singular act that brings continuing consequences in its roiled wake." Johnson, 943 F.2d at 108 (internal citations omitted); see also Mack, 871 F.2d at 182 * * * Systemic violations, on the other hand, "need not involve an identifiable discrete act of discrimination transpiring within the limitation period." Jensen, 912 F.2d at 523. Rather what must be shown is that plaintiff has been harmed by the

application of a discriminatory policy or practice and that such policy continues into the limitations period. * * * Statute of limitations are designed to keep stale claims out of court." Muniz-Cabrero v. Ruiz, 23 F.3d 607 (1994).

The outstanding certificate of compliance is in regards to the <u>same</u> subsurface sewage disposal system initially sought by plaintiff back in 1987.

The last overt act was a letter by the board of health, dated April 3, 2001 (see amended complaint paragraph 372). This event is within the statue of limitation, as this letter was mailed and received on April 5, 2001. Furthermore, April 3 & 4 in 2004 was a weekend and plaintiff filed his complaint on Monday April 5, 2004, see Fed.R.Civ.P. 6(a).

## <u>Is it possible for conspirators to conspire against a person the conspirators don't even know exists?</u>

Certainly not.

Defendants' counsel cited Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001). In this case, the plaintiff invoked the continuing violation doctrine and alleged a conspiracy by the police.

The police (defendants) did not know the person (plaintiff) they arrested, and this according to plaintiff's own admission. It was therefore impossible that the arrest could have been part of an alleged conspiracy and therefore had to be barred by the statute of limitation.

"[W]here, under plaintiffs' own theory of the case, alleged malicious prosecution conspiracy did not antedate the arrest of plaintiffs, but, rather, arose afterwards, sparked by the officers' perceived need to cover up their unwarranted brutality, there was no single, unified conspiracy encompassing excessive use of force, false arrest, and malicious prosecution, and thus the three-year Massachusetts statute of limitations applicable to s.s.1983 actions ran from each civil rights violation identified in the complaint. 42 U.S.C.A. s.s.1983, 1985(3); M.G.L.A. c. 260, s.2A." Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001).

Defendants' cited cases present dissimilar wrongs resting on different factual bases and therefore lack persuasive authority.

### Defendants counsel assertions under III.(B)(6), page 19

Defendants' counsel's assertions are all wrong. For instance, on page 20, in the first paragraph she states that COUNTS 47 trough 49 would not implicate any specific defendants. Defendants' counsel errs. In COUNT 47, paragraph 765, plaintiff states: "..With their actions and/or inactions, as described under paragraph 761, defendant(s) deprived...." Then, under paragraph 761, plaintiff states: "Debra Benveniste, chairman PBH, Earl Johnson, and other members of the planning board, and, Robert Ford, town clerk, failed to endorse......" Plaintiff will not burden this Court by pointing out each wrong assertion made by defendants' counsel under paragraph III.(B)(6), page 19.

### Due process claims under s.1983; see III.(C)(1), page 21

"[T]he hallmark of "property" under Fourteenth Amendment's due process clause is individual entitlement grounded in state law which cannot be removed except for cause; once that characteristic is found, the types of interest protected as "property" are varied and, as often as not, intangible, relating to the whole domain of social and economic fact. U.S.C.A. Const. Amend. 14." Logan v. Zimmerman Brush Co. 455 U.S. 422, 102 S.Ct. 1148 (1982).

Defendants counsel errs again. Plaintiff's claims are <u>all</u> based on violations by town officials in reference to applications to municipal boards, in which the different municipal boards had <u>no discretion</u> in finding their decisions. Members of the different board's had a <u>ministerial</u> <u>duty</u> applying the law, rules and regulations in making this kind of decisions. Plaintiff had a <u>constitutionally</u> <u>protected</u> "<u>property</u> <u>interest</u>" in the approval of all his different applications. The potency of plaintiff's case rests on this fact.

