UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:  04-30070-MAP

| | |
|---|---|
| PETER K. FREI, | ) |
|     Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| TOWN OF HOLLAND, BOARD OF HEALTH, | ) |
| HOLLAND CONSERVATION COMMISSION, | ) |
| HOLLAND POLICE DEPARTMENT, | ) |
| PLANNING BOARD, ZONING BOARD OF | ) |
| APPEALS, Ronald Benoit, Debra Benveniste, | ) |
| Sally Blais, Richard Blease, Harold E. Congdon, | ) |
| Robert Dymon, Robert Ford, Kevin Gleason, | ) |
| Benjamin Haller, William Hardy, Earl Johnson, | ) |
| Helen Kreiger, Marilyn LaPlante, Joanne May, | ) |
| Vincent J. McCaughey, Dora Metrelis, | ) |
| Arthur A. Quinn, Brian Roche, John Stevens, | ) |
|     Defendants | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I. INTRODUCTION AND SUMMARY OF THE ALLEGATIONS**

Peter Frei (hereinafter the "plaintiff") has filed a 95 page Amended Complaint stated in more than 830 paragraphs (herein after referred to as the complaint) which purports to state 10 separate counts.  The defendants filed their Answer on September 14, 2004 and herein move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  For the Court's convenience, the defendants offer the following breakdown of the counts alleged.

Violation of Equal Protection Amendment of the US Constitution:

    Counts 1, 2, 3, 8, 12, 14, 16, 18, 20, 23, 24, 27, 29, 33, 36, 37, 42, 46, 52 and 58

Violation of Substantive due process:

    Counts 4, 5, 6, 9, 12, 15, 17, 19, 21, 25, 26, 28, 30, 34, 36, 38, 43, 47 and 53

Interference with contract:

368670

  Counts 7, 40, 49 and 55

Unreasonable search and seizure:

  Count 10

Conspiracy to deny equal protection:

  Counts 11, 22, 31, 41, 50 and 56

Conspiracy to interfere with due justice:

  Count 59

Retaliation for exercising First Amendment rights:

  Counts 32, 45, 51 and 57

 Violation of procedural due process:

  Counts 39, 44, 48 and 56

Intentional infliction of emotional distress:

  Count 60

Violation of the Mass. Civil Rights Act:

  Count 61

  Unfortunately, it is impossible to create the same type of breakdown as to what counts are alleged against which individual defendants.  Generally speaking, the complaint sets out facts which detail long and contentious series of land use disputes between the defendants and the plaintiff.  See Complaint, ¶¶ 37-514.  To give the complaint some context, the defendants have summarized the major land use issues alleged and the general time frames they occurred.  The defendants do not claim to present all facts alleged in this summary, but only those which reasonably describe each discrete land dispute raised by the plaintiff.  The defendants do not assert that the facts in this section are the only facts the Court must consider in ruling on their motion.

368670

In or around June 1987, the Holland Board of Health (BOH) refused to issue a percolation test permit to plaintiff and requested that plaintiff install a leach field 100 ft. away from the lake where his property is located. ¶¶ 39-41.

- Both of these acts, according to the plaintiff, were in violation of the applicable regulations. ¶ 41.
    - Around the same time, BOH refuses to approve the plaintiff's first set of plans for a subsurface sewage disposal system. ¶ 42.
    - Around the same time, BOH refuses to issue a construction permit for installation of the proposed subsurface sewage disposal system. ¶ 43.
        - Both of these acts, according to the plaintiff, were in violation of the applicable sections of the CMR. ¶¶ 44-47.
        - The plaintiff claims that these acts were guided by "discriminatory animus" on the part of the BOH. ¶ 48.

In May/June 1987, BOH requested that the plaintiff buy more land to accommodate a leachfield. ¶ 51.

- Plaintiff claims this request was not based in law and that is was arbitrary and capricious. *Id.*

In May 1987, BOH posted a notice with the wrong date on the entrance door to the cottage on the property sought to be purchased by Mr. Frei, declaring that the dwelling is a health hazard and condemning it. ¶ 52.

