UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.04-30070MAP

Peter K. Frei,            )
Plaintiff,                )
                          )
v.                        )
                          )
TOWN OF HOLLAND, et al,   )
Defendant(s)              )

**PLAINTIFF'S OPPOSITION WITH MEMORANDUM TO DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS**

**TABLE OF CONTENTS:**

I.  INTRODUCTION AND SUMMARY OF THE ALLEGATIONS....................2

    A.  The determining question of "PROPERTY INTEREST"..........5

II. STANDARD OF REVIEW...........................................8

III. PLAINTIFF'S OPPOSITION TO DEFENDANTS' ARGUMENT..............9

    A.  As to the Conspiracy to Interfere with Due Justice.......9

    B.  As to Statute of Limitations............................12

        1.  Section 1983........................................12

        2.  Section 1985........................................20

        3.  Intentional Infliction of Emotional Distress........21

        4.  Intentional Interference with Contract..............22

        5.  Massachusetts Civil Rights Act......................22

        6.  As to individual counts and defendants which
            the defendants are seeking to dismiss
            because of statute of limitations...................22

        7.  Counts alleged within the statute
            of limitations......................................23


## CONSTITUTIONAL CLAIMS

C. As to the Substantive Allegations of Each Claim.........25

   1. Due Process Claims under s.1983....................25

   1.(a) Substantive Due Process Claims....................29

   1.(b) Procedural Due Process Claims.....................31

   2. Equal Protection Claim.............................32

   3. As to the Fourth Amendment.........................34

   4. As to Conspiracy Claims Under s.1985...............35

D. As to Qualified Immunity...............................37

## STATE LAW CLAIMS

E. As to Violation of Massachusetts Civil Rights Act.......42

F. As to Intentional Infliction of Emotional Distress......45

G. Intentional Interference with Contract..................47

H. As to Defendant, Town of Holland.......................50

I. As to McCaughey.......................................53

J. As to Defendant, Gleason..............................56

K. As to Defendant, Joanne May...........................59

L. As to Defendant, Marilyn LaPlante.....................59

IV. CONCLUSION................................................60

---

## I. INTRODUCTION AND SUMMARY OF THE ALLEGATIONS

Plaintiff opposes strongly (emphasis added) defendants' attempt to prejudice plaintiff by re-writing plaintiff's factual statement and by combining counts, skillfully and selectively omitting incriminating facts, under the pretence of "the Court's convenience" and to give plaintiff's complaint "some context." See also Fed.R.Civ.P. 10(b).

Here is just one example of defendants' inaccurate account, second paragraph, page 12 of defendants' MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS, (Benveniste is the chairman of the Planning Board of Holland (PBH):

"Plaintiff claims that under oath at her deposition, Benveniste testified falsely by stating that the members of the Planning Board voted on the first ANR plan during the regular meeting of July 2, 2002, when in fact they did not take a vote at that meeting. §§ 493-496."

Plaintiff's complaint states the following facts under paragraph 493:

"October 16, 2003: During a deposition of Debra Benveniste, chairman of the PBH, Debra Benveniste under oath swore that she would testify truly, did willfully testify falsely to a material matter which she did not believe to be true, to wit: the defendant testified that the members of the PBH voted on plaintiff's 1st ANR plan during the regular meeting of July 2, 2002, when in fact, the members of the PBH did not take a vote during that meeting, (final action)."

And under paragraph 494:

"To utter Debra Benveniste's perjury, plaintiff handed her document 'written notice of decision,' which the PBH is mandated to mail the applicant, (plaintiff). Plaintiff then asked Debra Benveniste to identify the document. Debra Benveniste identified the document, testified that she wrote the document, and that she signed the document."

And in paragraph 495:

"This document 'written notice of decision' is dated June 24, 2002, handwritten and signed by Debra Benveniste one week prior to the alleged vote that was allegedly taken during the meeting of July 2, 2002. This document is also time stamped by the town clerk on June 24, 2002."

And in paragraph 496:

"Debra Benveniste, defendant, in truth and in fact, then and there well knew that the members of the PBH did not take a vote on plaintiff's 1st ANR plan during the meeting on July 2, 2002, (final action), and that Debra Benveniste was swearing falsely in violation of M.G.L., c.268,s.1 and M.G.L., c.265,s.37."

