The police (defendants) did not know the person (plaintiff) they arrested, and this according to plaintiff's own admission. It was therefore impossible that the arrest could have been <u>part</u> of an alleged conspiracy and therefore had to be barred by the statute of limitation.

"[W]here, under plaintiffs' own theory of the case, alleged malicious prosecution conspiracy did not antedate the arrest of plaintiffs, but, rather, arose afterwards, sparked by the officers' perceived need to cover up their unwarranted brutality, there was no single, unified conspiracy encompassing excessive use of force, false arrest, and malicious prosecution, and thus the three-year Massachusetts statute of limitations applicable to s.1983 actions ran from each civil rights violation identified in the complaint. 42 U.S.C.A. s.s.1983, 1985(3); M.G.L.A. c. 260, s.2A." <u>Nieves v. McSweeney</u>, 241 F.3d 46, 50 (1st Cir. 2001).

Defendants misread the Nieves court, Nieves presents dissimilar wrongs resting on a different factual basis and therefore lacks persuasive authority.

The Nieves court actually is consistent with the notion that plaintiff is entitled to invoke the continuing violation doctrine, as all acts are part of the same discriminatory policy of some of the town officials, due to plaintiff's different national origin.

Defendants' in their footnote 3 on page 17 claim that the same rules apply invoking the continuing violation doctrine to claims under s.1983 and s.1985 and cite Nieves v. McSweeny, 241 F.3d 46 (1st Cir. 2001).

Plaintiff agrees and therefore refers to his argument under the previous subtitle, chapter III(B)(1) Section 1983.

Defendants err, the continuing violation doctrine is applicable to s.1985 claims in the same way the doctrine is applicable to claims actionable under s.1983.

3.   <u>Intentional Infliction of Emotional Distress</u>

Defendants err for the reasons outlined under chapter III(B)(1)

Section 1983.

The continuing violation doctrine tolls the running of the statute of limitations for claims of intentional or reckless infliction of extreme emotional distress that occurred before April 3, 2001, as they are a result of the defendants' serial and systemic violation of plaintiff's rights granted under state and federal law or under the constitution of the state of Massachusetts or the United States.

Plaintiff was also in treatment for emotional distress as recently as October 11, October 25, November 8, November 22, and December 20, of 2002, April 3, and July 29, 2004.

### 4. Intentional Interference with Contract

Defendants err, for the reasons outlined under chapter III(B)(1) Section 1983.

The continuing violation doctrine applies to claims of intentional interference with contractual relations relative to acts committed before April 3, 2001.

### 5. Massachusetts Civil Rights Act

Defendants err, for the reasons outlined under chapter III(B)(1) Section 1983, the continuing violation doctrine applies to claims for violations of the Massachusetts Civil Rights Act which occurred before April 3, 2001.

### 6. As to Individual counts and defendants which the defendants are seeking to dismiss because of statute of limitations

Defendants err, all the counts are admissible and protected under the equitable exception to the timely filing requirement.

Furthermore, counts 43 through 45 are within the statute of limitations as April 3, 2001, falls within that period as outlined

under paragraph III(B)(1).

Actors active within the statute of limitation that the defendants claim to fall outside the statute of limitations are therefore members of the BOH, and Brian Roche (Roche).

Roche is a cousin of Johnson, chairman of the board of selectmen, and also a member of the PBH. Beside being a former member of the HCC, Roche was member of the PBH at relevant times (2002). Roche thereafter joined the ZBA.

Defendants err, the following defendants were named in plaintiff's complaint as active within the statute of limitation:

Town of Holland and BOH in count 45, see § 372; Holland Police Department (HPD) in count 59; PBH, Benveniste, and Blais in count 45; Ford and Gleason in count 59; Johnson and LaPlante in count 57; May in count 57; McCaughey and Roche in count 57.

Defendants not named individually but as "other members of the PBH or HCC" in the different counts are named in their individual and official capacity as defendants in the following paragraphs: Laplante in § 20; May in § 21; and Roche in § 25.

7. <u>Counts alleged within the statute of limitations</u>

Defendants err with their assertions.

For instance, on page 22, in the second paragraph under subtitle III(B)(7), defendants' state that counts 47 through 49 would not implicate any specific defendants. Defendants err. In count 47, § 765, plaintiff states: "..With their actions and/or inactions, as described under paragraph 761, defendant(s) deprived..." Then, under § 761, plaintiff states: "Debra Benveniste, chairman PBH, Earl Johnson, <u>and other members of the planning board,</u> and, Robert Ford, town clerk, failed to endorse..."

