(notification requirement mandatory pursuant to G.L., c.41,s.81P), despite plaintiff's compliance with unjustified requests by the PBH refused to endorse a 2nd ANR, again without taking a vote and this time falsified the official record to fabricate evidence (showing the needed vote in the official record); when town clerk refused to accept plaintiff's 1st ANR because he "did not want to get involved," refused to issue receipt (as required according to the statute); when an officer of the HPD chased plaintiff down on his way to the Superior Court to file his complaint and issued frivolous speeding ticket (plaintiff announced the night before at the meeting with the PBH at the town hall that he would file his action the next day, the speeding ticket was later thrown out as "ridiculous" by the Magistrate), not forwarded plaintiff's complain after the arrest of two juveniles who burglarized two of the buildings on plaintiff's property, followed plaintiff with a marked cruiser into Connecticut to intimidate plaintiff; when McCaughey made false statements of fact and law during the proceedings in Superior Court, interfered with an ongoing deposition by claiming plaintiff would not have the right to ask leading questions while deposing hostile witnesses (members of the PBH), walked out of a deposition as he had another commitment, not correcting the record after it became apparent that members of the PBH made knowingly false statements under oath, etc.

All these allegations are pleaded with particularity in plaintiff's amended complaint and there is much more!

Plaintiff alleged in a conclusory fashion that violated laws where clearly established at the time of the offence in §§ 683, 81 an 825.

Defendants do not enjoy qualified immunity for the reasons

stated and defendants' motion must be denied.

"[I]f the court finds that a genuine issue of underlying fact does exist, it should postpone the qualified immunity determination until the facts have been developed at trial." <u>Act Up! Portland v. Bagley</u>, 988 F.2d 868 (9th Cir. DCA 1993).

## STATE LAW CLAIMS

### E.   As to Violation of Massachusetts Civil Rights Act

The defendant's argument is fundamentally wrong for the same

reason again. Defendants ignore plaintiff's constitutional rights

grounded in state law.

The Hovanian court found:

"[C]entral to proof of a violation of G.L. c. 12,s.11I,  is the existence of a right secured by 'the Constitution or laws of either the United States or of the Commonwealth.'   Bally v. Northeastern Univ., 403 Mass. 713, 717, 532 N.E.2d 49 (1989).     See also Rosenfeld v. Board of Health of Chilmark, 27 Mass.App.Ct. 621, 626, 541 N.E.2d 375 (1989)." <u>Hovnanian at Taunton, Inc. v. City of Taunton</u>, 37 Mass.App.Ct. 639, 642 N.E.2d 1044 (1994).

Defendants cite again a case in which a subdivision plan is the

subject of the suit and not an ANR division. Defendants fail to

recognize the difference by stating:

"The courts have consistently held that <u>actions</u> by municipal officials, <u>such</u> <u>as</u> <u>those</u> <u>alleged</u> <u>herein,</u> do not constitute such acts. See, e.g., Freeman v. Planning Bd. of West Boylston, 419 Mass. 548 555-556 (1995)."

Plaintiff submits that the court in Freeman decided for the

defendants, as the defendants had ample discretion in denying

Freeman's subdivision plan based on several factors and therefore it

was irrelevant if the planning board exceeded its authority "by

seeking a concession from the landowner."

Again, the fundamental difference is the question whether the

landowner had an absolute "property interest," see subtitle I(A);

The determining question of "PROPERTY INTEREST," (page 5).

The Freeman court, cited by the defendants, further provides:

"[T]o establish claim under state civil rights act, plaintiff must prove that: his exercise of enjoyment of rights secured by Constitution or laws of either United States or Commonwealth, have been interfered with, or attempted to be interfered with, and that interference or attempted interference was by threats, intimidation, or coercion. M.G.L.A. c. 12, s.11I." <u>Freeman v. Planning Bd. of West Boylston</u>, 419 Mass. 548, 646 N.E.2d 139 (1995).

Freeman failed the first prong of the test (enjoyment of rights), as his subdivision plan did not provide the required absolute entitlement based in state law.

