UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PETER K. FREI,                    )
              PLAINTIFF           )
                                  )
         v.                       )  CIVIL ACTION NO. 04-30070-MAP
                                  )
TOWN OF HOLLAND ET AL.,           )
              DEFENDANTS          )


MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS
(Docket No. 37)

February 17, 2006

PONSOR, D.J.


I. INTRODUCTION

    This case stems from a long series of contentious land use disputes between pro se Plaintiff, Peter K. Frei, and Defendants, the Town of Holland, its Planning Board ("PBH"), Police Department, Board of Health, Conservation Commission, Zoning Board of Appeals, and nineteen of its past and current officials.  On April 21, 2004, Plaintiff filed a sixty-one count amended complaint[1] offering claims under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and under Massachusetts law.

    Defendants now move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  They argue that: (1) most of the conduct of which Plaintiff complains falls

_____

[1] Plaintiff filed his original complaint on April 5, 2004.

outside the statute of limitations; (2) most of the alleged misconduct within the statute of limitations does not raise issues of constitutional proportion, cognizable in federal court; and (3) Plaintiff has failed to plead the elements of any remaining claims.[2] For the reasons set forth below, the court will allow the motion.

## II. BACKGROUND

A.  Standard of Review.

"The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion." Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005). A court must accept the complaint's well-pled facts, draw all reasonable inferences in the plaintiff's favor, and disregard "unsupported conclusions or interpretations of law." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993), abrogated on other grounds by Phillips v. Wash. Legal Found., 524 U.S. 156, 172 (1998) (citation omitted).

Ultimately, judgment on the pleadings is appropriate if the complaint fails to "allege a factual predicate concrete enough to warrant further proceedings." DM Research, Inc.

---

[2]    Defendants also argue that they are protected by qualified immunity. The court need not address this contention in light of Defendants' clear entitlement to judgment based on their other arguments.

v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).  A court may also grant a 12(c) motion "when the pleader's allegations leave no doubt that an asserted claim is time-barred."  Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)).

In this case, Plaintiff acknowledges that most of his claims are predicated upon conduct that took place outside the statute of limitations.  Nevertheless, Plaintiff contends that the continuous nature of Defendants' misconduct triggers a "continuing violation" analysis.  This doctrine provides an equitable exception to the statute of limitations in cases where the illegal action in question has been ongoing.  Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  "To establish a continuing violation, [P]laintiff must allege that a discriminatory act occurred or that a discriminatory policy existed within the period prescribed by the statute."  Muniz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994) (citations omitted).

Rather than recite every allegation found in the amended complaint, the court will focus on those that fall within

-3-

the three-year period prescribed by statute. <u>See</u> Mass. Gen. Laws ch. 260, § 2A.  If this misconduct cannot support a cause of action, it cannot serve as an anchor for Plaintiff's earlier claims. <u>Centro Medico</u>, 406 F.3d at 6.

B.    <u>Plaintiff's Well-Pled Facts Within the Statute of Limitations</u>.

On April 15, 2002, Plaintiff signed a contract with a real estate agency to sell a lot on his property in Holland, Massachusetts.  Shortly thereafter, Plaintiff and two prospective buyers attended an informal meeting of the PBH for the purpose of discussing Plaintiff's first Approval Not Required ("ANR")[3] plan.  During this meeting, Defendant Earl Johnson stated that Plaintiff would not be able to subdivide his parcel because he owned an adjoining nonconforming lot that lacked the requisite frontage.  Because Holland's subdivision control bylaws would require Plaintiff to construct a paved road 850 feet long and twenty-four feet wide, Johnson suggested that Plaintiff would be better off donating his property to the town in order to avoid paying taxes.  According to Plaintiff, these statements demonstrated a clear discriminatory animus on the part of

---

[3] "One who owns and wishes to divide a tract of land may seek . . . an endorsement from a planning board that approval under the subdivision control law is not required (hereafter ANR endorsement)." <u>Matulewicz v. Planning Bd. of Norfolk</u>, 438 Mass. 37, 37 (2002) (citations omitted).

both Johnson and the PBH.