Such a property interest is subject to the protection of the due process clause which results from legitimate claim of entitlement created by independent source, such as state law. U.S.C.A., Const. Amend. 14.

In contrast, there is <u>no</u> <u>constitutionally</u> <u>protected</u> "<u>property interest</u>" in an application for a variance, special permit, subdivision application which needs approval, or a license, etc.

Members of municipal boards have ample discretion in deciding such applications, as applicants do not have an entitlement in the approval of such applications.

All of defendants' counsel's cited cases under III.(C)(1) page 21 through 24 of defendants' motion to dismiss, <u>pertain to discretionary decisions</u> by municipal boards. The strongest argument in bold and underlined and [emphasis added] on page 24, citing Creative Environments Inc. v. Eastbrook, pertains to a denied Subdivision plan application, which needs approval under M.G.L., c.41,s.81U. A planning board <u>has</u> <u>ample</u> <u>discretion</u> in deciding whether to approve a subdivision plan or not.

In contrast, an application for a division of a tract of land which does not need approval, a so called "ANR" application needs to be endorsed under M.G.L., c.41,s.81P if the plan meets the statutory requirements and does not need approval. Such an endorsement is a ministerial act, a municipal board does <u>not</u> <u>have</u> <u>any</u> <u>discretion</u> in deciding whether to endorse such a plan or not if such plan meets the statutory requirements.

Defendants' counsel errs with her statement on page 22, where she refers to plaintiff's upcoming trial in state court, and the uncertainty whether plaintiff's plan would be approved or not.

Again, an ANR application does not need approval as she claims, an ANR plan needs to be endorsed or refused to be endorsed. An ANR is called "Approval Not Required" because it does <u>not</u> need <u>approval</u>.

Even in situations where plaintiff is not entitled to an approval, but plaintiff can prove that the decision was arbitrarily or irrationally reached, a municipal board would be guilty of a constitutional violation of substantive due process:

"[O]wnership is a property interest worthy of substantive due process protection. * * * Indeed, one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership. Thus, in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached. Where the plaintiff so alleges, the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection." Id. at 600-01. <u>De Blasio v. Zoning Board of Adjustment</u>, 53 F.3d 592 (3rd Cir. 1995).

Plaintiff's COUNTS for violation of substantive due process are not defective in any way and allege more then sufficiently such violations.

Plaintiff is not required to state or reveal theories under which he intends to pursue the claims he alleges in his complaint.

Since defendants' counsel struggles to see the merits of plaintiff's complaint, here the theories under which substantive due process violations are legitimate:

"[A] plaintiff may bring a substantive due process claim under either of two theories. Under the first, she must allege the deprivation of a constitutionally protected property interest. Under the second, she must demonstrate that the government's conduct shocks the conscience." <u>Rubin v. Town of Norton</u>, CIVIL ACTION NO. 00-11713-RWZ, (1st Cir. 2001; Unpublished decision, LEXIS 13032).

Theories under which procedural due process violations are legitimate (must allege that provisions under state statutes are unavailable or insufficient):

"[B]asic purport of constitutional requirement of "procedural due process" is that, before a significant deprivation of liberty or property takes place at the state's hands, affected individual must be forewarned and afforded an opportunity to be heard at meaningful time and in meaningful manner. U.S.C.A. Const. Amend. 14." Amsden v. Moran, 904 F.2d 748 (1st Cir. 1990).

Unconstitutional policies justify actions as well, including actions against a municipality.

### Equal Protection Claims; see III.(C)(2), page 24

Defendants counsel errs again when she asserts, quote:

"The plaintiff states repeatedly that he was a victim of discriminatory animus based on his national origin but never alleges nor provides facts to support that he was treated differently from others similarly situated. He simply asserts in conclusory fashion that he was discriminated against but fails to set forth information about other applicants who were treated differently from him."