- Plaintiff alleges this was done to oppress, discriminate, intimidate and prevent the plaintiff from buying the property. ¶¶ 53-59.
    - In April, 1988, the plaintiff submits a plan to the BOH which he calls the second plan for a subsurface sewage disposal system. The BOH approves the plan

368670

- contingent upon the plaintiff moving the holding tank to a higher level. The plaintiff asserts that the request was arbitrary and capricious.[1] ¶¶ 64-67.

- On June 17, 1988, the BOH issues a certificate of compliance for a subsurface sewage system and on July 12, 1988 BOH approves an as built holding tank plan by Cox Environmental Engineer. Despite the approval and the certificate of compliance, the plaintiff alleges that there is a violation of regulations. ¶¶ 69-71.

- Plaintiff makes reference to a third subsurface sewage disposal system plan but it is impossible to discern when that plan was submitted. ¶ 72.

- On March 20, 1989, the plaintiff buys the adjoining piece of property. ¶ 75. In the summer of 1990, the plaintiff seeks a permit to install an artesian well on his property that he bought in 1989 and the BOH denies issuing a permit on the basis of back taxes owed on the property. ¶¶ 76-77.

- On May 11, 1993, the plaintiff submits his fourth plan for proposed subsurface sewage and disposal system. ¶¶ 81-82. The BOH rejects that plan. ¶ 83. The BOH requests at that time that an impermeable barrier of certain dimensional specifications be installed to prevent sewage from leeching out from the side. ¶ 84. The plaintiff claims this request was contrary to the law. ¶¶ 84-85.

- On June 30, 1993, the plaintiff submits a fifth plan to the BOH which includes the requested impermeable barrier. ¶¶ 90-91. On July 7, 1993, the plaintiff files a notice of intent with the Conservation Commission for proposed construction

---

[1] In ¶63 of the complaint, the plaintiff states that three years after the activities in June, 1987 the plaintiff learned from a member of the Holland Conservation Commission, Helen Kreiger, who is a named defendant, that the Chief of Police, the building inspector and members of the Board of Health conspired against him in 1987 for the purpose of preventing him from buying his property by refusing to approve the sewage disposal system. This statement demonstrates that in at least 1990 the plaintiff was on notice of what he asserts were conspiratorial acts on the part of certain defendants.

work on the sewage disposal system. ¶ 92. The plaintiff claims several irregularities with respect to the Holland Conservation Commission's ("HCC") behavior including failure to issue a receipt acknowledging the filing of the Notice of Intent ("NOI") and holding the public hearing open longer than the period of time it should have been held open. ¶¶ 93-97. HCC issues the order of conditions on December 15, 1993 allegedly in excess of the time frame in which they are provided by statute. ¶¶ 98-115.

- On September 15, 1993, plaintiff claims the BOH failed to make a decision within the 45 days on a submitted plan and that his fifth plan for a for a subsurface sewage disposal system had become constructively approved. ¶¶ 102-103. On December 15, 1993, the HCC issued the order of condition for proposed construction work denying the installation of the subsurface sewage disposal system. ¶¶ 114-115. The plaintiff claims that Humphrey Sutton, then Chairman of the HCC knew that the plaintiff would leave the country in October to spend the winter in Switzerland and therefore waited to mail the order of conditions until after the plaintiff had left the country knowing that the plaintiff had only 10 days to appeal. ¶ 119. In February, 1994, a sixth plan for subsurface sewage disposal system is provided. ¶¶ 125-128. The HCC refused to review the sixth plan until an explanation of why a tight tank had been installed originally and what had changed to allow the installation of a subsurface sewage disposal system and leeching field. ¶ 132. The HCC also wanted documentation from the BOH or the DEP concerning the existing tight tank and indicated that a variance from DEP was necessary concerning a breakout distance before they would render a final opinion. ¶¶ 132-133. On June 27, 1994, a letter from the BOH issues

368670

stating the Town's sanitarian has determined plans submitted on February 16, 1994 comply with Title V. ¶ 147. BOH informs the plaintiff that if the DEP approves his plan, the BOH would also approve the subsurface sewage disposal system. ¶ 149. Plaintiff alleges this is contrary to law.

- On November 15, 1994, plaintiff submits his seventh plan for the sewage disposal system. ¶ 178.