The facts as written in plaintiff's complaint give testimony of a preordained unconstitutional decision by an official public agency with policing power and of the fabrication of evidence by perjured

testimony. Further, there was not even a decision made, as the PBH failed to take a vote. Furthermore, the PBH had no discretion in deciding whether to endorse plaintiff's 1st ANR application or not. Plaintiff had an absolute entitlement to the endorsement of his 1st ANR.

Under these circumstances defendants' had no other choice then to make a judicial admission by admitting in their answer that Debra Benveniste gave false testimony under oath, and therefore admitted plaintiff's allegations in part, see § 493 of defendants' answer. Defendants' contest only that Benveniste gave the false testimony willfully.

The evidence plaintiff will present to this court in regards to allegations of perjured testimony, falsifying evidence (§ 448) and publishing false reports (§ 449) would justify to have Debra Benveniste, Earl Johnson and maybe other members of the PBH to answer to an indictment in front of a federal grand jury. The evidence plaintiff will present would meet the standard "beyond reasonable doubt" for a conspiracy against rights, 18 U.S.C. s.241. The dilatory tactics by the defendants will ensure that this will never happen. The statute of limitation will eventually protect the defendants from criminal prosecution.

Paragraph 497, is not only a statement to the fact that Benveniste was represented by McCaughey as defendants' counsel states, plaintiff's statement asserts a time and place in connection to the allegations asserted under paragraphs 493-496, to meet the necessary pleading standard required pursuant to rule 9(f) of the Fed.R.Civ.P.

Plaintiff respectfully asks this honorable Court to ignore

defendants' inappropriate offering under the heading "INTRODUCTION AND SUMMARY OF THE ALLEGATIONS" of defendants' motion for judgement on the pleadings, as such offerings are just a desperate and inappropriate attempt to prejudice plaintiff for lack of a valid defense and to convince this court to enter unjustified judgement on the pleadings in defendants' favor.

### A. The determining question of "PROPERTY INTEREST"

The determining question whether this suit is just another dispute between a municipality and a disgruntled landowner, where the landowner puts constitutional labels such as "due process" or "equal protection" on (in his opinion) unjust arbitrary decisions by the town officials, is, whether plaintiff has a constitutionally protected "property interest" in the permits or applications he submitted and which the defendants denied or failed to approve or endorse.

The merits of defendants' arguments (except argument as to statute of limitations), depend on this cardinal question, the question whether plaintiff had a "property interest" in the approval or endorsement of his numerous applications for permits and ANR divisions.

The question whether plaintiff had a "property interest" is the decisive factor relative to his constitutional claims, state law claims or the question relative to "qualified immunity."

For instance, most of the alleged violations will only raise to a substantial federal question actionable under s.1983 if the plaintiff has an absolute entitlement in the approval or endorsement of the permit or application sought.

This legitimate claim of absolute entitlement or "property

interest" for an approval or endorsement of an application or permit is created by an independent source such as state law.

The Supreme Court opined:

"[T]he hallmark of "property" under Fourteenth Amendment's due process clause is individual entitlement grounded in state law which cannot be removed except for cause; once that characteristic is found, the types of interest protected as "property" are varied and, as often as not, intangible, relating to the whole domain of social and economic fact. U.S.C.A. Const. Amend. 14." Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148 (1982).

Defendants err as they exclusively cite cases in their motion concerning subdivisions, special permits, variances and the like, cases involving issues where a plaintiff does not possess the "property interest" grounded in state law, and the deciding authority therefore had ample discretion in making their decision, see G.L., C.40A,s.9, Special permits.

Defendants state on page 25, quote:

"and [plaintiff] has availed himself of the judicial system... in order to determine if he would be permitted to develop a subdivision on his land based on the plans before the Holland Planning Board."

Defendants err as they fail to recognize the fundamental difference between a Subdivision and an Approval Not Required (ANR) division of a tract of land.

Plaintiff was never seeking to get approval for a subdivision. Plaintiff submitted to the PBH two applications for two different ANR divisions of a tract of land. The endorsement of such an ANR is a ministerial act for which plaintiff has an absolute entitlement or "property interest" grounded in state law, if his ANR is in compliance with the statutory requirements. The same applies to plaintiff's application for a septic system in conformance with 310 CMR 15.000 (Title 5) and his various other applications.

An ANR application does not need approval and endorsement is

mandatory under G.L., c.41,s.81P if the plan meets the statutory requirements.