COUNT LI (51), defendants err with their contentions. Count 51 includes § 773 in which plaintiff stated:

"Debra Benveniste, chairman PBH, Earl Johnson <u>and</u> <u>other</u> <u>members</u> <u>of</u> <u>the</u> <u>PBH,</u> and Robert Ford, town clerk, intentionally and purposeful committed the acts described under paragraph 761, 762, and 763."

Specific facts implicating defendants are therefore to be found in §§ 761, 761 and 763.

Paragraphs 681 thorough 692 include elements needed to "state a claim upon which relief can be granted."

COUNT LII (52), defendants err; town of Holland, PBH and all its members, Ford and McCaughey are implicated, see § 779.

COUNT LIII (53), defendants err; town of Holland, PBH and all its members, Ford and McCaughey are implicated, see § 782 which points to § 779.

COUNT LIV (54), defendants err; town of Holland, PBH and all its members, Ford and McCaughey are implicated, see § 786 which points to § 678 (this paragraph has not been updated by the plaintiff and refers to § 678 of plaintiff's original complaint and not to plaintiff's amended complaint; it should read "§ 779", the same paragraph as in the previous two and following three counts.

COUNT LV (55), defendants err; town of Holland, PBH and all its members, Ford and McCaughey are implicated, see § 789 which points to §§ 779, 785.

COUNT LVI (56), defendants err; town of Holland, PBH and all its members, Ford, Gleason, McCaughey and "possibly other town officials" are implicated, see § 796 which points also to §§ 779, 785, 802.

COUNT LVII (57), defendants err; town of Holland, PBH and all its members, Ford, and McCaughey are implicated, see § 799 which

points also to §§ 779, 785.

COUNT LVIII (58), defendants err; town of Holland, HPD, Gleason, and other members of the HPD and "possibly other town officials" are implicated, see § 796 which points also to §§ 779, 785, 802.

COUNT LIX (59), defendants err; town of Holland, PBH and all its members, Ford, HPD, Gleason and other members of the HPD, McCaughey and "possibly other town officials" are implicated, see §§ 805, 806.

## CONSTITUTIONAL CLAIMS

C. **As to the Substantive Allegations of Each Claim**

Plaintiff offers the following opposition to defendants' arguments:

1. **Due Process Claims under s.1983**

Defendants' argument is fundamentally wrong as it is based on the false theory that plaintiff for instance was seeking approval of a subdivision instead of an ANR division.

Defendants fail to recognize the difference between the two different kinds of applications, see plaintiff's argument under subtitle I(A), (page 5), on the question of "property interest."

Defendants exclusively cite cases in which the issuing authority has ample discretion whether to issue the sought permit, license, etc. or not.

In Creative Environment Inc. the subject was a subdivision that needs to be approved under G.L., c.41,s.81U; in Agins it was a regulatory taking based on public interest; Carolina Costal Council was a regulatory taking ruling in favor of plaintiff; Chiplin was about a building permit that was delayed for five years and

plaintiff failed to state a federal claim upon which relief could be granted and did not prevail for that reason; in Amsten surveyor lost license for lack of supervising employee; in Cordeco Development Corp. a sand extraction permit was withheld in the public's interest; in Yerardi's Moody Street Restaurant & Lounge, Inc. authorities denied transfer of liquor license; in Village of Willowbrook a regulatory taking took place based on public interest.

Even if the subject of this suit was a subdivision as it is in defendants' cited case of the Creative Environment Inc., it would implicate the Constitution due to the alleged fundamental procedural irregularities and the underlying discriminatory animus of the involved town officials, the Creative Environment Inc. court found:

> "[W]e note, however, that where allegations of more extraordinary, egregious behavior by public officials are present, one court has found that abstention may not always be appropriate. Heritage Farms, Inc. v. Solebury Township, 671 F.2d 743 (3d Cir. 1982). See generally Note, Land Use Regulation, the Federal Courts, and the Abstention Doctrine, 89 Yale L.J. 1134 (1980)." Creative Environment Inc. v. Eastbrook, 680 F.2d 822 (1st Cir. 1982).