As Freeman did not have that absolute entitlement based in state law, the defendants could not possibly have violated that law.

Defendants further argue:

"The defendants submit that the plaintiff can not point to a single case to support the allegation that acts, even assuming they occurred as alleged, rise to the level of threats, intimidation, or coercion."

Defendants are correct, plaintiff could not find a single case where a plaintiff with an absolute entitlement in the same or similar situation pleaded correctly a  violation of his Civil Rights under the Massachusetts Civil Rights Act and succeeded.

However, defendants were also unable to cite a case where a plaintiff did <u>not</u> succeed in such a situation either.

Clearly, it is a rare occasion to have defendants violating a plaintiff's civil rights under the Massachusetts Civil Rights Act (and other rights)  repeatedly in such a blatant and outrageous manner.

Plaintiff pro se assumes that the average lawyer is aware of the difference of an ANR division and a subdivision, a permit for a septic system in compliance with Title 5 and a request for a variance as an exemption from the requirements of Title 5, and therefore refrained from wasting judicial resources litigating such a case. Besides, the Appeals Court requires that an appellant raises

a question of law that would not be possible unless the lower court did not know the difference between a subdivision and an ANR division either, and that has not happened so far.

Even so a violation of federal or state law is one of the requirements to have a valid claim under c.12,s.11I, the violation has to take place by interference or attempted interference by threats, intimidation, or coercion. A direct denial of the right does not suffice.

If defendants would have refused to endorse plaintiff's two ANR applications by taking the required final action pursuant to c.41,s.81P, plaintiff would not have a valid claim under the Mass. civil rights statute, even if the motive would have been improper.

The Freeman court found:

"Coercion" is defined as "the use of physical or moral force to compel [another] to act or assent." Webster's New Third Int'l Dictionary 439 (1981)." Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 646 N.E.2d 139 (1995).

If this court finds it necessary that plaintiff points out the specific allegations in his complaint constituting "interference or attempted interference by threats, intimidation, or coercion," here is an example:

Relative to plaintiff's 1st ANR, members of the PBH raised arbitrary reasons why plaintiff's ANR would not qualify as an ANR, see §§ 378-380 and 382; selectman and member of the PBH Johnson suggested to the plaintiff to donate the property if he would not want to pay taxes any longer on the property, see § 381; plaintiff also alleged that the PBH's conduct was based on discriminatory animus, see § 388; board members of the PBH raised other arbitrary reasons to thwart plaintiff's project, see §§ 389-396; the town

clerk refused to accept the application as he did not want to get involved, see §§ 397-400; the members of the board instead of taking final action and refusing to endorse plaintiff's 1st ANR leave plaintiff in limbo, see §§ 413-415; and outline their arbitrary reasons in the official record, see §§ 422-425; town counsel McCaughey is informed and participates, see §§ 426 and 427. On his way to the court to file his complaint after he announced that he would do so the next day, a member of the police chases after plaintiff and issues an unjustified speeding ticket, see §§ 451-454.

There are many others plaintiff could point out but does not think it to be necessary.

The court in Reproductive Rights Network found:

"[S]tatutory definition of 'threats, intimidation or coercion' unlawful under Commonwealth's Civil Rights Act includes violations of rights that may not in themselves be overtly harmful or frightening.   M.G.L.A.   c.   12,   <section><section>   11H,   11I." Reproductive Rights Network v. President of the University of Massachusetts,   699 N.E.2d 829 (1998).

Defendants failed to cite just one case where the denial of a septic system in conformance with Title 5 or the refusal of an ANR endorsement in compliance with applicable state law in combination with a violation of the Mass. civil rights statute failed to rise to the level of threats, intimidation or coercion. This court therefore can not enter judgement on the pleadings in favor of defendants.

**F.    As to Intentional Infliction of Emotional Distress**

The defendants again fail to recognize that plaintiff's case differs from the cases misread and wrongfully cited by the defendants. The defendants' position is fundamentally wrong as the defendants fail to recognize the importance of whether plaintiff is vested with "property interest" or not, see heading I(A); The determining question of "PROPERTY INTEREST," (page 5).