On May 21, 2002, Plaintiff attended a second informal PBH meeting and presented board members with case law addressing issues raised at the previous meeting.  In response, PBH members cited four cases that they claimed would apply to Plaintiff's parcel.  According to Plaintiff, a fair reading of these cases did not support the board's position, and therefore this response constituted a discriminatory act.[4]

On June 4, 2002, Plaintiff attempted to file a copy of his formal application for the ANR plan with Defendant Robert Ford, Clerk for the Town of Holland.  According to Plaintiff, Ford ignored his responsibilities pursuant to state law by refusing to accept the plan, commenting "I don't want to get involved!"  Plaintiff contends this refusal delayed his application and constituted a denial of procedural and substantive due process.

On June 18, 2002, Plaintiff attended another PBH meeting and submitted the application Ford had rejected, along with a memorandum and attachments in support.  In response, board members indicated that the PBH would discuss the matter with

---

[4] During a subsequent deposition, Plaintiff contends that he established that PBH chairwoman, Defendant Debra Benveniste, never read one of the four cases she and other board members introduced.

town counsel, Defendant Vincent McCaughey, before rendering a decision.  According to Plaintiff, the PBH had no discretion regarding his application.  Indeed, Plaintiff maintains that he had "a constitutionally protected property interest in the endorsement of his first ANR plan."  (Dkt. No. 6, Am. Compl. ¶ 408.)

On June 22, 2002, Plaintiff saw two juveniles enter his property and break a lock on his storage shed.  When he called the police, four officers, including Defendant Kevin Gleason, responded and arrested the juveniles, who confessed to burglarizing the shed.  Plaintiff subsequently filed a "voluntary statement" with the Holland Police Department indicating his desire to press charges.  According to Plaintiff, Gleason deliberately failed to file the necessary paperwork with the Springfield Juvenile Court.  Because the perpetrators were never charged with a crime, Plaintiff maintains that he was deprived of the opportunity to receive restitution for the damage done to his property.  In addition, after he began to make inquiries about the case, Plaintiff claims that an unidentified Holland police officer attempted to intimidate Plaintiff by following him across state lines and blinding him with search lights.

In a letter dated June 24, 2002, Benveniste informed Plaintiff of the PBH's decision to deny his first ANR

application.  At a PBH meeting shortly thereafter, board members revealed that in the process of making this decision they had conducted a visual inspection of Plaintiff's property.  According to Plaintiff, this unauthorized inspection constituted a violation of his right to due process.  Plaintiff also maintains that the PBH failed to fulfill its statutory obligation to mail him a written notice of the board's final action.  Because town counsel knew, or should have known, that this first ANR plan complied with all pertinent regulations, Plaintiff further alleges that McCaughey's failure to prevent the denial of Plaintiff's application violated both the Massachusetts Civil Rights Act and the oath required of lawyers who practice in the Commonwealth.[5]

On October 15, 2002, during a regular meeting of the PBH, Plaintiff submitted his second ANR plan for a subdivision.  According to Plaintiff, endorsement of this plan was a "ministerial act" mandated by Massachusetts law. (Id. at ¶ 438.)  Nevertheless, the PBH failed to fulfill its statutory obligation to render a decision within twenty-one

_____

[5] Plaintiff also claims that McCaughey violated the state's civil rights act by failing to prevent the PBH from denying Plaintiff's second ANR plan (Am. Compl. ¶ 450), and by deliberately misstating the facts in a joint pre-trial memorandum submitted in conjunction with Plaintiff's suit against the town and the PBH (id. at ¶ 502-03).

-7-

days.  Plaintiff also alleges that PBH members fraudulently falsified the minutes of their meeting in order to make it appear that they had voted to deny Plaintiff's plan.

On November 20, 2002, an unidentified Holland police officer cited Plaintiff for speeding.  Claiming that the citation was subsequently deemed "ridiculous" by a magistrate in the Palmer District Court, Plaintiff avers that the officer acted at the behest of Defendants in an attempt to retaliate against Plaintiff for exercising his First Amendment rights.  Because Plaintiff received the citation while on his way to file a complaint in the Hampden County Superior Court against the town and the PBH, Plaintiff also contends that the citation was issued in furtherance of a conspiracy to impede, hinder, obstruct, and/or defeat "the due course of justice."  (Dkt. No. 46, Pl.'s Mem. Opp'n Defs.' Mot. J. Pleadings 9-10.)

The following day, November 21, 2002, Benveniste sent Plaintiff a "notice of decision," denying Plaintiff's second ANR plan.