Here is one example of such a fact alleged in plaintiff's complaint which rebuts all the false assertions at once:

"484. August 21, 2003: Vincent McCaughey produces documents requested by plaintiff per discovery order. Plaintiff requested, among other documents, copies of all ANR plan applications submitted since May 1, 1997.

485. All of the submitted ANR plans but plaintiff's ANR plan were accepted and endorsed by the PBH.

486. One of the ANR plans was accepted despite the fact that it did not comply with the frontage requirements."

Could plaintiff be more specific with his allegations? Plaintiff does not think so. Here is the allegation included in each COUNT for an alleged violation of equal protection of the law:

"524. Defendant(s) singled out plaintiff and treated him different than other persons in the same or similar situations, without respect to the statutory criteria, which the equal protection clause forbids."

In the cited cases, defendants' counsel compares again apples to oranges and fails to see the fundamental difference between a disgruntled permit applicant which does not have any entitlement to a special permit or a variance, and, an applicant who has an

entitlement or a property interest grounded in state law, in requesting a municipal board to execute a ministerial act.

### Condemnation of dwelling is confiscatory action violating the Forth Amendment; see III(C)(3), page 25

Defendants counsel is right with her assertion, that there was no illegal search, plaintiff never alleged an "illegal search".

However, defendants' counsel errs with her assertion, that defendants' did not violate plaintiffs rights under the Forth Amendment.

The Forth Amendment provides:

"The <u>right</u> of the people <u>to</u> <u>be</u> <u>secure</u> <u>in</u> <u>their</u> persons, <u>houses</u>, papers, and effects, <u>against</u> <u>unreasonable</u> searches and <u>seizures</u>, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

Plaintiff alleged a seizure of the dwelling (paragraph 52), which forced him to move and sleep in other quarters. Board of health has policing power and exercising that power by posting an unlawful and unjustified notice to the effect that the "premises are not to be occupied for human habitation", is confiscatory and in violation of the forth Amendment.

### As to conspiracy Claims Under s.1985; see III.(C)(4), page 26

Defendants' counsel errs again claiming plaintiff pleaded s.1986. Plaintiff never alleged a violation of s.1986.

Defendants' counsel errs again with her assertion that plaintiff failed to support his allegations with particulars as to specific acts of individuals in furtherance of a conspiracy.

Plaintiff stated multiple allegations with references to specific acts, see the following paragraphs: 63, 396, 427, 450-453, 466, 594-599, 603-607, 645-646, 676-678, 744, 774, 794, 805-810.

Defendants counsel errs with her assertion that Blais, LaPlante, May, Quinn, Roche, and Stevens would not be named as conspirators.

The following officials are named as conspirators in the following paragraphs: Blais in 475 and 743 by name; LaPlante, May and Roche as members of the PBH in 396, 466, 773, 796 and 805; Stevens in 676 by name, Stevens and Quinn as members of the BOH in 645 and 676.

Defendants counsel errs again with her assertion that, quote: "There are no allegations that any defendant named in the conspiracy counts had knowledge of or power to prevent the purported conspiracy."

Plaintiff pleaded in all conspiracy COUNTS of his complaint:
"603. Plaintiff informed defendant(s) of his rights and the consequences of their unlawful acts. Conspirators, (defendants), therefore had knowledge of the wrongs conspired to be done and would have had the power to prevent the commission of the wrongs but failed to do so."

Other paragraphs with the same allegation within the factual statement are, 427 and 450; and inside conspiracy counts, 811.

### As to Qualified Immunity; see III.(D), page 27

Defendants' counsel is right with her statement, that defendants' may be protected in the course of performing discretionary acts.

The measure of "discretion" a board has in finding their decision is inversely proportional to the "protection" town officials enjoy to qualified immunity.

However, defendants' counsel errs by consistently citing cases involving discretionary decisions by municipal boards and comparing them with plaintiff's action here at bar.

The cases cited by defendants' counsel are not just distinguishable, cited cases are fundamentally different.