- On February 14, 1995, the DEP approves the plaintiff's subsurface sewage disposal system. ¶ 187. On April 4, 1995, BOH signs off and approves the plaintiff's plan. ¶ 188. Plaintiff claims that he had always had a constitutionally protected property interest in the approval of this subsurface sewage disposal system and that a variety of procedural irregularities had taken place from 1987 to 1995 based upon discriminatory animus. ¶¶ 188-205.

- On October 14, 1995, Humphrey Sutton visits plaintiff's property and complains that a utility trench was not part of plaintiff's NOI which plaintiff alleges is false. ¶ 206.

- On October 17, 1995, Richard Blease, the Electrical Inspector inspects the utility trench and finds the trench conforms but that power lines cannot be buried under water. ¶¶ 208-210.

- On October 18, 1995, plaintiff removes conduit for power lines, but fills trench and leaves for Switzerland. ¶ 214.

- On October 18, 1995, HCC sends letter stating that certain work done by plaintiff was in violation of certain Town bylaws and posts a cease and desist order on the plaintiff's remodeling project. ¶¶ 215-216.

- In November, 1995, plaintiff files for an application for a special permit to the Zoning Board to add a balcony to the south side of his house. ¶ 217. In December, 1995, Benjamin Haller, Chairman of the ZBA, denies the application. ¶ 219. The plaintiff alleges the wrong statute was applied. ¶ 219. In December, 1995, ZBA sends a written denial to the plaintiff on his petition to construct the balcony. ¶ 222. The plaintiff files a lawsuit in January, 1996 against the ZBA in Superior Court Civil Action No. HDCV1996-71. ¶ 223. Attorney Vincent McCaughey (hereinafter "McCaughey"), a named defendant in this matter, answers on behalf of the ZBA. ¶ 225. In July, 1996, plaintiff seeks professional help to cope with the extreme mental and emotional distress due to his ongoing lawsuit against the ZBA and what is characterized as the ongoing harassment and discrimination by the HCC, the electrical inspector and the ongoing conspiracy of town officials. ¶¶ 232-235. On September 2, 1996, the plaintiff filed a petition for a special permit to build a two story garage. ¶¶ 237-238. BOH members question the need for plumbing and ask the distance between the foundation of the garage and the leechfield. ¶ 240. On September 3, 1996, plaintiff files a NOI for the garage, foundation for a propane gas tank, a trench through the lake bed for underground service, steps in front of the house, shed and the two story garage, a retaining wall and to pave driveway with cobblestones. ¶ 242. On September 24, 1996 at the public hearing, Humphrey Sutton is alleged to raise capricious and arbitrary issues including but not limited to the failure to notify the abutters pursuant to the law of the proposed building. ¶ 247. HCC determined that proper permits were not in place and that a public hearing would not be continued because of that. ¶ 249. On October 1, 1996 plaintiff attends a hearing on his

petition for a special permit for the two story garage which is granted. ¶¶ 258-259.

- Plaintiff alleges that he was unable to get an electrical permit despite his having mailed the check to the electrical inspector. On November 26, 1996, the HCC accepts the plaintiff's NOI in its entirety. ¶ 248.[2] Plaintiff claims Humphrey Sutton unlawfully issued orders of condition. ¶¶ 287-288.

- On June 4, 1997, after plaintiff retained counsel, the HCC issued an amended order of conditions allowing the installation of power lines in the lake bed and foundation work for the propane tank with the caveat that all proper permits and inspections must be done. ¶ 313. On June 24, 1997, the Court, per Ford, J., granted the plaintiff summary judgment in his zoning board matter and ordered that it be remanded for further consideration under M.G.L. c. 40A, § 56. ¶ 315. On September 9, 1997, after a public hearing, the ZBA on the second petition for the balcony approved special permit to build same. ¶ 319. On September 8, 1998, the building inspector issues the building permit for the proposed two story garage. ¶ 321. On July 20, 1999, plaintiff attends meeting with the BOH and submits his eighth set of plans for a septic plan which would add the connection of the proposed two story garage. ¶¶ 322-323. Again, plaintiff maintains procedural irregularities in the Board considering his new plans including the fact that the Board sent a faxed letter to the engineer stating that the revised plans were unclear but never notified the plaintiff. ¶ 324. On November 15, 1999, the plaintiff sent an altered set of plans which are the ninth set of plans. 339. The

---

[2] Humphrey Sutton who is named several times in this complaint apparently traveled to Europe in May, 1997 and suffered a severe asthma attack and died.