The Hamilton court put it in plain language:

"[E]ndorsement of "approval not required" for plan of land is **ministerial act** that constitutes attestation of compliance neither with zoning requirements nor subdivision conditions", see <u>Hamilton v. Planning Bd. of Beverly</u>, 35 Mass.App.Ct. 386, 620 N.E.2d 44 (1993).

See also erroneous argument by defendants, 3.par. page 26 and footnote 4.

In contrast, there is no property interest in a subdivision:

"[I]n any event, no 'property' interest is involved in the approval of a subdivision plan. Cote v. Seaman, 625 F.2d 1, 2 (1st Cir.1980). Rosenfeld v. Board of Health of Chilmark, supra 27 Mass.App.Ct. at 627, 541 N.E.2d 375. The existence of such an interest is 'a necessary prerequisite to a fourteenth amendment due process claim.' Cote v. Seaman, supra at 2." <u>Hovnanian at Taunton, Inc. v. City of Taunton</u>, 37 Mass.App.Ct. 639, 642 N.E.2d 1044, 1050 (1994).

"The more discretion granted a governmental body in licensing, the less likely it is that citizens have a property interest in obtaining a license. See O'Neill v. Nantucket, 545 F.Supp. 449, 453 (D.Mass.1982), aff'd, 711 F.2d 469 (1st Cir.1983)." <u>Roslindale Motor Sales, Inc. v. Police Commr. of Boston</u>, 405 Mass. 79, (1989).

All of plaintiff's applications and permits, such as his two ANR applications, application for a percolation test, initial application for a septic system, application to connect his garage, application for an electrical permit, his different Notices of Intent applications, were all in compliance with all statutes and by-laws and provided therefore the legitimate entitlement or "property interest" created by state law.

Defendants consistently and stubbornly ignore the fact that all of plaintiff's claims concern applications or permits for which plaintiff had an absolute entitlement or "property interest", whether they were submitted to the Board of Health (BOH), Holland

Conservation Commission (HCC), PBH or Electrical Inspector. Defendants' cited cases are fundamentally different as they all involve discretionary decisions where plaintiffs do not possess an absolute entitlement grounded in state law.

This absolute entitlement or "property interest" is needed in order to meet the threshold to raise a federal question.

## II. AS TO STANDARD OF REVIEW

The defendants in large measure appear to misapprehend the nature of a Rule 12(c) motion. Plaintiff's version of the facts and circumstances underlying the claims asserted in his complaint are governed by different statutes than the claims in the cases cited by the defendants in their argument and quite simply do not subject those claims to dismissal.

Even if plaintiff would have submitted a subdivision plan (which he did not), plaintiff would still have a right to his day in court, the Roslindale court found:

The U.S. Supreme Court in Conley v. Gibson more than forty years ago provided the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [non-moving party] can prove no set of facts in support of [his] claim that would entitle [him] to relief." Conley v. Gibson, 355 U.S. 41, 45-6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also Gorski v. N.H. Dept. of Corrections, 290 F.3d 466, 473 (1 Cir., 2002).

"The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." Wright & Miller 5C Fed. Prac. & Proc. Civ.3d § 1367.

Plaintiff pleaded specific allegations more than sufficient to

raise genuine issues of material facts to all counts, and defendants err with their theories of law as they ignore the facts.

Elements of claims the defendants allege to be missing in certain counts are in fact pleaded and pointed out by plaintiff (except where explicitly admitted).

The Geupel court found:

"[A] motion for judgment on the pleadings should be granted only when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law." Geupel v. Benson, 704 F.Supp. 312 (D.C.Mass.1989).

### III. PLAINTIFF'S OPPOSITION TO DEFENDANTS' ARGUMENT

#### A. As to the Conspiracy to Interfere with Due Justice

Defendants err with all their contentions relative to COUNT LIX (count 59, page 89).

Plaintiff labeled count 59 "Conspiracy to interfere with due justice" to distinguish count 59 from the other conspiracy claims as this claim is pleaded under part two of s.1985(2), which applies to conspiracies to obstruct the course of justice in state courts. Count 59 is also pleaded as conspiracy to deny equal protection.

Part two of s.1985(2) provides:

"or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;"

S.1985 does not in itself confer any rights, s.1985 is just a provision enacted by Congress under which violation of constitutional rights are actionable.