Defendants cited the Yerardi's Moody Street Restaurant & Lounge, Inc., court and compared it with the case here at bar. The following citation makes it painfully clear that the plaintiff had absolutely no entitlement in the transfer of the liquor license:

> "[M]embers of a town's board of selectmen were entitled to qualified immunity from liability against an equal protection claim arising out of denial of liquor license transfer; even if members acted maliciously or with bad faith in denying license transfer, all applicants received consistent treatment. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. s.1983. Yerardi's Moody Street Restaurant & Lounge, Inc. v. Bd. of Selectmen Town of Randolph, 878 F.2d 16 (1989).

Defendants err with their contention that a claim for regulatory taking under the Fifth Amendment would be improper.

The Fifth Amendment guarantees that private property shall not be taken for public use, without just compensation: "nor be deprived

of life, liberty and property, without due process of law;"

Plaintiff alleges by pleading specific facts, that the defendants' <u>failed to apply the law</u> and furthermore failed to execute their ministerial duty out of discriminatory animus. Plaintiff also pleaded specific facts alleging deprivation of his right to due process. By their actions and inactions, defendants deprived plaintiff of his right to divide the parcel in question into three lots which would have advanced plaintiff economically $600,000.

Defendants claim that plaintiff "continues to [have] full ownership rights to the land in question."

The defendants err. By preventing plaintiff unlawfully and with malice from dividing his land, defendants extinguish a fundamental attribute of ownership, plaintiff's right to pursue reasonable investment expectations and sell his land for an adequate price; the parcel undivided is worth only a fraction of its value divided into three lots.

Even if a defendant can advance legitimate public interest and apply existing zoning law in good faith, a plaintiff would still have a "genuine issue" and this court could not allow any dispositive motion initiated by a defendant, the Agins court found:

"[A]pplication of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests or denies an owner economically viable use of his land, and the question necessarily requires a weighing of private and public interests. U.S.C.A.Const. Amends. 5, 14." <u>Agins v. City of Tiburon</u>, 447 U.S. 255 (1980). (This case is cited by the defendants on page 38).

Each of plaintiff's due process claims alleges violations of the Fifth and the Fourteenth Amendment, and includes all other elements necessary to plea such a claim.

Defendants' atrocities are so unique and outrageous that it is impossible to find case law that comes even close to the case here at bar.

Plaintiff tried to find cases where a septic system in compliance with 310 CMR 15.000 (Title 5) and local by-laws was the subject of an opinion plaintiff could use as binding precedent. For obvious reasons there are none! The same is true for applications for ANR divisions in compliance with applicable statutes and local by-laws. This is true for published opinions of the Mass. Court of Appeals and the DCA for the 1st District.

The trial defendants refer to took less then two hours, no testimony was taken, the defendants' by their own admission failed to send the required notification mandated pursuant to G.L., c.41,s.81P and therefore, plaintiff's 2nd ANR became constructively endorsed pursuant to the same section. There is no opinion by the Massachusetts Court of Appeals or Supreme Court to the point and it will be a question of first impression on appeal. Defendants err on several levels, (1) plaintiff has not "availed himself of the judicial system (for the second time)," the petition for an order in mandamus was the first legal action in connection with his division of the land in question; (2) plaintiff's only issue in state court was whether his 2nd ANR became constructively endorsed due to the defendants failure to take action and not if a regulatory taking took place; (3) plaintiff's application before the PBH was an application for an Approval Not Required division of a tract of land and _not_ a determination on a subdivision development; (4) the judgement is not final as plaintiff filed a motion for new trial and will file a notice of appeal in case his motion for new trial is

denied.

Even if the judgement was final, res judicata, collateral estoppel and Rooker-Feldman doctrine would not preclude any claims from going forward in plaintiff's federal case for numerous reasons: Plaintiff named only the PBH and the town of Holland as defendants in his state court action; not one individual was named either in his official or individual capacity; furthermore, the case was not adjudicated on its merits, the only issue litigated was whether plaintiff's 2nd ANR became constructively endorsed, and the suit in federal court was filed long before the trial in Superior Court took place; and plaintiff filed motion for voluntary dismissal of substantive due process and constructive taking of property count without prejudice and without conditions, which was allowed by Judge Velis.

It is not surprising that judges make mistakes as lawyers adhere more to their need to win cases than to the obligation they have as officers of the court administering the primary objective of the court, which is finding the truth and adjudicating cases on their merits. Great effort is spent in writing motions like this one, attempting to dilute the case instead of fleshing out the real issues, while wasting judicial resources, and frustrating Judges and plaintiffs with valid claims in the process. This seems to be true especially with an inexperienced pro se plaintiff.