Defendants err, the conduct of the defendants as alleged in plaintiff's complaint is extreme and outrageous. For the purpose of defendants' motion, the alleged conduct needs to be taken as true and resulting torts as established.

Where such a tort is established, recovery for emotional distress is an element of damages, and it is not necessary to meet the more restrictive requirements necessary to establish the independent tort of intentional or reckless infliction of emotional distress. See 38 Am Jurisprudence 2d, Fright, Shock, and Mental Disturbance s.s.29 et seq..

In the same way defendants fail to recognize the significance of the absolute entitlement plaintiff had in the approval of his numerous applications and permits and to be free of discrimination and other trespasses, they try to minimize the extent to which the defendants inflicted extreme emotional distress by their actions.

Defendants violations are so outrageous that they reach constitutional proportions and are not just petty oppressions, trivialities and mere bad manners as defendants want this court to believe.

The alleged conduct by the defendants far exceeds the requirements as described in Restatement (second) of Torts, § 46 comment (d).

The Finucane court found:

"[L]iability cannot be based on 'mere insults, indignities, threats, annoyances, petty oppression, or other trivialities...' Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72, 81 (1987). Finucane v. Town of Belchertown,    808 F.Supp. 906 (Dist. Mass. 1992).

Building his dream house on the lake was the culmination of years of denial and hard work for plaintiff. Defendants' systemic

and serial violations under state statute, federal law and the
Constitution of the United States over the past 17 years were and
still are systematically aimed to prevent plaintiff from realizing
this dream. Defendants thereby intentionally and/or recklessly
inflicted over and over again extreme emotional distress. Plaintiff
therefore is entitled for compensatory and punitive damages for
extreme emotional distress.

Even so many of defendants' violations by themself reach the
threshold of "extreme outrages and beyond all possible bounds of
decency and utterly intolerable in a civilized society," defendants'
misconduct viewed in the totality convinces even the hardest
contester, the Gouin court found:

"[I]t should also be noted, however, that the actor's extreme and
outrageous conduct may be found in the totality of the
circumstances, and does not have to be alleged in a single incident.
See Boyle v. Wenk, 378 Mass. 592, 595, 392 N.E.2d 1053, 1055-55
(1979)." Gouin v. Gouin, 249 F.Supp.2d 62 (Dist. Mass. 2003).

All that is required by the plaintiff for the purpose of this
motion is to create a controversy of fact. To find for the defendant
at this juncture would be premature, against the spirit of the
Fed.R.Civ.P., and would prejudice plaintiff.

However, plaintiff realized that he failed to allege in a
conclusory statement that defendants' actions where "extreme and
outrageous," but defendants did not contest this fact in their
present or in any former motions.

Plaintiff will correct this defect in PLAINTIFF'S 2nd AMENDED
COMPLAINT.

### G.    Intentional Interference with Contract

Defendants state:

"The defendants are unaware of an intentional interference with a
contract claims that can be brought under  s.1983"

Page 47 of 61 Pages

Plaintiff pleaded COUNT VII (7), XL (40), XLIX (49) and LV (55), as violations of the Thirteenth Amendment actionable under s.1983 which is incorrect. If plaintiff was a member of a different race he could plea such a violation under s.1982. As plaintiff is Caucasian, s.1982 is not available to him.

Defendants therefore are right, count 7, 40, 49, and 55 are just state law claims and do not raise a federal question.

As to COUNT VII (7), defendants err, plaintiff did suffer damages. Plaintiff pleaded very specific facts relative to the pending purchase of the property, see §§ 37,38, 49, 50, 54 and 60. It is therefore clear that a contract existed between plaintiff and Arnold and that the defendants had knowledge of the contract, see § 63. The fact that plaintiff bought the dwelling does not render the requirement of damages void as defendants' interference made the purchase more expensive and burdensome, see Restatement (second) of Torts, § 767, comment (a).

As to COUNT XL (40), defendants err, plaintiff suffered damages. In § 737, plaintiff incorporates §§ 271-273 with emphasis added. Clearly, the prospective contract was an existing  verbal contract between Mr.Garon, electrician, and plaintiff.