On December 30, 2002, Plaintiff contends that during a deposition in conjunction with his Superior Court case Johnson perjured himself by stating that the PBH had sent Plaintiff a letter denying his first ANR plan.  Pursuant to a subsequent discovery order, McCaughey provided Plaintiff

-8-

with copies of all ANR applications submitted on or after
May 1, 1997.  According to Plaintiff, his ANR plan was the
only one not endorsed by the PBH during that period, despite
the fact that another plan failed to comply with frontage
requirements.

During Benveniste's deposition on October 16, 2003,
Plaintiff alleges that the PBH chairwoman committed perjury
by testifying under oath that members of the PBH voted on
Plaintiff's first ANR plan during their July 2, 2002 meeting
and mailed Plaintiff a "written notification" of their
decision.

On December 16, 2003, Plaintiff attended a PBH meeting
and asked for certain documents to which he claims he was
entitled.  In response, Benveniste promised that if
McCaughey had no objections she would send Plaintiff the
documents by mail.  Six days later, Benveniste sent
Plaintiff a letter stating that he should request the
documents from the town clerk.  When Plaintiff made such a
request, the town clerk informed him that clerk's office did
not possess the PBH documents in question.  Plaintiff
charges that this conduct constituted a deprivation of
procedural due process that "delayed and/or blocked the
development of his property."  (Am. Compl. ¶ 735.)

### III. DISCUSSION

A.    <u>Section 1983 Claims</u>.

In Counts 46-49, 51-55, 57, and 58, Plaintiff alleges violations actionable under 42 U.S.C. § 1983.  To assert a viable section 1983 claim, Plaintiff must establish that: "(1) the conduct complained of was carried out under color of state law and (2) this conduct deprived [Plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States."  <u>Macone v. Town of Wakefield</u>, 277 F.3d 1, 9 (1st Cir. 2002) (citing <u>Chiplin Enterprises v. City of Lebanon</u>, 712 F.2d 1524, 1526-27 (1st Cir. 1983)).  Here, it is undisputed that at all relevant times the individual Defendants were acting under the color of state law.  Consequently, the court will focus upon the second requirement for each of Plaintiff's claims.

1.    <u>Equal Protection</u>.

Counts 46, 52, and 58 contend that Defendants' conduct constituted a "violation of equal protection of the laws." To make a <u>prima facie</u> showing of an equal protection violation a plaintiff must allege that: (1) he or she "was treated differently than others similarly situated," and (2) that such treatment "was based on an impermissible consideration."  <u>Macone</u>, 277 F.3d at 10 (citations omitted).

Before analyzing Plaintiff's claims under this rubric, it bears noting that the First Circuit has frequently

-10-

expressed "extreme reluctance to entertain equal protection challenges to local planning decisions." Id.; see also SFW Arecibo, Ltd. v. Rodriguez, 415 F.3d 135, 141-42 (1st Cir. 2005) (citation omitted) (noting that "a land use dispute may give rise to an equal protection claim" only "in extreme circumstances"), cert. denied, 126 S.Ct. 829 (2005).  The rationale for such forbearance is quite simple:

> If disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court.  Limiting such claims is essential to prevent federal courts from turning into "zoning board[s] of appeals."

Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 44-45 (1st Cir. 1992) (citing Village of Belle Terre v. Boraas, 416 U.S. 1, 12 (1974) (Marshall, J., dissenting).

In support of his equal protection claim, Plaintiff avers that he was treated differently than all other ANR applicants based on his Swiss national origin.  See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 n.5 (1987) (citations omitted) ("[D]iscrimination by States on the basis of ancestry violates the Equal Protection Clause of the Fourteenth Amendment.").  While the allegation that Plaintiff's ANR application was the only one rejected by the PBH over a six-year period does suggest the possibility of some sort of different treatment, Plaintiff provides no

facts to buttress the conclusion that his national origin
motivated the PBH, or any of the other Defendants, to treat
him differently.  Plaintiff does not assert, for example,
that he was the only foreign-born ANR applicant, or that one
or more members of the PBH expressed discriminatory animus
towards immigrants to the United States.

     While a number of paragraphs in the amended complaint do
contain variations of the word "discriminate," these
references by themselves are clearly insufficient to
establish discriminatory intent.  The additional allegations
noted above about Plaintiff's Swiss origin add nothing to
his conclusory claim.  Thus, Plaintiff has not stated a
claim under the Equal Protection Clause of the Fourteenth
Amendment.  This is simply not the sort of extreme
circumstance where a land use dispute presents a properly
supported equal protection claim.