Plaintiff's case involves without exception applications for ministerial acts by municipal boards for which plaintiff had an absolute entitlement.

## As to Violation of Massachusetts Civil Rights Act, see III.(E), page 28

Defendants counsel errs again. She cites again a case in which a subdivision plan is the subject of the suit and not an ANR. She fails to recognize the difference by stating:

"The courts have consistently held that <u>actions</u> by municipal officials, <u>such as those alleged herein,</u> do not constitute such acts. See, e.g., Freeman v. Planning Bd. of West Boylston, 419 Mass. 548 555-556 (1995)."

ANR endorsements are "ministerial" acts, subdivisions plans are not:

"[E]ndorsement of "approval not required" for plan of land is ministerial act that constitutes attestation of compliance neither with zoning requirements nor subdivision conditions", <u>Hamilton v. Planning Bd. of Beverly</u>, 35 Mass.App.Ct. 386, 620 N.E.2d 44 (1993).

Defendants' counsel cites Freeman v. Planning Bd. of West Boylsten, here another part of that opinion:

"[T]o establish claim under state civil rights act, plaintiff must prove that: his exercise of enjoyment of rights secured by Constitution or laws of either United States or Commonwealth, have been interfered with, or attempted to be interfered with, and that interference or attempted interference was by threats, intimidation, or coercion. M.G.L.A. c. 12, s.11I." <u>Freeman v. Planning Bd. of West Boylston</u>, 419 Mass. 548, 646 N.E.2d 139 (1995).

As Freeman had an issue over a subdivision plan, the first prong (enjoyment of rights) of the test was questionable, as he had no absolute entitlement for approval. There where other problems in Freeman as well.

Plaintiff's case meets the test on all prongs, not only on the first prong.

"Coercion" is defined as "the use of physical or moral force to compel [another] to act or assent." Webster's New Third Int'l

Dictionary 439 (1981)." <u>Freeman v. Planning Bd. of West Boylston</u>, 419 Mass. 548, 646 N.E.2d 139 (1995).

To meet the third prong (interference or attempted interference by coercion) of the test, plaintiff must allege animus or harassment by the planning board:

"[T]o allege a scheme of harassment sufficient to meet the third prong of the test, plaintiff must proffer "some evidence of animus against [her] or [her] project and an attempt to thwart the project through adverse administrative action unrelated to the board's legitimate concerns." <u>Rubin v. Town of Norton</u>, CIVIL ACTION NO. 00-11713-RWZ, (1st Cir. 2001; Unpublished decision, LEXIS 13032).

There is no doubt in plaintiffs' mind, that his allegations are pleaded in sufficient detail and that his case is a prima facie case in regards to M.G.L., c.12,s.11I.

## As to Intentional Infliction of Emotional Distress; see III. (F), page 29

Defendants' counsel errs again for the same reasons as stated above.

## Intentional Interference with Contract; see III. (G), page 29

Defendants' counsel errs again. It is not a necessity that the interference or attempted interference is successful in order to constitute a violation.

Defendants' counsel errs again with her assertion quote:

"Finally, Count 55 alleges that certain acts of certain defendants 'prevented plaintiff from... executing implied contract to sell lot B and lot C.' See § 789. This allegations fails to state a claim for intentional interference with contract."

Plaintiff pleaded in his COUNT 55, under paragraph 789 quote:

"789. Defendant(s), by their intentional, purposeful and malicious actions, as described under paragraph 779 and 785, prevented plaintiff from executing existing contract to sell lot A, and also prevented plaintiff from executing implied contract to sell lot B and lot C."

In order to respect local Rule 7.1(b)(4) and not to exceed the 20 page limit, plaintiff is unable to oppose the rest of defendants'

counsel's wrong arguments, but assures this Court, that the rest of defendants' counsel's motion to dismiss is consistent in its inaccuracy with the contents considered and analyzed so far.

### Power comes with responsibility.

Defendants' counsel errs again with her contention, that plaintiff failed to allege sufficient facts to support any claim against planning board members Joanne May and Marilyn LaPlante.