368670

Board does not act in the time frame which the plaintiff claims were required. ¶¶ 330-332. The plaintiff claims that Sally Blais, Chairman of the Board of the BOH on March 21, 2000 made the following claims that were untrue: ¶¶ 335-338.

- Claims she had asked for an as-built plan back in 1996. Plaintiff states that such document was mailed and/or provided to the BOH repeatedly.

- Claims nobody ever inspected the installed system in 1995 before trenches were backfilled. Plaintiff states that there is clear evidence that it had been inspected by the member of the board of BOH Maria Scott.

- Claims that because she had only joined the board in 1996 she erred when she allowed plaintiff to connect his garage to the septic system.. Between February, 2000 and June, 2000, extensive disagreements between town officials regarding what papers were filed and when, what was allowed and what was not with respect to hooking up the two story garage to the septic system ensued. ¶¶ 338-361. On October 31, 2000, the BOH issued a certificate of compliance which the plaintiff characterizes as faulty. ¶ 362.

- On April 15, 2002, the plaintiff signs a contract to sell a lot on his property. ¶ 374. Members of the planning board led by defendant, Earl Johnson, indicated to the plaintiff that he would not be able to subdivide his parcel because he owned an adjoining non-conforming lot and that that lot would have to have 200 feet of frontage. ¶ 378. The plaintiff claims that certain case law introduced by the Planning Board in support of their position was a deliberate discriminatory act, ¶ 390, and claims further that during a deposition of defendant, Deborah Benveniste ("Benveniste"), that she had never read the case on which she was relying. ¶ 396. On June 24, 2002, Benveniste wrote a letter denying the plaintiff's first ANR

plan. ¶ 410. Plaintiff claims that the Planning Board imposed conditions not authorized by statute including the position that a private way which is located on his parcel does not need to provide any frontage to a newly created lot. ¶¶ 418-421.

- The plaintiff claims that in a deposition, Earl Johnson ("Johnson") committed perjury by testifying in front of his counsel, McCaughey, that the Board mailed the plaintiff a copy of its decision. ¶ 424. He claims that Benveniste indicated in a letter that the Board did not mail notification to the plaintiff on its decision of the first ANR plan but only on the second ANR plan. ¶ 425.

- He alleges that McCaughey, knew or should have known that the first ANR plan was in compliance with all laws and that the members of the Planning Board had no discretion in deciding the application. ¶ 426. He further alleges that McCaughey, in furtherance of an ongoing conspiracy did nothing to prevent the commission of the wrongs. ¶ 427. On October 17, 2002, the plaintiff filed a written notice with the Town Clerk on the submission of a second subdivision plan. ¶¶ 432-440. Plaintiff claims that the board took no action and that his plan became constructively endorsed. Plaintiff claims that after he informed the board that he would be suing them for failure to take a final action that the board members fraudulently falsified an official record by crossing out the words "will deny" and adding the words "voted to deny" by hand. ¶¶ 443-448. The allegation again is that McCaughey knew or should have known that the second ANR was in compliance with all applicable laws, etc. ¶ 450. In November, 2002, the plaintiff filed a petition for mandamus in the Hampden County Superior Court, Civil Action No. DCV2002-1996. ¶ 452.

368670

- Plaintiff claims that on the day he drove to Springfield to file his complaint he was stopped by a Holland police officer, who was acting in concert with Police Chief Kevin Gleason ("Gleason") in furtherance of an ongoing conspiracy. ¶ 452. Plaintiff claims that he was not exceeding the speed limit but he was nevertheless chased by the police officer and issued a ticket. ¶ 452. Plaintiff claims this act was an act of intimidation of a witness, conspiracy to obstruct justice and retaliatory discrimination for exercising his First Amendment rights. ¶ 453.

- On November 21, 2002, Benveniste mailed the plaintiff a letter and notice of decision one day after the plaintiff served his summons and complaint to the Planning Board. ¶ 455.

- In the deposition of Earl Johnson who was represented by McCaughey, plaintiff claims Johnson committed perjury, again having to do with the fact that the planning board had sent a letter to the plaintiff denying his first ANR plan. ¶ 469.