To plea a count under part two s.1985(2) plaintiff needs to plea the following elements and did so in referenced paragraphs of plaintiff's complaint:

(1) must allege that defendants did conspire, see § 807 and for specific allegations see §§ 805, 806;

(2) for the purpose to impede, hinder, obstruct, or defeat the due course of justice in any state or district, see §§ 807, 810;

(3a) did intend to deny the equal protection of the laws, see §§ 808, 810;

(3b) or injure plaintiff or his property for lawfully enforcing, or attempting to enforce the equal protection of the laws, see § 808;

(4) of any person, or class of person, see § 596.

Count 59 is also correctly pleaded to allege a conspiracy under s.1985(3). To make his argument, plaintiff will use case cited by the defendants, Griffin v. Breckenridge, 403 U.S. 88 (1971), which provides a test for a proper pleaded count under s.1983(3):

"[T]o come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790 (1971).

Plaintiff pleaded the required elements in the following manner:

(1) must allege that defendants did conspire, same as under part two s.1985(2);

(2) for the purpose of depriving, see § 808, either directly or indirectly, any person or class of person of the equal protection of the laws, see § 810, (claim that plaintiff belongs to protected class, same as under part two s.1985(2));

(3) did, or caused to be done, 'any act in furtherance of the object of the conspiracy,' see §§ 450, 452, 599;

(4a) whereby another was 'injured in his person or property,' see §§ 808, 815;

(4b) or 'deprived of having and exercising any right or privilege of a citizen of the United States,' see § 598.

**Count 59 is not redundant as defendants claim as this count contains specific material factual allegations <u>not</u> <u>included</u> in any other counts.**

Defendants err, the Thirteenth Amendment is implicated. The Thirteenth Amendment has been identified as one of the constitutional sources of congressional power to enact s.1985. To invoke the jurisdiction of the Federal Court under the language of s.1985, plaintiff is required to allege that there was class based, invidiously discriminatory animus behind conspirators actions. The Griffin court found:

> "[N]ot only may Congress impose such liability, but the varieties of private conduct that it may make criminally punishable or civilly remediable extend far beyond the actual imposition of slavery or involuntary servitude. By the Thirteenth Amendment, we committed ourselves as a Nation to the proposition that the former slaves and their descendants should be forever free. To keep that promise, 'Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation.' Jones v. Alfred H. Mayer Co., supra, at 440, 88 S.Ct., at 2203." <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 91 S.Ct. 1790 (1971).

Defendants err, plaintiff pleaded and alleged in count 59 all that is needed to implicate the Thirteenth Amendment and to state a claim upon which relief can be granted.

Defendants also contend that plaintiff did not articulate a claim for conspiracy to violate his First Amendment rights because

he allegedly failed to adequately do so or to sufficiently allege facts to support same.

Plaintiff pleaded specific facts to allege violations of his First Amendment rights in the following paragraphs of his complaint: 446-454; 409, 472, 474-480; 681; 805, 806, 806 (and many more).

Count 59 is valid and sufficiently pleaded and must be protected; dismissing the count would be prejudicial to plaintiff.

Even if plaintiff's complaint would be insufficient, Federal Practice does favor allowance to cure the defects by amendment and plaintiff intends to amend his (pre-answer) amended complaint.

Furthermore, pro se pleadings are viewed with considerable liberality and are held to less stringent standards than those expected of pleadings drafted by lawyers:

"[A]llegations of pro se complaint are held to less stringentstandards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

"[S]ince Simmons is proceeding pro se, we have a special obligation to read his complaint indulgently." <u>Simmons v. Dickhaut</u>, 804 F.2d 182 (1st Cir. 1986), citing Haines v. Kerner, 404 U.S. 519 (1972).

Plaintiff literally read hundreds of opinions and learned from mistakes made by other litigants. Plaintiff excluded any allegations that ultimately would not hold up or would not be sufficient to raise a federal question. All the permits and other applications subject to this lawsuit were requests for which approval or endorsement plaintiff had a constitutionally protected "property interest" whose entitlement emanates from state law.

B.   <u>As to Statute of Limitations</u>

1.   <u>Section 1983</u>

Defendants' theory (each time a plaintiff has knowledge or is informed of a violation, the statute of limitation begins anew)

would eliminate the continuing violation doctrine altogether if correct.

That the statute of limitation only begins running once a plaintiff is informed or has knowledge of a violation is governed by the "accrual rule" and is only relevant in determining if at least one violation is within the statute of limitation period.