### 1.(a) Substantive Due Process Claims

The 1st Cir. found:

"[T]he Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first theory, it is not required that the plaintiffs prove a violation of a specific liberty or property interest; however, the state's conduct must be such that it "shocks the conscience."    See Rochin, 342 U.S. at

172, 173, 72 S.Ct. at 209-10. To succeed under the second theory, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause." Pittsley v. Warish, 927 F.2d 3 (1st.Cir.1991).

Plaintiff alleges that the town clerk refused to accept plaintiff's 1st ANR, see §§ 397-400; that members of the PBH never voted on either one of plaintiff's two ANR applications and refused to endorse both ANR plans out of malice, see §§ 410 and 413-421; that they failed to notify plaintiff in writing, see §§ 422, 423 and 443; and later perjured themselves, see §§ 463-469 and 493-501; and that they falsified the public record to fabricate evidence needed to show a vote, see §§ 448 and 449.

The proceedings were a sham for the reasons outlined in plaintiff's complaint. The defendants were guided by discriminatory animus. The reasons the defendants advanced in the official record as reasons why plaintiff's application could not be endorsed were intentional, arbitrary and not keyed to legitimate public interest or legally tenable (and there is much more in plaintiff's complaint).

Plaintiff is aware that the legal conscience is not easily shocked but believes that these allegations, if true, would reach the threshold of "shocking to the conscience," required under the first theory of the Pittsley court (key elements are regularity of proceedings and animus, no absolute entitlement to interest is necessary under the first theory).

The second theory requires a violation of an identified liberty or "property interest:"

Plaintiff had a protected "property interest" in having his two separate applications for an ANR endorsed (and also for all his other applications), because they all met the legal requirements and

were not special permits or applications for variances in which approval town officials enjoy discretion, see plaintiff's argument under subtitle I(A), page 5, on the question of "property interest."

The 3rd Cir. found in De Blasio:

"[O]wnership is a property interest worthy of substantive due process protection. * * * Indeed, one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership. Thus, in the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached. Where the plaintiff so alleges, the plaintiff has, as a matter of law, impliedly established possession of a property interest worthy of substantive due process protection." Id. at 600-01. De Blasio v. Zoning Board of Adjustment, 53 F.3d 592 (3rd Cir. 1995).

Plaintiff's counts for violation of substantive due process are not defective in any way and allege sufficiently such violations.

### 1.(b) Procedural Due Process Claims

The DCA for the 1st. Cir. found:

"[B]asic purport of constitutional requirement of 'procedural due process' is that, before a significant deprivation of liberty or property takes place at the state's hands, affected individual must be forewarned and afforded an opportunity to be heard at meaningful time and in meaningful manner. U.S.C.A. Const. Amend. 14." Amsden v. Moran, 904 F.2d 748 (1st Cir. 1990).

The United States Supreme Court stated:

"[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest **without due process of law**. Parratt, 451 U.S., at 537, 101 S.Ct., at 1913; Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978) ('Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property')." Zinermon v. Burch, 494 U.S. at 125, 110 S.Ct. at 983, 108 L.Ed.2d at 114 (1990)

Page 31 of 61 Pages

Unconstitutional policies justify actions as well, including actions against a municipality, the 1st. Cir. found:

"[I]n order for cities to be liable in section 1983 action for actions of officials, constitutional wrong must be committed pursuant to official policy." 42 U.S.C.A. s.1983, see <u>Cloutier v. Town of Epping</u>, 714 F.2d 1184 (1st. Cir. 1983).

Plaintiff alleges an unconstitutional policy of not taking votes by the PBH, see §§ 373, 761 and 785, and also an unconstitutional policy (scheme) to discriminate against the class of people with a different national origin, see 1st, 5th and other paragraphs on page 2 of plaintiff's complaint.

Defendants clearly fail to recognize that State Law remedies only adequately remedy mishaps absent of unconstitutional policies, practices or patterns and committed by the actors in good faith. Furthermore, all that is required under the second theory in Pittsley is an identified liberty or "property interest," to raise a valid violation of constitutional proportions.