Out of fear of being retaliated against, Mr. Garon refused to work for plaintiff after defendants interfered by improper means, see § 273. Plaintiff thereafter could not find another electrician and had to do all the electric work by himself without any help. This delayed the remodeling of his dwelling and made it more burdensome, see Restatement (second) of Torts, § 767, comment (a).

In COUNT XLIX (49) plaintiff alleged interference with prospective contractual relations by the defendants in reference to

an existing contract to sell lot A. Defendants' failure to act on plaintiff's 1st ANR division interfered with the existing contract between plaintiff and the buyers of lot A. The defendants do not attack this count.

Plaintiff filed two ANR applications and the defendants failed to endorse either. G.L., c.4,s.6 (Ninth), provides a penalty or forfeiture for each violation of the law, wherever provided. Furthermore, the defendants interfered with two different contracts or contractual relations.

In COUNT LV (55) plaintiff alleged interference with prospective contractual relations with the existing contract to sell lot A for the second time. This second interference was due to the defendants' failure to act on plaintiff's 2nd ANR and is therefore a separate tort different from the tort in COUNT XLIX (49). Furthermore, the existing contract to sell lot A and the prospective contract to sell lot B and lot C where different contracts, contracts between Sullivan & Wallace and the plaintiff.

Defendants err with their assertion, quote:

"Finally, Count 55 alleges that certain acts of certain defendants 'prevented plaintiff from... executing implied contract to sell lot B and lot C.' See § 789. These allegations fails to state a claim for intentional interference with contract."

Plaintiff alleged (1) the existence of a contract (lot A) in § 374, the existence of a prospective contract in § 791; (2) that the defendants, members of the PBH, had knowledge of the contract in § 563; (3) that the defendants intentionally interfered with the contract or business relationship in § 789; (4) that the plaintiff suffered damages in § 573.

Plaintiff stated in § 785 (which is part of § 789 by

incorporation) that defendants' interference was due to their failure to act on plaintiff's 2nd ANR.

Some opinions distinguish between "intentional interference with prospective contractual relations" and "intentional interference with advantageous business relationship":

The Gouin court found:

"[A]lthough similar, the tort of intentional interference with an advantageous business relationship must be distinguished. Properly pleading intentional interference with advantageous relationship requires a showing of four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one; (2) the defendant knew about the relationship; (3) the defendant intentionally and purposefully interfered with the relationship; and (4) the plaintiff suffered damage as a result. Comey v. Hill, 387 Mass. 11, 438 N.E.2d 811 (1982)." Gouin v. Gouin, 249 F.Supp.2d 62 (Dist. Mass. 2003). See also  Kurker v. Hill, 44 Mass.App.Ct. 184 (1998).

Plaintiff will move for leave to amend his amended complaint and will correct the deficiency of COUNT LV (55) in his second amended complaint.

Fed.R.Civ.P., rule 15(a) provides, "and leave shall be freely given when justice so requires." See also Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

All claims are protected under the "continuing violation doctrine."

### H.    As to Defendant, Town of Holland

Defendants' err, plaintiff alleged two different unconstitutional policies, practises, customs or schemes by the town of Holland.

Plaintiff alleged a policy (scheme) by the defendants to discriminate against the class of people with a different national origin, see 1st, 5th and other paragraphs on page 2 of plaintiff's complaint and § 810. Plaintiff is a member of this class, see § 596.

Plaintiff also alleged in § 373 of his complaint adoption of unconstitutional policy "for process of decision finding" in violation of the open meeting law, G.L., c.39,s.23B; in § 761 (count 46) a violation of equal protection under the law due to the unconstitutional policy of not taking votes and instead informing applicants of preordained decisions made outside regular open meetings; in § 785 a violation of his rights to due process of law because of the same unconstitutional policy.

As supporting facts, plaintiff asserts that Earl Johnson, chairman of the board of selectman <u>and</u> member of the PBH, initiated the adoption of the unconstitutional policy for process of decision finding when he suggested the unconstitutional policy during a regular meeting, see § 373.