     2.  <u>Procedural Due Process</u>.

     In Counts 48 and 54, Plaintiff alleges that Defendants
violated his right to "procedural due process."  To
withstand Defendants' 12(c) motion on these claims,
Plaintiff must offer proof "(1) that [he] had a property
interest defined by state law; and (2) that defendants . . .
deprived [him] of that interest without adequate process."
<u>Burnham v. City of Salem, Mass.</u>, 101 F. Supp. 2d 26, 33 (D.

-12-

Mass. 2000) (citing <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 428 (1982); <u>Licari v. Ferruzzi</u>, 22 F.3d 344, 347 (1st Cir. 1994)).  In measuring the adequacy of the process afforded Plaintiff, the court is obliged to examine the reasonable remedies available to Plaintiff under state law.

With respect to the first element, Plaintiff argues that because his ANR applications satisfied all pertinent statutory requirements, he had a property interest in having them endorsed.  In support of this contention, Plaintiff cites <u>Hamilton v. Planning Bd. of Beverly</u>, 35 Mass. App. Ct. 386 (1993).  <u>See id.</u> at 389 ("The endorsement of [an ANR] plan is a routine act, ministerial in character . . . .").

The flaw in this argument is that, despite its name, an "Approval Not Required" plan does not divest a planning board of all discretion.  <u>See</u> Mass. Gen. Laws. ch. 41, § 81P (2004) ("<u>[I]f the board finds that the plan does not require</u> <u>. . . approval</u> [under the subdivision control law], it shall forthwith, without a public hearing, endorse [the plan].") (emphasis added); <u>see also</u> <u>Ball v. Planning Bd. of Leverett</u>, 58 Mass. App. Ct. 513 (2003) (finding planning board properly withheld endorsement of ANR application in case where road did not provide adequate emergency vehicular access).

Moreover, even if Plaintiff did have a property interest

in PBH endorsements, he would still have to establish the inadequacy of the "procedural safeguards built into the statutory or administrative procedure . . . effecting the deprivation." Licari, 22 F.3d at 347 (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)).  In an attempt to demonstrate this inadequacy, Plaintiff focuses on the numerous irregularities and violations of state law that marked "pre-deprivation" proceedings.

Unfortunately for Plaintiff, so long as a state affords "reasonable remedies" to address improprieties perpetrated by a political subdivision "[procedural] due process has been provided." PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) (citation omitted), cert. granted, 502 U.S. 956 (1991), and cert. dismissed, 503 U.S. 257 (1992).  Here, state law provides that a person aggrieved by a planning board's refusal, or failure, to endorse an ANR plan "may appeal to the superior court for the county in which said land is situated or to the land court."  Mass. Gen. Laws ch. 41, § 81BB (2004) (noting that "the parties shall have all rights of appeal and exceptions as in other equity cases").

In light of this "avenue[] of appeal to the state courts," Creative Env'ts, Inc. v. Estabrook, 680 F.2d 822, 832 n.9 (1st Cir. 1982), cert. denied, 459 U.S. 989 (1982),

-14-

Plaintiff cannot be viewed as having suffered a deprivation of property without procedural due process.

　　3.　Substantive Due Process.

　　As the First Circuit recently reiterated, "substantive due process does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law." Medeiros v. Vincent, 431 F.3d 25, 33 (1st Cir. 2005) (quoting PFZ Properties, 928 F.2d at 31). Instead, the doctrine prevents only the "abuse of government power that shocks the conscience." Id.

　　Plaintiff's substantive due process claims, as set forth in Counts 47 and 53, are predicated upon the same misconduct at the core of his procedural due process claims. Assuming that all of Plaintiff's well-pled facts are true, the court cannot conclude that Defendants' actions were "stunning, evidencing more than humdrum legal error." Amsden v. Moran, 904 F.2d 748, 754 n.5 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991).

　　This determination finds considerable support in First Circuit case law. In Chiplin, for example, the court assumed that: (1) the plaintiff "had met all legal requirements for [a building] permit," (2) "the town had no valid reason to reject the application," (3) "this improper denial of a permit 'unlawfully restricted and interfered

with plaintiff's use and enjoyment of its property,'" and (4) the defendants were motivated by malice and acted "in bad faith."  712 F.2d at 1526; see also Diva's Inc. v. City of Bangor, 411 F.3d 30, 43 (1st Cir. 2005) (discussing Chiplin).  Nevertheless, the court found that the plaintiff failed to state a viable substantive due process claim.