A corrupt regime like the town of Holland and its municipal boards under the leader ship of the "good old boys" depends on its complacent members as entourage. (There are a few exceptions, such as the building inspector Jack Keough).

Occasionally an innocent citizen with idealistic motives joins one of the boards only to realize that dominating rulers like Earl Johnson, Sally Blais, former HCC chairman Humpfrey Sutton and others do not have democracy on their mind. Such newcomers either become compliant or resign disappointed.

When Marilyn LaPlante joined the planning board in the summer of 1998, she voiced the following, quote out of the written official record, the minutes to the planning board meeting of July 21, 1998:
"Marilyn LaPlante suggested that all the members should vote on all matters. Everyone agreed."

Defendants' counsel is correct, Plaintiff is not certain if LaPlante was acting in concert or if she had improper motives as she never said a word. Plaintiff pleaded in his complaint several times, "violated by their actions and/or innactions."

The constitutionally required "separation of power" in a town government is impeded where siblings and cousins rule and individuals like Marilyn Laplante fill the gaps on boards to reach the required quorum in order to enable the rulers.

Earl Johnson, and the other two selectmen are holding seats in other municipal boards as well, Earl Johnson is a cousin to Brian Roche, and Maria Scott was a sister to Benjamin Haller.

It is obvious that defendants' counsel's motion to dismiss and the previous motion for a more definite statement, both filed under rule 12, are unsupported and not proper.

Even if plaintiffs' complaint would be inadequate, Federal Practice would favour allowance to cure the defects by amendment.

Furthermore, plaintiff also notes, that practice of the Courts in general, construe pro se complaints more liberally.

On page 28, defendants' counsel states, quote:

"If this Court allows some or all of the instant motion, it will be more manageable for both the defendants and the Court to argue and consider qualified immunity in a pared down complaint."

Plaintiff would suggest, that this Court looks at the frivolous arguments and the merit-less defenses of defendants' case, and the desperate attempt to prejudice this Court against plaintiff, in its decision whether to enter a default judgment or not.

Defendants' have not committed themselves to an answer out of fear of what would lie a head.

This case would have had a chance to be "pared down" and to become "more manageable" if the defendants would have answered the amended complaint and thereafter would have had some exposure to Fed.R.Civ.P. 26, and the duty of disclosure under that rule.

On page 31, defendants' counsel refers to plaintiff's ANR application as a "special permit". With all due respect, plaintiff wonders if such conduct is still considered "creative lawyering" or if such conduct is in violation of M.G.L., c.221,s.38.

Plaintiff is aware of the fact, that Federal Courts in general

are reluctant to adjudicate cases based on technicalities and not on their merits. In the case here at bar, defendants' motion to dismiss and the arguments defendants' counsel advanced in support thereof made it painfully clear that the defendants would not have a remote chance to launch a successful motion under rule 55(c), to set aside a default judgment.

Even if plaintiff would be prevented to invoke the "continuing violation" doctrine, plaintiff would be entitled to most of the monetary damages. Nearly all of the alleged violations calling for monetary damage awards occurred within the statute of limitation and are in connection with the submission of two separate ANR applications by the plaintiff.

## CONCLUSION

Fed.R.Civ.P provides rule 55, under which plaintiff has a right to file this motion. Defendants' had five times the 20 days normally allowed to answer a complaint and are in default.

Plaintiff's respectfully moves this Court to enter default for the reasons stated herein as to all COUNTS and demands. Plaintiff will prove his case at a hearing if necessary, relying on documents, such as ANR plans and official records (minutes), etc., and employing requests for judicial notice of fact and/or law.

Respectfully submitted by the
Plaintiff pro se

Peter K. Frei
P.O. Box 500
BRIMFIELD, MA 01010-0500
phone: 413 245 4660

(http://www.01521.com/fed/fdefjms01.htm)