- On January 23, 2003, plaintiff asks Gleason about the status of a break in on his property in June, 2002. ¶ 472. Plaintiff claims that Gleason deliberately failed to forward certain papers and to file them with the Juvenile Court. ¶ 474.

- Plaintiff claims that in March, 2003, he was followed by a Holland police cruiser across the state line into Connecticut. Plaintiff claims that the cruiser blinded the plaintiff with his search light but no one got out of the car or asked him any questions and they drove off without any further action. ¶ 476. Plaintiff claims this was an attempt to intimidate him. In March, 2003, Gleason explained to the plaintiff that he did file the papers in Juvenile Court in Springfield and that he would re-file them in the event they could not find a copy. ¶ 477. According to the plaintiff, there was no indication to confirm that Gleason had ever filed the

368670

- papers regarding the break in with the Court as he had stated or that the two juveniles were charged. ¶ 478.

- The plaintiff accuses McCaughey of stating false facts with respect to the filing of the second ANR. ¶ 482. Plaintiff claims that in September, 2003 during a deposition of Benveniste, McCaughey interfered in an attempt to intimidate him from deposing Benveniste. ¶¶ 487-489.

- Plaintiff claims that under oath at her deposition, Benveniste testified falsely by stating that the members of the Planning Board voted on the first ANR plan during the regular meeting of July 2, 2002 when in fact they did not take a vote at that meeting. ¶¶ 493-496. Plaintiff alleges that Benveniste was represented by McCaughey. ¶ 497. The plaintiff alleges further that Benveniste lied when she indicated the plaintiff had been provided with written notification of the vote and that the plaintiff was present during the taking of the vote. ¶ 500. Plaintiff alleges that McCaughey deliberately misstated facts in a Joint Pre-Trial Memorandum with respect to DCV2002-1196. ¶¶ 502-505.

## II. STANDARD OF REVIEW

The standard of review for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See *Collier v. City of Chicopee,* 158 F.3d 601, 602 (1st Cir. 1998), *cited by, Moghaddam v. Dunkin' Donuts, Inc.,* 295 F. Supp. 2d 136, 138 (D. Mass. 2003). In considering a motion to dismiss, a Court must take well-pled factual allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff. See *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). The Court, however, need not credit "bald assertions, unsupportable conclusions, and opprobrious epithets." See *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir. 1987).

## III. ARGUMENT

A.  **As to the Conspiracy to Interfere with Due Justice.**

The defendants are unaware of any cognizable claim for conspiracy to interfere with "due justice." (See Complaint, Count 59, ¶¶ 804-819). To the extent this Count purports to be an conspiracy to violate the equal protection amendment of the Constitution, that claim is plead in Counts 11, 22, 31, 41, 50 and 56 and is redundant. Inasmuch as this complaint alleges constitutional violations against government actors, the Thirteenth Amendment is not implicated. See *Griffin v. Breckenriridge,* 403 U.S. 88 (1971); *Abbott v. Moore Bus. Forms, Inc.*, 439 F. Supp. 643, 649-650 (D. N.H. 1977), *citing Rice v. New England College,* 676 F.2d 9, 28 (1st Cir. 1982). Finally, if the plaintiff's intention is to articulate a claim for conspiracy to violate his First Amendment rights, he has failed to adequately do so or to sufficiently allege facts to support same. To the extent this Count alleges a conspiracy to violate some other cognizable constitutional right heretofore recognized by this Circuit, the plaintiff has failed to so articulate and the Count should be dismissed for failure to do so. The defendants, for the reasons articulated herein, ask this Court to ender judgment in the defendants' favor as to Count 59.

B.  **As to Statute of Limitations.**

1.  **Section 1983.**

Claims under § 1983 are subject to a three year statute of limitations. See *Johnson v. Rodriguez,* 943. F.2d 104, 107 (1st Cir. 1991). A § 1983 action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See *Calero-Colon v. Betancourt-Lebron,* 68 F.3d 1, 3 (1st Cir. 1995). "The knowledge required is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." *Tedeschi v. Reardon,* 5 F. Supp. 2d 40, 44 (D. Mass. 1998), *quoting, Pagliuca v. Boston,* 35 Mass. App. Ct. 820, 824 (1994). Therefore, the key question to be answered is at

368670

what point did the plaintiff reliably know or have reason to know of the injury which he claims in this action. See *Tedeschi v. Reardon,* 5 F. Supp. 2d at 44.