The 3rd Cir. found:

"[7] Associates contends the taking of its property amounts to a 'continuing wrong,' which effectively tolls the statute of limitations. We have held that under proper circumstances, the "continuing wrong" doctrine may apply: In most federal causes of action, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.... Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). The focus is on the defendant's "affirmative [ ] act[s]." Id. at 1296." 287 Corporate Center Associates v. Township of Bridgewater, 101 F.3d 320 (3rd Cir. 1996).

Plaintiff agrees with the defendants, statute of limitations on s.1983 action is three years.

Defendants' cite Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995). In this opinion the continuing violation doctrine is not subject of a controversy and not mentioned at all.

Defendants misread Tedeschi v. Reardon, 5 F.Supp.2d 40 (D. Mass. 1998).

In the Tedeschi Court, the key question was not "at what point the plaintiff reliably [knew] or [had] reason to know of the injury," the key question was whether defendant's violations emanated from the _same_ discriminatory animus.

They did _not_ and Tedeschi failed for that reason. The Tedeschi Court
gives the following definition:

"[T]here are two varieties of continuing violations: serial and systemic. Serial violations are 'composed of a number of

Page 13 of 61 Pages

discriminatory acts emanating from the same discriminatory animus, each act constituting a separate [actionable] wrong.' ... Systemic violations, on the other hand, 'need not involve an identifiable discrete act of discrimination transpiring within the limitation period.' Rather what must be shown is that plaintiff has been harmed by the application of a discriminatory policy or practice and that such policy continues into the limitations period. Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994) (citing Jensen v. Frank, 912 F.2d 517, 522-523 (1st Cir. 1990))". Tedeschi v. Reardon, 5 F.Supp.2d 40 (D. Mass. 1998).

The Tedeschi court refused to invoke the doctrine as the violations did stem from separate discriminatory animuses:

"[T]edeschi alleges serial violations stemming from two separate discriminatory animuses. The first arose in 1989, when Tedeschi refused Reardon's order to 'shake down' inmates; the second in 1991, when Reardon became displeased with Tedeschi because of his political work for Leach. Reardon's indignation intensified in 1992 when Tedeschi actively supported Leach in his campaign against Reardon. After Reardon defeated Leach, he informed Tedeschi that he would not be reappointed as a deputy sheriff. A jury could reasonably find that a politically motivated animus incited Reardon to launch a campaign of harassment of sufficient duration to bring Tedeschi's retaliation claim within the statute of limitations.
[2] The same cannot be said of Reardon's refusal in 1989 to appoint Tedeschi as Director of the EMP, allegedly in retaliation for his refusal to 'shake down' inmates. Discrimination for reasons of political animus and retaliation for a refusal to participate in an extortionate scheme are sufficiently distinct to permit a finding as a matter of law that the one cannot be folded into the other to create a seamless s.1983 violation. This component of Tedeschi's s.1983 claim is therefore barred by the statute of limitations." Tedeschi v. Reardon, 5 F.Supp.2d 40 (D. Mass. 1998).

In plaintiff's case both varieties of continuing violations defined in Tedeschi are applicable:

"Serial violations are 'composed of a number of discriminatory acts emanating from the same discriminatory animus',".

The consistent same discriminatory animus by the defendants emanates from plaintiff's different national origin (Swiss). This consistent discriminatory animus was and still is so broad that it constitutes a policy, practice or pattern.

Plaintiff alleged the forgoing fact almost verbatim in the first paragraph on page 2 of his complaint.

The second variety, the systemic violations, is applicable in

Page 14 of 61 Pages

plaintiff's case as well. In the 5th paragraph on page 2 of his complaint, plaintiff claims the following:

"This continuous trespass by some of the town officials and former town officials, listed as defendant(s) in this action, constitutes a continued act or a continued series of acts, or a pattern of acts of same nature." (See also §§ 596, 810).

Defendants' acts had a singular objective, see plaintiff's complaint, 2nd paragraph on page 2:

"These ongoing violations of plaintiff's rights, granted under the United States Constitution, United States Code, Declaration of Rights of the Constitution of the Commonwealth of Massachusetts, Massachusetts General Law, Law of Equity and Common Law, by the town and some of its officials and former officials, consistently relates to plaintiff's effort to develop and enjoy his property, and also to sell part of his property."