## 2. Equal Protection Claim

Defendants err again by asserting:

"The plaintiff states repeatedly that he was a victim of discriminatory animus based on his national origin but never alleges nor provides facts to support that he was treated differently from others similarly situated. He simply asserts in conclusory fashion that he was discriminated against but fails to set forth information about other applicants who were treated differently from him."

Here is an example of such an allegation pleaded with particularity in plaintiff's complaint which rebuts all the false assertions at once, see §§ 484, 485 and 486:

"August 21, 2003: Vincent McCaughey produces documents requested by plaintiff per discovery order. Plaintiff requested, among other documents, copies of all ANR plan applications submitted since May 1, 1997."

"All of the submitted ANR plans but plaintiff's ANR plan were accepted and endorsed by the PBH."

"One of the ANR plans was accepted despite the fact that it did not comply with the frontage requirements."

Plaintiff included the following language in each of his counts alleging violation of equal protection of the law, see § 524:

"Defendant(s) singled out plaintiff and treated him different than other persons in the same or similar situations, without respect to the statutory criteria, which the equal protection clause forbids."

Defendants further contend:

"The plaintiff states repeatedly that he was a victim of discriminatory animus based on his national origin (Swiss) but fails to set forth facts that support his conclusory allegations that his Swiss national origin was the motivating factor for any of the decision of the named defendants."

It suffices if plaintiff alleges that defendants acted with discriminatory animus in committing specific pleaded violations and then in a conclusory allegation pleads that the discriminatory animus was based on plaintiff's different national origin. Plaintiff therefore pleaded all that is needed to survive a motion under rule 12(c).

The burden of prove then shifts to the defendants to show that their decisions were lawful and rationally related to legitimate concerns of actors, government or public interest.

Plaintiff pleaded with particularity specific facts relative to defendants' violations to discriminate in the following paragraphs, (underlined paragraphs contain one of the terms discriminate, discriminated, discriminatory animus or discrimination): 37-<u>48</u>, 49-<u>54</u>, 55-<u>106</u>, 107-<u>136</u>, 137-<u>232</u>, 233-<u>335</u>, 336-<u>351</u>, 352-<u>388</u>, 389-<u>394</u>, 395-<u>396</u>, 397-<u>478</u>-514, 594-<u>599</u>, 645-<u>646</u>, 676-<u>678</u>, 743-<u>744</u>, 773-<u>774</u>, <u>779</u>, 805-<u>807</u>;

Plaintiff pleaded in a conclusory allegation that the discriminatory animus was based on plaintiff's different national origin in the following paragraphs: 595, 646, 678, 744, 774 and 797.

In the cited cases, defendants' counsel compares again apples to oranges and fails to see the fundamental difference between a disgruntled permit applicant who does not have any entitlement to a special permit or a variance, and, an applicant who has an entitlement or a "property interest" grounded in state law requesting a municipal board to execute a ministerial act.

Clearly, a "protected property" interest elevates a claim for denial of equal protection to the level of an incontestable allegation. See plaintiff's argument under subtitle I(A), page 5, on the question of "property interest."

### 3. As to the Fourth Amendment

Defendants' counsel is right with her assertion that there was no illegal search, plaintiff never alleged an "illegal search."

However, defendants err with their assertion that defendants did not violate plaintiffs rights under the Fourth Amendment.

The Fourth Amendment provides:

"The <u>right</u> of the people <u>to be secure in their</u> persons, <u>houses</u>, papers, and effects, <u>against unreasonable</u> searches and <u>seizures</u>, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

Plaintiff alleged a seizure of the dwelling, see § 52, which forced him to vacate the dwelling and sleep in his car and hotels.

BOH has policing power and exercising that power by posting an unlawful and unjustified notice to the effect that the "premises are not to be occupied for human habitation" is confiscatory and in violation of the Fourth Amendment.

Defendants misread Soldal, the Soldal court actually supports plaintiff's case.

In Soldal, the owner of a trailer park in the presence of sheriffs pulled the home of the Soldal's family, a trailer, illegally from its foundation of the rented lot two weeks prior to an eviction hearing. Soldal filed a complaint under s.1983 alleging an illegal seizure of his trailer in violation of the Fourth Amendment. The case ended up before the Supreme Court of the state of Ill., which found that plaintiff sufficiently alleged "seizure" and remanded.