Johnson's role in adopting the unconstitutional policy is significant as he is the chairman of the board of selectmen of the town of Holland. As such, Johnson and the other two members of the board of selectmen have policy control over the PBH pursuant to G.L., c.41,s.70.

Furthermore, the members of the PBH have final policy-making authority and exercise policing power, see Lasota v. Town of Topsfield, 979 F.Supp. 45, 49 (D.Mass. 1997), and G.L., c.40A,s.17.

Johnson is a cousin of Roche, Roche was at relevant times member of the PBH and HCC.

Jim Foley, former member of the board of selectmen has integrity and was one of the few officials unwilling to support unconstitutional policies, customs and schemes and was free of discriminatory animus. Jim Foley tried to help plaintiff and disrupt the ongoing unconstitutional policy or custom the majority of town

officials engaged in, see plaintiff's complaint, §§ 211, 270, 295, 308, 309, 335 and 355. Jim Foley did not survive in the midst of such a corrupt regime; he was eventually recalled by his "peers."

Besides setting forth specific material allegations in direct form, plaintiff also set forth inferential allegations, see § 479 of plaintiff's complaint.

Plaintiff is not required to apply a "heightened pleading standard," the Supreme Court found in Leatherman:

"[F]ederal court may not apply "heightened pleading standard," more stringent than usual pleading requirements of civil rule, in civil rights cases alleging municipal liability under s.1983. 42 U.S.C.A. s.1983;   Fed. Rules Civ. Proc. Rules 8(a)(2), 9(b), 28 U.S.C.A." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,  507 U.S. 163 (1993).

Defendants further assert:

"Nor is there any law in the Commonwealth or in this Circuit which authorizes a claim pursuant to M.G.L. c.12, s.11I against a municipality, and as such claims are deemed to be alleged, judgment for the defendant, Town of Holland, must enter."

Defendants argument is unavailing, a law does not need another law to become the law. There are exemptions to the applicability of a law in specific circumstances. The defendants fail to show such an exemption and the defendants argument is nothing more then wishful thinking.

In the following case a plaintiff asserted such a claim against a town. The Supreme Court of the state of Massachusetts reversed and found for the defendant as the taking was an attempted direct, preemptive act and not because plaintiff's claim was improper:

"[T]he judge concluded that the wrongful taking of property was "a coercive act; especially as done in this case." He based the s.11I liability of the board of selectmen and the town solely on the ground that the taking was coercion within the meaning of G.L. c. 12, s.s. 11H and 11I. We do not agree. Although the purported taking of the plaintiffs' property was unlawful because done in bad faith, the taking did not itself interfere or attempt to interfere with the plaintiffs' rights by coercion.   The taking was an attempted

direct, preemptive act and did not seek to coerce any plaintiff to do or not to do anything." <u>Pheasant Ridge Associates Ltd. Partnership v. Town of Burlington</u>, 399 Mass. 771,  506 N.E.2d 1152 (1987).

In the case here at bar, defendants' act was not a direct preemptive act, defendants therefore err, plaintiff alleged with specific facts constitutional violations of his rights in form of unconstitutional policies or customs by the town of Holland. Towns are also liable for violations of the Massachusetts Civil Rights Act. Plaintiff raised issue of fact sufficient to preclude this court from entering judgement on the pleadings as to defendant town of Holland.

I.    <u>As to McCaughey</u>

Defendants under this subtitle level the field right away in their first paragraph by calling plaintiff's ANR a "special permit" consistent with previous false statements. Again, plaintiff refers to his argument under subtitle I(A), page 5, on the question of "property interest."

Defendants also state that plaintiff alleged "that McCaughey furthered an ongoing conspiracy on the part of the defendants by doing nothing to prevent the Planning Board from denying the special permit." Nowhere in his complaint did plaintiff plea such an allegation. Defendants misstate the facts, plaintiff alleged that the members of the PBH never took action. In order to deny an ANR application the Board is required to take a vote and the defendants made a judicial admission that they never did take a vote, see § 493 of defendants' answer.