In Chiplin, the mere fact that the defendants had "engaged in adversarial and even arbitrary tactics" did not "distinguish [the controversy] sufficiently from the usual land developer's claim under state law."  712 F.2d at 1527 (citations omitted).

As the Court of Appeals has frequently noted,

[e]very appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason.  It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.

Macone, 277 F.3d at 10 (quoting Creative Env'ts, 680 F.2d at 833).

Mindful of the difficulties involved in deciding what "abuses to regard as abuses of 'substantive' due process," Nestor Colon noted that "[e]very litigant is likely to regard his own case as involving such an injustice."  964 F.2d at 45 (noting the First Circuit's disinclination to

-16-

adjudicate local planning disputes in light of the fact that state courts are almost always "closer to the situation and better equipped to provide relief").

Clearly, this is not one of the "truly horrendous situations" for which the door to federal relief has been left "slightly ajar." See SFW Arecibo, 415 F.3d at 141 (citation omitted) ("[T]he threshold for establishing the requisite 'abuse of government power' is a high one indeed."). In light of this authority, it is clear that Plaintiff has not articulated a substantive due process claim upon which relief may be granted.

     4.   Taking Without Just Compensation.

The Fifth Amendment prohibits a municipality from taking private property without providing just compensation. Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 189 (1st Cir. 1999); see also id. at 190 (noting that "overly assiduous government regulation can create an unconstitutional taking"). Although the amended complaint does not explicitly allege this brand of constitutional infraction, Plaintiff, in his opposition to Defendants' motion, cites Agins v. City of Tiburon, 447 U.S. 255 (1980), for the proposition that "[t]he application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state

-17-

interests, or denies an owner economically viable use of his land." <u>Id.</u> at 260 (internal citations omitted).[6]

Ordinarily, of course, the fate of a 12(c) motion rests solely upon those allegations set forth in the complaint. <u>Young v. Lepone</u>, 305 F.3d 1, 10-11 (1st Cir. 2002). However, in light of this circuit's longstanding policy to construe complaints drafted by <u>pro se</u> litigants "with some liberality," <u>Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ.</u>, 209 F.3d 18, 23 (1st Cir. 2000), the court finds that the amended complaint alerted Defendants to Plaintiff's intention to pursue a regulatory taking claim. <u>See</u> <u>Lema v. United States</u>, 987 F.2d 48, 54 n.5 (1st Cir. 1993).

Unfortunately for Plaintiff, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." <u>SFW Arecibo</u>, 415 F.3d at 139 (quoting <u>Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 195 (1985)).  In this

---

[6] Approximately three months after Plaintiff filed his opposition, the Supreme Court determined that "the 'substantially advances' formula announced in <u>Agins</u> is an [in]appropriate test for determining whether a regulation effects a Fifth Amendment taking." <u>Lingle v. Chevron U.S.A. Inc.</u>, 125 S.Ct. 2074, 2078 (2005).

case, Massachusetts law provides adequate procedures for seeking just compensation.  <u>See</u> Mass. Gen. Laws ch. 79, § 10 (2004); <u>Mun. Light Co. of Ashburnham v. Commonwealth</u>, 34 Mass. App. Ct. 162, 169 (1993) (finding "compensable takings [under section 10] may occur when the governmental action deprives an owner of virtually all of that owner's interest in the property affected").  Because Plaintiff has not pursued a chapter 79, section 10 action in state court, his federal takings claim, assuming it were asserted, would be premature.

     5.  <u>Retaliation for Exercising First Amendment Rights</u>

     Counts 51 and 57 allege that Defendants retaliated against Plaintiff for exercising his right to petition Massachusetts courts and government agencies at various junctures in this ongoing dispute.  In particular, Plaintiff claims that the PBH retaliated against him for exercising his right to seek judicial redress, by refusing to endorse his first and second ANR plans.

     To state a viable section 1983 claim of retaliation for First Amendment activity, a plaintiff must show: (1) that he engaged in constitutionally protected conduct, and (2) that this conduct played a substantial part in a defendant's adverse decision.  <u>Powell v. Alexander</u>, 391 F.3d 1, 17 (1st Cir. 2004) (citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ.</u>

-19-

v. Doyle, 429 U.S. 274, 287 (1977)).