In ¶ 63 of the complaint, the plaintiff admits that three years after the activities in June, 1987, he learned from Helen Kreiger, a named defendant, that the Chief of Police, the Building Inspector and members of the Board of Health conspired against him in 1987 for the purpose of preventing him from buying his property by refusing to approve the sewage disposal system. Additionally, the plaintiff alleges that starting in July, 1996 he sought professional help to cope with "extreme mental and emotional distress due to … the ongoing harassment and discrimination of the electrical inspector and the ongoing conspiracy." See Complaint, ¶ 232. Despite the fact that the plaintiff has made these allegations in his complaint he nevertheless states that he is not subject to the statute of limitations because of the doctrine of "continuing violation."

The continuing violation doctrine had its beginnings in decisions interpreting Title VII of the Civil Rights Act and had been invoked in cases where a pattern or policy of <u>employment</u> discrimination is taking place but where there is not one single act of discrimination that is "sufficient to trigger the running of the limitations period." See *Velazquez v. Chardon,* 736 F.2d 831, 833 (1st Cir. 1984). The First Circuit has not yet decided to what extent, if any, the continuing violation doctrine should be invoked outside of the Title VII context. See *Batiste v. City of Boston,* 23 F.3d 394 (1st Cir. 1994) (*per curium*). At least one Circuit has stated that the continuing violation theory "is a creature of the need to file administrative charges, and because [the relevant] claim does not require filing such charges before judicial action may be brought, the continuing violation theory is simply not applicable." See *Rueb v. Morales, et al.,* 91 Fed. Appx. 95, 99 (10th Cir. 2004); *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1514 (10th Cir. 1997). The defendants ask this Court to find that the continuing violation theory simply is not applicable

368670

to the § 1983 claims and that the standard used to determine when a § 1983 action accrues is adequate for the analysis of these allegations. The defendants are unaware of any cases in this Circuit wherein the continuing violation theory has been applied in anything other than employment cases. See *Muniz Cabrera v. Ruiz,* 23 F.3d 607, 610-611 (1st Cir. 1994) and cases cited therein.

In the event this Court is not persuaded by the Tenth Circuit's position and, assuming, *arguendo,* that the continuing violation theory is applicable in a non-Title VII context, the facts as alleged in this complaint still require the 1983 claims to be dismissed as a matter of law. Continuing violations have been defined by this Circuit as either serial or systemic. See *Pilgrim v. Trustees of Tufts College,* 118 F.3d 864, 869 (1st Cir. 1997). As alleged, the plaintiff's claims fall into neither category. First, a systemic violation emanates from a discriminatory policy or practice and as long as the policy or practice itself continues into the limitations period, a plaintiff can be deemed to have filed a timely complaint. See *Sabree v. United BHD of Carpenters & Joiners, Local No. 33,* 921 F.2d 396, 400-402 (1st Cir. 1990). While this kind of claim does not require a specific act of discrimination to fall within the limitations period, see *Muniz-Cabrero v. Ruiz,* 23 F.3d 607, 610 (1st Cir. 1995), there must be an allegation of discrimination as part of the general practices or policies such as hiring, promotion, training and compensation. See e.g., *Mack v. Great Atl. & Pac. Tea, Co.,* 871 F.2d 179, 183 (1st Cir. 1989); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 348 (10th Cir. 1975). Clearly, the plaintiff has not alleged a systemic violation inasmuch as all the allegations in the complaint revolve around the defendants' discriminatory behavior towards the plaintiff and do not allege any policy or practice by the defendants that result in discrimination against others similarly situated. See *Provencher v. CVS Pharmacy,* 145 F.3d 5, 14 (1st Cir. 1998).

The second form of continuing violation, serial violation, occurs "where a chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims." *Id.* This theory of the continuing violation doctrine recognizes that in its early stages, certain discriminatory behavior may not be identifiable as such. *Id.* Therefore, the serial violation component of the continuing violation doctrine allows there to be a "anchor" violation once the discriminatory animus has been identified. *Id.* However, even where a plaintiff alleges a violation within the statute of limitations, the continuing violation claim will still fail "if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." *Id.,* citations omitted. The plaintiff advances absolutely no reason whatsoever for failing to take action against the Town for more than 10 years after the "conspiracy" was first brought to his attention and more than 6 years after he first was treated for alleged extreme mental and emotional distress. This Circuit has rejected attempts similar to the plaintiff's to invoke the continuing violation doctrine where, as here, it was clear that the plaintiff had been on notice of the violation. See *Sabree v. United BHD of Carpenters & Joiniers, Local No. 33, supra,* at 400-402; see also, *Jensen v. Frank,* 912 F.2d 517, 522 (1st Cir. 1990). By applying this standard, this Circuit has supported the "rationale of the continuing violation doctrine" which is "to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred." See *Provencher, supra,* at 15, (citations omitted).

For the aforementioned reasons, the defendants ask this Court to reject the continuing violation theory as applicable to the plaintiff's § 1983 claims, or in the alternative, to rule that even under the continuing violation theory, the plaintiff has failed to successfully articulate either a systemic or serial violation.

368670

**2.   Section 1985.**

In *Nieves v. McSweeney,* 241 F.3d 46, 50 (1st Cir. 2001), the Court examined the statute of limitations with respect to both §§ 1983 and 1985 claims where a continuing conspiracy to violate civil rights was alleged.[3] In examining these claims, the First Circuit found that as long as the plaintiff knows or should have known of the injury, the statute of limitations begins to run <u>separately</u> from the occurrence of each civil rights violation. *Id.* at 51. The *Nieves* court noted:

> This court determined more than two decades ago that, in the context of a continuing conspiracy to violate civil rights, the statute of limitations runs separately from the occurrence of each civil rights violation that causes actual damage to the plaintiff (as long as the plaintiff knows or should have known of the injury). *Hernandez Jimenez v. Calero Toledo*, 576 F.2d 402, 404 (1st Cir. 1978). In so holding, we explicitly repudiated the notion, loudly bruited by the appellants in this case, that the statute of limitations for civil conspiracy should run from the date of the last overt act that causes damage to the plaintiff. We stated:
>
> We recognize that some courts have spoken of the "last overt act" of a civil rights conspiracy as the time from which the statute begins to run, but do not believe those courts meant to depart from the traditional rule in civil conspiracies that the mere fact of a conspiracy does not toll the statute of limitations with respect to earlier clear-cut violations of rights that have not been concealed from the plaintiff.
>
> *Id.* at 404 n.1 (citation omitted). As the appellants do not suggest that the violations that transpired in the course of this alleged conspiracy (such as the excessive use of force and the false arrest) were concealed from them, *Hernandez Jimenez* controls. See *United States v. Wogan,* 938 F.2d 1446, 1449 (1st Cir. 1991) (holding that in a multi-panel circuit, prior panel decisions generally are binding upon newly-constituted panels).

Here, the plaintiff does not allege that the violations in the course of the conspiracy were concealed from him. To the contrary, the plaintiff admits that he was well aware of the purported conspiracy against him as early 1990 and was on notice thereafter with respect to all of

---

[3] It should be noted that the *Nieves* court, while examining the statute of limitations issue for both §§ 1983 and 1985 claims stated that "inasmuch as the critical issues … whether the appellant sued in a timeous fashion and whether they were deprived of a federally-protected right - are common to both sets of claims [§§ 1983 and 1985], it would serve no useful purpose to discuss the § 1985(3) claims separately. Those counts can stand only if, and to the same extent, that Counts I and II [§ 1983] can stand." See *Nieves v. McSweeney, supra,* at 50.

368670

the additional alleged constitutional violations at the time of the alleged commission thereof. Thus, the defendants submit that regardless of which theory of continuing violation this Court applies, at minimum, the conspiracies which are alleged to have occurred prior to April 6, 2001, the date of the filing of plaintiff's original Complaint, are time barred.

### 3. Intentional Infliction of Emotional Distress.

The statute of limitations for tort claims in Massachusetts is three years. See M.G.L. c. 260, § 2A. The plaintiff has alleged that he sought treatment for the emotional distress he endured because of the ongoing conspiracy as early as 1996. Therefore, he is time barred from bringing his claim for intentional infliction of emotional distress, at least for all claims that occurred prior to April 6, 2001.

### 4. Intentional Interference with Contract.

To the extent that the plaintiff has alleged intentional interference against any of the defendants for acts that occurred prior to April 6, 2001, such claims as well should be barred for failing to be brought within the statute of limitations. See M.G.L. c. 260, § 2A.

### 5. Massachusetts Civil Rights Act.

The statute of limitations for claims brought under the Massachusetts Civil Rights Act is three years. See M.G.L. c. 260, § 5B. To the extent that any claim is brought for actions that took place prior to April 6, 2001, they must be dismissed as barred under the statute of limitations.

### 6. Individual Counts and Defendants Which Must be Dismissed Because of Statute of Limitations.

The plaintiff, in his complaint, refers to specific paragraphs and specific defendants in each count of his Complaint. See Complaint, ¶¶ 515-833. The defendants have summarized below the paragraphs referenced in each count and the timeframe in which the acts allegedly occurred. To the extent that any count alleges acts prior to April 6, 2001, the defendants ask this

368670

Court to dismiss those counts for failure to be pled within the three-year applicable statute of limitations. In addition, wherever possible, the defendants have also indicated below where individual defendants are not named for any acts that occurred on or after April 6, 2001.

- Counts 1 through 7 encompass ¶¶ 39-59 in the Complaint and the timeframe is generally in or around 1987. Each of those counts implicate the following defendants: The Holland Board of Health ("BOH"), defendant, Harold E. Congdon ("Congdon"), and defendant, Robert Dymon ("Dymon").

- Counts 8 through 10 encompass ¶¶ 52-58 in the Complaint and the general timeframe of 1987. The defendants implicated in these counts are Congdon, Dymon and BOH.

- Count 9 encompasses ¶¶ 37-74 and the general timeframe of 1987 through 1988. The defendants implicated in this count are Congdon, Dymon, and Ronald Benoit ("Benoit").

- Counts 12 through 15 encompass ¶¶ 61-74 and the general timeframe of 1987 through 1988 and implicate the defendants Congdon, Dymon and BOH.

- Counts 16 through 17 encompass ¶¶ 79-89 of the Complaint and the general timeframe of 1993. The defendants implicated in these allegations are Dora Metrelis ("Metrelis") and BOH.

- Counts 18 through 19 encompass ¶¶ 90-113 and the general timeframe of 1993 and also implicate Metrelis and BOH.

- Counts 20 through 21 encompass ¶¶ 92-122 and the general timeframe of 1993. Metrelis and BOH are implicated as the defendants.

- Counts 22 encompasses ¶¶ 80-122 and the general timeframe of 1993. The defendants implicated in this count are Metrelis, BOH, William Hardy ("Hardy"), Harold Kreiger ("Kreiger") and the Holland Conservation Commission ("HCC").

368670

- Counts 23 encompasses ¶¶ 125-148 and the general timeframe of 1994. Only the BOH is implicated as a defendant.

- Count 24 encompasses ¶¶ 129-197 and the general timeframe of 1994 through 1995. The defendants implicated in these paragraphs are Hardy and the HCC.

- Count 25 encompasses ¶¶ 125-148 and the general timeframe of 1994. The defendant implicated in these allegations is the BOH.

- Count 26 encompasses ¶¶ 129-197 and the general timeframe of 1994 though 1995. The defendants implicated in these paragraphs are Hardy and the HCC.

- Counts 27 through 28 encompass ¶¶ 160-175 and the general timeframe of 1994. The defendants implicated in these paragraphs are the BOH and John Stevens ("Stevens").

- Counts 29 through 30 encompass ¶¶ 176-205 and the general timeframe of 1994 through 1995. The defendant implicated in these paragraphs is the BOH.

- Count 31 encompasses ¶¶ 123-372 and the general timeframe of 1993 though April 3, 2001. The defendants implicated in these paragraphs are the BOH, the HCC and Hardy. The defendants note that because there is such a large time span involved in these paragraphs, there are different members of the BOH and HCC implicated but not individually referenced.

- Count 32 does not break out specific paragraphs to which it is referring but rather encompasses ¶¶ 1 through 677. There are also no specific defendants named in this Count. However, the general timeframe appears to be 1994 through November 20, 2002. See ¶ 682. To the extent that any of the discrete acts referred to in ¶ 682 occurred on or before April 6, 2001, the Court should dismiss those claims as falling outside the statute of limitations.

368670