Defendants' err, on page 14 the defendants state the following:

"The continuing violation doctrine had its beginnings in decisions interpreting Title VII of the Civil Rights Act and had been invoked in cases where a pattern or policy of employment discrimination is taking place but where there is not one single act of discrimination that is 'sufficient to trigger the running of the limitations period'. See Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984)."

The contrary is true; the defendants have misread the case. In the Velazquez court the "continuing violation doctrine" could **not** be invoked for the very reason defendants assert is necessary to invoke the doctrine:

"[T]hree employees who had supervisory positions in Puerto Rico Department of Education who alleged that they were demoted to teaching positions in 1977 following an election as result of political discrimination failed to allege facts which would enable a jury to conclude that they suffered from political discrimination in the year before they filed suit on a continuing-violation theory and therefore were unable to escape bar of statute of limitations." Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984)."

Puerto Rico has a statute of limitations for s.1983 actions of 1 year and not 3 years. Furthermore, the Velazquez court found:

"[I]f the discrimination alleged is a single act, the statute begins to run at the time of the act. If, on the other hand, the statutory violation does not occur at a single moment but in a

series of separate acts and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation and only those violations preceding the filing of the complaint by the full limitations period are foreclosed." Velazquez v. Chardon, 736 F.2d 831 (1st DCA) (1984).

And also:

"[A] party who wishes to show that he has been victim of a continuing violation must demonstrate that not only the injury, but the discrimination, is in fact ongoing." Velazquez v. Chardon, 736 F.2d 831, 833 (1st Cir. 1984).

Clearly, plaintiff does not claim to be discriminated against in a single act, plaintiff alleged with particularity actions that "constitute[s] a continued act or a continued series of acts, or a pattern of acts of same nature," see 5th paragraph on page 2 of his complaint.

Misrepresenting the authority of Velazquez in the way defendants do is irresponsible as it cannot conceivably be taken to stand for the proposition for which the decision is cited.

The court in the following case held that a monetary sanction could be imposed upon a party to an action for quoting language from the dissent of a case as though it were the holding; see Sobol v. Capital Management Consultants, Inc., 726 P.2d 335, 63 A.L.R.4th 1193 (1986, Nev.); see also 63 A.L.R.4th 1199 § 3.

Citing Batiste v. City of Boston, 23 F.3d 394 (1st Cir. 1994), defendants also fail to recognize:

While a continued "ill effect" does not toll the timely filing requirement, the continued discrimination itself does if continued into the statute of limitation period.

The Batiste court recognized:

"[I]t has been specifically held that, where an individual alleges to have been wrongfully incarcerated because of false arrest or some other tortuous activity, such incarceration constitutes a continuing ill effect from the earlier misconduct rather than a continuing tort in and of itself." Batiste v. City of Boston, 23 F.3d 394 (1st Cir.

1994).

Defendants then go on, quote: "The continuing violation theory is simply not applicable," and ask this court to follow their false argument.

So far defendants cited 5 cases; Johnson and Calero-Colon have nothing to do with a continuing violation (question was application of the "accrual rule"); and the rest, Tedeschi, Velazquez and Batiste, were misread by the defendants.

The Tedeschi, Velazquez and Batiste opinon correctly analyzed, mandate the application of the continuing violation doctrine in plaintiffs' case.

As the systemic and serial violations by the defendants stemming from the same discriminatory animus never ended and multiple violations occurred within the statute of limitations, the clock was still ticking when plaintiff filed his complaint.

Here is another opinion of the 1st Cir. which supports plaintiffs position:

"[I]n other words, if both discrimination and injury are ongoing, the limitations clock does not begin to tick until the invidious conduct ends." Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179 (1st. Cir. 1989).

On page 15, defendants claim to be "unaware of any cases in this Circuit wherein the continuing violation theory has been applied in anything other than employment cases." Defendants err again; here is just one such case, there are others:

The 1st Cir. has held in US v. Harrison that the question whether a pattern or practice exists which would toll the timely filing requirements is a factual determination made by the finder of fact:

"[I]n determining the tolling period for a Fair Housing Act offense,

courts have adopted a 'continuing violation' theory. Even if an unlawful pattern and practice commenced more than five years before the filing of the complaint, it is timely if such practice continues into the limitations period. Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

a. Standard for Pattern and Practice Allegations

[4] [5] The question of whether a pattern or practice exists is a factual determination made by the finder of fact. In order to demonstrate that an individual pattern and practice of discrimination violated the Fair Housing Act, the government must prove that it was a 'regular (although not necessarily uniform) practice of the defendant to act with discriminatory intent ... [and] the court must view the evidence as a whole.' U.S. v. Yonkers Board of Educ., 624 F.Supp. 1276, 1293-94 (S.D.N.Y.1985), aff'd 837 F.2d 1181 (2d Cir.1987), cert denied 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988)." US v. Harrison 188 F.Supp.2d 77 (1st Cir. 2002).

To enter judgement on the pleadings on any counts protected by the continuing violation doctrine would therefore be premature.

The defendants contend that "there must be an allegation of discrimination as part of the general practices or policies such as hiring, promotion, training and compensation." Further:

"Clearly, the plaintiff has not alleged a systemic violation inasmuch as all the allegations in the complaint revolve around the defendants' discriminatory behavior towards the plaintiff and do not allege any policy or practice by the defendants that result in discrimination against others similarly situated."

Defendants ignore the fact that the discrimination based on plaintiff's national origin by the town officials named as defendants constitutes in itself a policy, practice, or custom.

Plaintiff is not in an employer/employee relationship with the town of Holland; plaintiff is a resident of the Town of Holland. As such, plaintiff is in a similar "dependence" in which the town of Holland through its municipal boards and agents exerts authority and power over plaintiff. Plaintiff is dependent on officers of the town to issue permits that the law requires in certain situations for which plaintiff is entitled to if he possesses a property interest.

Plaintiff further has the right to enjoy the freedom to travel freely on the federal, state and town highways and the right to be treated like other residents in similar situations and be free of any discrimination. On the other hand, plaintiff has duties, such as paying property taxes.

Restatement (second) of Torts, § 46, comment (e) provides:

"The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."

Plaintiff asserts that his complaint will stand any test and is providing adequate specific facts and allegations for "systemic violations" and "serial violations" emanating out of the same discriminatory animus based on plaintiff's national origin by the defendants towards plaintiff.

Plaintiff's case is unique in many regards. Defendants failed to cite any authority that would preclude plaintiff from invoking the continuing violation doctrine or support defendants' argument in the case here at bar.

If the continuing violation doctrine would not exist, it would have to be introduced for cases like this one.

Not invoking the "continuing violation" doctrine would be unjust and prejudicial to plaintiff.

Statute of limitations are designed to keep stale claims out of court, the Muniz-Cabrero court found:

"[S]ystemic continuing violation of s.1983 need not involve identifiable discrete act of discrimination within limitations period, but rather requires showing that plaintiff has been harmed by application of discriminatory policy or practice and that such policy continues into limitations period. 42 U.S.C.A. s.1983. It is not enough to show that plaintiff is merely feeling the effects of some earlier discriminatory action.  In other words, there is a 'critical distinction between a continuing act and a singular act that brings continuing consequences in its roiled wake.' Johnson,

943 F.2d at 108 (internal citations omitted); see also Mack, 871 F.2d at 182 * * * Systemic violations, on the other hand, 'need not involve an identifiable discrete act of discrimination transpiring within the limitation period.' Jensen, 912 F.2d at 523. Rather what must be shown is that plaintiff has been harmed by the application of a discriminatory policy or practice and that such policy continues into the limitations period. * * * Statute of limitations are designed to keep stale claims out of court." Muniz-Cabrero v. Ruiz, 23 F.3d 607 (1st Cir. 1994).

The Reed court found that a civil rights complaint should not be read narrowly to foreclose continuing violation approach, see Reed v. Lockheed Aircraft Corp., 613 F.2d at 759, (9th Cir. 1908).

The cutoff date in regards to the statute of limitation is not April 6, 2001, as defendants claim, it is April 2, 2001.

Plaintiff filed his complaint on Monday April 5, 2004, in Boston and the complaint was then forwarded to Springfield and docketed in Springfield with the wrong date. Plaintiff will file a separate motion to request correction of the docket entry.

Defendants' violations actionable under s.s. 1983, 1985 therefore are only outside the statute of limitation if they occurred before April 3, 2001.

2. **Section 1985**

Defendants misread the cases cited under this subtitle in the same way they misread the cases under the previous subtitle, application of the continuing violation doctrine for claims actionable under s.1983.

Is it possible for conspirators to conspire against a person the conspirators don't even know exists?

Certainly not.

Defendants' counsel cited Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001). In this case, the plaintiff invoked the continuing violation doctrine and alleged a conspiracy by the police.