The essence of the Supreme Court's finding in Soldal is:

"[I]n addition, we have emphasized that 'at the very core' of the Fourth Amendment "stands the right of a man to retreat into his own home." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961). See also Oliver v. United States, 466 U.S. 170, 178-179, 104 S.Ct. 1735, 1741-1742, 80 L.Ed.2d 214 (1984); Wyman v. James, 400 U.S. 309, 316, 91 S.Ct. 381, 385, 27 L.Ed.2d 408 (1971); Payton v. New York, 445 U.S. 573, 601, 100 S.Ct. 1371, 1387, 63 L.Ed.2d 639 (1980)." Soldal v. Cook County, Ill., 506 U.S. 56, 113 S.Ct. 538 (S.Ct. Ill. 1992).

Defendants err, plaintiff alleged that defendants' condemnation order interfered with plaintiff's possessory interest, see §§ 583, 586, 592.

Again defendants fail to advance any legally tenable reasons that would justify the entry of judgement on the pleadings on court 10.

### 4. As to Conspiracy Claims Under s.1985

Defendants err, plaintiff's conspiracy claims are all pleaded sufficiently, see argument under subtitle III(A), as to the Conspiracy to Interfere with Due Justice, page 9.

Defendants err with their assertion that plaintiff failed to support his allegations with particulars as to specific acts of individuals in furtherance of a conspiracy.

Plaintiff pleaded such particulars in the following paragraphs

of his complaint: 63, 396, 398, 422-427, 447-454, 466-468, 594-599, 603-607, 645-646, 676-678, 744, 774, 794 and <u>805-810</u>.

Defendants err also for another reason:

While a charge for conspiracy to defraud requires pleadings with particularity, a civil conspiracy claim does not, Fed.R.Civ.P., rule 9(b), see Hayduk v. Lanna, 775 F.2d 441, (1st Cir. 1985).

Defendants simply misread Slotnick v. Staviskey, 560 F.2d 31 (1st Cir. 1977), and therefore failed to cite authority applying the pleading standard of rule 9(b) in a civil conspiracy count.

Defendants err with their assertion that Blais, LaPlante, May, Quinn, Roche, and Stevens would not be named as conspirators: Blais is named in § 475 and § 676 by name; LaPlante, May and Roche as members of the PBH in §§ 396, 466, 773, 796 and 805; Stevens in § 676 by name, Stevens and Quinn as members of the BOH in § 645 and § 676.

Defendants err again with their assertion:

"The complaint fails entirely in stating how specific defendants named in the conspiracy either engaged in a deprivation of equal protection or communicated such a conspiracy to others named."

A conspiracy under s.1985(3) can be pleaded relative to a deprivation of equal protection under the law <u>and/or</u> deprivation of rights.

Plaintiff alleged specific facts that constitutes deprivation of his rights and equal protection under the law in furtherance of such conspiracy by the defendants in the following paragraphs in his factual statement of his complaint: 37-592; and also in all conspiracy counts, §§ 594, 595, 597, 645, 646, 676-678, 743-744, (§ 744 incorporating §§ 694, 701 and 708), 773-774, (§ 773 incorporating §§ 761, 762 and 763) and 796, (§ 796 incorporating §§

779, 785 and 802).

Plaintiff pleaded and alleged all deprivations actionable under s.1985, see §§ 597, 598 and 601 of plaintiff's complaint.

Plaintiff is of the opinion that it is not necessary to plea how conspirators communicate in order to state a claim upon which relief can be granted. It is obvious that defendants would not do so in plaintiff's presence.

Two kinds of civil conspiracies have been delineated in the decisions. See Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563- 1564 (1st Cir.1994).

If there is no tortuous nature in the underlying conduct, the element of coercion is required. See, e.g., Neustadt v. Employers' Liab. Assur. Corp., 303 Mass. 321, 325, 21 N.E.2d 538 (1939).

Plaintiff pleaded his conspiracy claims keyed to specific torts, the element of coercion is therefore not a requirement.

Defendants' counsel errs again with her assertion that, quote:
"There are no allegations that any defendant named in the conspiracy counts had knowledge of or power to prevent the purported conspiracy."

Plaintiff pleaded in COUNT XI (11) of his complaint the following, see § 603:

"Plaintiff informed defendant(s) of his rights and the consequences of their unlawful acts. Conspirators, (defendants), therefore had knowledge of the wrongs conspired to be done and would have had the power to prevent the commission of the wrongs but failed to do so."

Plaintiff incorporated § 603 by reference in all conspiracy counts.

Defendants failed to advance any reason that would justify to enter judgement on the pleadings on any conspiracy claims.

D.  **As to Qualified Immunity**

Plaintiff notes, that this court found plaintiff's complaint

sufficient as this court did not find it necessary to order a Rule 7 answer to defendants' "qualified immunity" defense (8th affirmative defense of defendants' answer).

Defendants are correct with their assertions that government officials are shielded from liability if their actions "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known" in the course of performing <u>discretionary</u> acts.

If government officials adhere to state law, they are not only immune from liability, they are immune from suit. They also don't violate constitutional rights.

In the case here at bar, the defendants did <u>not</u> perform discretionary acts and therefore were not "acting within the scope of [his] office or employment," and the defendants are therefore not entitled to immunity under G.L., c.258,s.2.

Plaintiff pleaded also intent and discriminatory animus.

Section 2 does not apply to "any claim arising out of an intentional tort." G.L., c.258,s.10(c).

Under G.L. a special granting authority has significant discretion in whether to issue a special permit. See, e.g., G.L. c.40A,s.9(1st par.)(Special permits <u>may</u> be issued for uses which are in harmony...").

Defendants err for the same reasons as they erred under all the preceding subtitles as the different town officials did <u>not</u> perform discretionary acts. See plaintiff's argument under subtitle I(A), page 5, on the question of "property interest."

The measure of "discretion" a board has in deciding a particular application is inversely proportional to the "qualified

immunity" town officials enjoy making the decision on a particular application.

The Supreme Court of Mass. found:

"[I]mmunity from civil damages in s.1983 action is available to official only where official was performing discretionary function. 42 U.S.C.A. s.1983." <u>Breault v. Chairman of Bd. of Fire Com'rs of Springfield</u>, 401 Mass. 26 (Supreme Ct. 1987).

The question then turns to the test whether officials violated state law that was clearly established at the time of the offence.

Plaintiff's position is that the state laws were clearly established at the time of the defendants violations:

It was clearly established law when the members of the BOH failed eight times to allow plaintiff to install a septic system (which was in compliance with all requirements), failed to issue permit for percolation test, failed to issue certificate of compliance, condemned dwelling without legal grounds, forced plaintiff to install a tight tank plaintiff did not need; when the HCC kept public hearings open for 262 days (instead of the 21 days allowed by law for the sole reason to delay plaintiff's development and to thwart his project), refused to hold a public hearing, claimed to need permits which allegedly were not in place (permits which did not need to be issued and other agencies were withholding), offered to issue an Order of Condition (OC) contingent on plaintiff withdrawing an adjudicatory appeal on a pending previous NOI, finally voted and approved all five proposed activities of a Notice of Intent (NOI), reopened the public hearing after five weeks again (without notifying the public and the plaintiff), then denied two of the proposed activities (which were previously approved by vote) without having the necessary quorum

present and finally signing the OC (which was typed by a "non-member" before the meeting) by two members and another individual not even a member of the HCC at that time, then waited to mail said OC 45 days later (instead of the 21 days required by statute) in order to ensure that plaintiff would not get it in time to appeal the order (as he announced to leave the country for some time); when the ZBA applied deliberately the wrong standard (G.L., c.40A,s.10 instead of s.6) to deny plaintiff's proposed balcony (action in Superior Court was adjudicated in plaintiff's favor, McCaughey was town's counsel); when Blease, wire inspector, after being overruled (dispute with plaintiff) by James Rogers, Executive Secretary, Board of State Examiners of Electricians, refused to issue permit, placed a phone call to plaintiff's electrician to intimidate the electrician (electrician refused thereafter to work for plaintiff) and later as plaintiff requested to have the electrical work approved resigned so plaintiff could not proceed with construction; when the PBH refused to endorse plaintiff's 1st ANR (which was in compliance with all requirements), suggested plaintiff should donate property if plaintiff would not want to pay taxes on the property any longer as the PBH would not endorse his ANR, never voted on plaintiff's 1st ANR, later testified under oath that the PBH took a vote during the meeting of July 2, 2002, in plaintiff's presence, then admitted in their answer to plaintiff's complaint in this action that the PBH did not take a vote (as it was obviously a lie because the letter of denial was written eight days prior to the alleged vote), defendants refused to send letter of denial, later under oath testified that they did send such document, again later admitted that they failed to send this document

Page 40 of 61 Pages