Plaintiff is aware that doctrine of absolute privilege applies to any statements made in the institution or conduct of litigation or in conferences and other communications preliminary to

litigation.

Defendants' cited cases are all in regards to this doctrine.

None of plaintiff's allegations are in connection to such statements or communication, plaintiff alleges with particularity that McCaughey violated state law and/or constitutional law and therefore does not enjoy the protection of the doctrine. Judges enjoy such an absolute immunity, lawyers representing clients do not.

McCaughey violated the law when he interfered with an ongoing deposition, claiming plaintiff (pro se) would not be allowed to ask leading questions while deposing a hostile witness, or when McCaughey assisted a witness to give knowingly false testimony under oath, or when he stated in the joint pre-trial memorandum "This case has been pleaded by the plaintiff as an appeal of the denial of an ANR plan yet he is seeking damages for said denial." Plaintiff pleaded his action in state court as an order in mandamus to compel the town of Holland to sign plaintiff's ANR plan as the PBH failed to take final action. Plaintiff never pleaded to be aggrieved by a denial and McCaughey was informed about this fact.

Plaintiff allegations against McCaughey are very specific and sufficient to raise a material issue, see the following paragraphs of plaintiff's complaint: 426, 427, 481-483, 487-489, 498-501, 502-505, 779, 785 and 805.

McCaughey is the town counsel and as such acting under color of law as an employee of the town of Holland. He garnishes a regular salary for his services representing the town.

With respect to defendants' assertion that McCaughey was not engaged in a conspiracy, plaintiff made his argument under subtitle

Page 54 of 61 Pages

III(A) page 9, disputing defendants' argument.

In reference to conspiracy claims, a private person conspiring with officials acting under color of law is also acting under color of law.

Defendants state:

"Inasmuch as McCaughey owed no duty to the plaintiff, he was under no obligation to do anything that would not have furthered the defendants' interest."

Defendants are correct in as much that McCaughey does not owe plaintiff a duty, but McCaughey has to obey the G.L. and owes a duty to the Courts and is not clothed with a judicial immunity as are judges and prosecutors.

To be admitted as an attorney and to become an "officer of the Court" McCaughey swore to support the constitution of the United States and the Commonwealth and not to do any falsehood, see G.L., c.221,s.38.

As an officer of the court acting under this oath, he enjoys the presumption of lawful conduct as everybody else acting under an oath of office. Violations are the more repugnant committed by an individual acting under oath of office.

There is a difference between zealous advocacy and unlawful conduct. When a lawyer knowingly makes very specific false statements of fact or law deceiving the court to "further the defendants' interest," he is crossing that line.

It is correct that violations of disciplinary rules do not in and of themselves give rise to an independent action. However, such a violation creates an additional inference.

Defendants misread the cited cases as they are not to the point, defendants failed to cite any cases in support of their false

argument, defendants motion therefore needs to be denied.

**J.    As to Defendant, Gleason**

The board of selectmen with Johnson as the chairman also has policy control over the HPD, G.L., c.41,s.97.

State law violations are necessary in furtherance of a conspiracy, for a denial of equal protection and immunity under the law, violation of the Massachusetts Civil Rights Act or for intentional or reckless infliction of emotional distress.

Plaintiff alleged in his complaint in regards to Gleason and the HPD:

Former chief of police conspired with other town officials to prevent plaintiff from buying a dwelling, see § 63 of plaintiff's complaint; Gleason purposely failed to forward report on break-in into two buildings on plaintiff's property during which Gleason arrested two juveniles, see § 472- § 480); the day after plaintiff announced at the town hall meeting he would file a lawsuit the next day, one of his officers chased after plaintiff while plaintiff was on his way to the courthouse of the Superior Court in Springfield and issued unwarranted speeding ticket, see § 452; Gleason or one of his officers followed plaintiff for no reason into Connecticut to intimidate him (with the searchlight and not with the headlights as stated by the defendants), see § 476.

Plaintiff alleged sufficiently and with particularity facts in support of the conspiracy claims and defendants err:

"Defendant(s) actions, and the fundamental procedural irregularities of their actions, are unexplainable other than being based on a scheme of oppressive discriminatory animus and a broad-based multifaceted conspiracy by the defendant(s) towards plaintiff, which constitutes a deliberate and arbitrary abuse of power." See 5th par., page 2 of plaintiff's complaint.

For particularities, please see argument under the subtitle III(C)(4), page 35.

The American Law Report (Federal) provides:

"In affirming a jury verdict against a city under 42 U.S.C.A. s.1983, the court in Hild v Bruner (1980, DC NJ) 496 F Supp 93, stated that the jury reasonably could have inferred that the city's failure to conduct some kind of psychological testing of its police officers constituted gross negligence. Two individuals stopped for traffic violations in front of their home become involved in a struggle with three police officers. Following the incident, the men, who were arrested by the officers, brought charges of false arrest, and claimed that the officers and their municipal employers harassed them and otherwise interfered with their freedom to travel and rights to privacy. A jury returned verdicts in favor of the arrestees and against all of the defendants. On the appeal of the jury's finding of municipal liability, the court explained that a municipality may be held liable under s.1983 if it is grossly negligent in supervising its agents and that negligence results in a constitutional deprivation." Published in 81 A.L.R. Fed. 549, §.10[a].

"An allegation that a county's failure to train, supervise, and discipline its police officers amounted to a specific policy that caused a couple's injuries at the hands of city officers, supported only by the facts underlying the instant suit, was sufficient under the liberal pleading requirements for 42 U.S.C.A. s.1983, to state a claim under that statute, see Hill v Marinelli (1982, ND Ill) 555 F Supp 413." Published in 81 A.L.R. Fed. 549, §.10[a].

Defendants cite Board of County Comm'rs. of Bryan County v. Brown. In that decision, Justice O'Connor, held that:

"(1) s.1983 plaintiff may not establish municipal policy giving rise to liability merely by identifying policy maker's conduct that is properly attributable to municipality, but must also demonstrate that, through its deliberate conduct, municipality was 'moving force' behind injury alleged,"

The key issue is whether the plaintiff alleged a municipal policy. Plaintiff did allege a class based municipal policy of discrimination against members with different national origin.

As argued by plaintiff under subtitle III(F) on page 45, misconduct by the numerous town officials needs to be viewed in its totality.

The board of selectmen, with Earl Johnson as the chairman, has

policy control over the HPD and Gleason would not be chief of Police
if Johnson had not approved of it, see § 479 of plaintiff's
complaint.

Defendants motion is rather confused when it states that
"plaintiff has no enforceable right under federal law to have
alleged criminal conduct investigated or prosecuted and a claim
pursuant to 42 U.S.C. s.1983 must fail."

Plaintiff never tried to have "alleged criminal conduct
investigated or prosecuted." Plaintiff also never alleged that
Gleason knew about the contract or the advantageous business
relationship and is not implicated in counts alleging intentional or
reckless interference with contractual relations.

Plaintiff alleges with particularity that Gleason arrested two
juveniles breaking into two buildings on plaintiff's property and
subsequently deliberately failed to forward documents to the
juvenile court in Springfield, see §§ 409, 472, 474, 477, 478 and
480; that an officer of Gleason's police department issued frivolous
speeding ticket to discriminate harass and intimidate, see § 452;
that Gleason conspired with Blais and Johnson, see § 475; that
Gleason became chief of police because Johnson made it possible, see
479; that Gleason or one of his officers followed plaintiff for no
reason into Connecticut to intimidate him, see § 476.

"Officer is ordinarily not liable on the basis of respondeat
superior for the acts of his subordinates, thought he may be liable
for his own negligence in permitting those acts or otherwise."
Posser and Keeton, § 132, at 1067.

Gleason is named as defendant by name in COUNT LVI (56),
conspiracy to deny equal protection; COUNT LVIII (58), violation of
equal protection of the laws; and COUNT LIX (59), conspiracy to
interfere with due justice. Gleason is named as defendant in COUNT

Page 58 of 61 Pages

LX (60), intentional infliction of mental and emotional distress; and COUNT LXI (61), violation of Massachusetts Civil Rights Act.

Plaintiff's allegations are more then sufficient to raise a question of fact. This court needs to take allegations as true for the purpose of deciding whether to enter judgement on the pleadings or not. Plaintiff also pleaded all other elements necessary for an action under s.1983 and s.1985 against Gleason.

### K.    As to Defendant, Joanne May

Defendants err, Joanne May, (May), is named as a defendant in her individual and official capacity, see § 21.

May is implicated in very specific pleaded material facts as a member of the PBH or a defendant in the following paragraphs of plaintiff's complaint: 388, 390, 407, 410, 412, 414, 415, 418, 419, 420, 421, 422, 429, 438, 441, 442, 443, 446, 448, 449, 457, 485, 517-520, 522-529, 761, 773, 776, 779, 796, 799, 805 and others.

Reading the complaint in the light most favorable to plaintiff, this Court must conclude that plaintiff's allegations of omissions by all of the officer defendants as members of the PBH gave the defendants "fair notice," see Conley, 355 U.S. at 47, 78 S.Ct. 99.

Defendants fail to support their theory with any authority and their request therefore must be denied.

### L.    As to Defendant, Marilyn LaPlante.

Defendants err, Marilyn LaPlante, (LaPlante), is named as a defendant in her individual and official capacity, see § 20.

LaPlante is implicated in the same paragraphs as May, mentioned as defendant or "other members of the PBH" in the same paragraphs listed under subtitle III(K).

Page 59 of 61 Pages

On page 30, defendants' counsel states:

"If this Court allows some or all of the instant motion, it will be more manageable for both the defendants and the Court to argue and consider qualified immunity in a pared down complaint."

To allow some of the instant motion to "pare down" and make plaintiff's complaint more "manageable" for no other reasons would be highly prejudicial and unjust to plaintiff.

## IV. CONCLUSION

Defendants self-serving condensed re-written version of plaintiff's complaint is prejudicial and inappropriate.

Defendants' failure to recognize the significance of the legitimate entitlement or "property interest" plaintiff possesses in his applications created by state law nullifies defendants' argument relative to constitutional claims, qualified immunity and state law claims.

An other significant downfall of defendants' present motion lays in their failure to recognize that class based discrimination in itself is an official policy, practice, pattern or scheme plaintiff was subjected to by the town officials defendants.

Binding precedent of the Tedeschi and Velazquez court cited by the defendants relative to the question whether plaintiff is entitled to invoke the continuing violation doctrine or not, analyzed correctly demand application of the equitable exception to the timely filing requirement in the case here at bar.

Defendants motion for judgement on the pleadings must fail as cited cases by the defendants are factually and legally fundamentally different and are resting on different statutory provisions and therefore lack persuasive authority.

Defendants also failed to refer with plaintiff pro se to try to

Page 60 of 61 Pages

narrow the issues set forth in defendants' motion as required under L.R. 7.1A(2). Furthermore, defendants' filed almost the exact same motion as a pre-answer motion to dismiss under rule 12(b)(6) and plaintiff pointed out the legal deficiencies of defendants' arguments in his opposition at that time. Thus, it is questionable if Defendants' present  motion is in conformance with rule 11(b).

**WHEREFORE,** plaintiff respectfully asks this court to deny DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS in its entirety for the aforementioned reasons.  Plaintiff would be prejudiced if any or all of defendants motion would be allowed. If one or more counts should be defective, plaintiff asks this court to allow plaintiff to include necessary allegations in his second amended complaint by re-filing his motion to amend his amended complaint.

Respectfully submitted by the plaintiff pro se

Peter K. Frei, pro se
P.O. Box 500
BRIMFIELD, MA 01010-0500
phone: 413 245 4660

**CERTIFICATE OF SERVICE:** On this 24th day of February 2005, I certify that I mailed a true copy of the above document, postage prepaid to:

Nancy Frankel Pelletier, Esq.,
of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, MA 01115

Peter K. Frei

(http://www.01521.com/fed/f08oppos.htm)