In this case, there is no question that Plaintiff had a constitutionally protected right to petition state courts and agencies for the redress of grievances.  In an attempt to satisfy the second element, Plaintiff argues that the PBH lacked any legitimate reason for rendering its adverse decisions on his first and second ANR plans.  Thus, he asks the court to infer that his history of bringing complaints to courts and agencies must have prompted the PBH to reject his ANR applications.

The record of this case will not support any inference of this sort of retaliation.  Indeed, as a state superior court recently determined, Plaintiff was not entitled, under Massachusetts law, to an endorsement of his ANR requests. See Frei v. Planning Board of Holland, No. 02-1196 (Mass. Super. Ct. Dec. 10, 2004).  Although Plaintiff has indicated his intent to appeal this ruling, the state court's opinion demonstrates that the PBH had reasonable legal grounds for rendering its adverse decisions.  Any argument to the contrary is pure speculation.  Consequently, Plaintiff has not shown that his constitutionally protected conduct was a substantial or motivating factor for a retaliatory decision.

B.    Section 1985 Claims.

In Counts 50 and 56, Plaintiff primarily focuses on the

misconduct of the Holland Police Department.  Among other things, he alleges that the department's failure to press charges against the juveniles who burglarized his shed was a sufficient basis for liability under the Ku Klux Klan Act, 42 U.S.C. § 1985(3) (2004).

Section 1985(3) affords a private right of action for injuries sustained when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  Id.  In order to state a claim under Section 1985(3), a plaintiff must show "that the defendants' conduct originated in an invidiously discriminatory class-based animus."  Hennessy v. City of Melrose, 194 F.3d 237, 244 (1st Cir. 1999).  Because the amended complaint offers no facts in support of the assertion that Defendants conspired against Plaintiff because he was born in Switzerland, Plaintiff has not satisfied at least one prerequisite for liability under Section 1985(3).

As his memorandum in opposition to Defendants' motion makes clear, Plaintiff, in Count 59, also purports to set forth a claim under 42 U.S.C. § 1985(2).  Section 1985(2) provides a right to recover damages for parties injured by

conspiracies that seek to impede, hinder, obstruct, or
defeat, "in any manner, the due course of justice in any
State or Territory."  42 U.S.C. § 1985(2).

Although there is not a great deal of authority
construing this portion of Section 1985(2), what little
there is indicates that "an essential element of such a
claim is a class-based, invidiously discriminatory animus."
Milios v. Mashantucket Pequot Tribal Nation, No. 02-2162, 60
Fed. Appx. 337, 338 (1st Cir. Mar. 21, 2003) (citing Hahn v.
Sargent, 523 F.2d 461, 469 (1st Cir. 1975), cert. denied,
425 U.S. 904 (1976)).  Thus, Plaintiff's Section 1985(2)
claim founders for the same reason as his Section 1985(3)
claim.

C.    State Law Claims.

In addition to his constitutional claims, Plaintiff
asserts claims for "interfering with contract" (Counts 49
and 55), "intentional infliction of mental and emotional
distress" (Count 60), and "violation of the Massachusetts
civil rights act" (Count 61).

Under 28 U.S.C. § 1367(c), a federal district court may
decline the exercise of supplemental jurisdiction when it
"has dismissed all claims over which it has original
jurisdiction."  Because the amended complaint fails to
present a viable federal claim, the court will exercise its

-22-

discretion to dismiss Plaintiff's state law claims without prejudice and allow for their resolution in state court. <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726-27 (1966).

### IV. <u>CONCLUSION</u>

This memorandum, as noted at the outset, has addressed only those federal claims that fall within the three-year statute of limitations.  Since none raise an issue cognizable before this court, any claim for relief based on conduct by Defendants at an earlier time must necessarily fail.

Plaintiff has demonstrated resourcefulness and determination as a <u>pro se</u> litigant, bringing a highly complicated case following what he sincerely believed were grievous injuries inflicted by Defendants.  Nevertheless, it would be false charity to mislead Plaintiff by pretending that these land use claims belong in federal court. Plaintiff's remedy, if any, must come from the state judiciary.

Thus, for the reasons set forth above, Defendants' Motion for Judgment on the Pleadings is hereby ALLOWED as to Counts 1-6, 8-39, 41-48, 50-54, and 56-59; Counts 7, 40, 49, 55, 60, and 61 are hereby DISMISSED WITHOUT PREJUDICE.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge